IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CLUB EXPLORIA, LLC,<br>    Defendant. | :<br>:<br>:<br>:   Case No. 1:19-cv-02504<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## FIRST AMENDED CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In or around March 2018, Defendant Club Exploria, LLC ("Club Exploria") began a cold-calling, prerecorded telemarketing campaign to promote vacations stays at its resort properties in the Orlando, Florida area to persons who had no prior relationship with Club Exploria whatsoever (the Telemarketing Campaign).

3. Club Exploria, or its agents, obtained the telephone numbers to be called from third party data brokers who sell the names, telephone numbers, and addresses of consumers for cash.

4. To implement the Telemarketing Campaign, Club Exploria hired multiple vendors to place the prerecorded calls on its behalf, including third parties Yodel Technologies, LLC,

Acquis, LLC ("Acquis") and its predecessor GA Investments, LLC ("GAI"), and Prospects DM, LLC ("Prospects DM), a subcontractor of Acquis/GAI.

5. Each vendor used a similar prerecorded script to promote the same Club Exploria Orlando area resort properties and identified themselves in the script as the "Helping Hands Association."

6. Throughout the Telemarketing Campaign, Club Exploria maintained and exercised control over these vendors' actions on its behalf, including who was called, the precise language of the prerecorded script used during the calls, and the frequency of the calls.

7. As described below, Plaintiff received two of these calls despite the fact that his number is on the federal do-not call registry and that he never consented to receive such calls.

8. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action against Club Exploria on behalf of a proposed nationwide class of other persons who received calls during the Telemarketing Campaign.

9. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

10. Plaintiff George Moore is a resident of Illinois in this District.

11. Defendant Club Exploria, LLC is a Delaware corporation that has its principal office in Clermont, FL and a registered agent of Cogency Global, Inc., 115 N Calhoun St #4, Tallahassee, FL 32301. Defendant Club Exploria itself, and through third parties, places telemarketing calls into this District, as it did with the Plaintiff.

**Jurisdiction & Venue**

12. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

**TCPA Background**

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

15. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." *See* 47 U.S.C. § 227(b)(1)(B).

16. The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

17. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

### The Continued Problem of Automated Telemarketing Calls

19. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

20. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

21. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

22. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

**Factual Allegations**

Calls to Mr. Moore

23. The telephone number in question, (630) 699-XXXX, is a residential number registered to a cellular telephone service.

24. The number has been on the National Do Not Call Registry for more than ten years prior to the receipt of the calls at issue.

25. Mr. Moore has never removed his residential telephone number from the National Do Not Call Registry.

26. On September 14, 2018 and October 16, 2018, Mr. Moore received a pre-recorded telemarketing call from one of Defendant's vendors promoting the Orlando area resort.

27. In order to confirm the identity of the calling party, the Plaintiff listened to the telemarketing pitch and confirmed that Club Exploria was the party whose services were being promoted.

28. The calls were offering a vacation at Summer Bay Orlando, a Club Exploria property.

29. The telemarketing representative did not identify his company but did claim to be from the "Helping Hands Association".

30. The calls were made from the Caller IDs (630) 412-0020 and (630) 948-8605.

31. Like Mr. Moore, other individuals have complained about unsolicited calls from those numbers. *See e.g.* https://www.shouldianswer.com/phone-number/6309488605; https://www.everycaller.com/phone-number/1-630-412-0020 (Last Visited February 26, 2019).

32. The purpose of these calls was to generate sales for Club Exploria.

33. Plaintiff and all members of the classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone line from legitimate communication and wasted his time.

34. Plaintiff has not provided Defendant with his prior express written consent to place telemarketing calls to him.

### Club Exploria's Liability for the Telemarketing Calls

35. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

36. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules &*

6

*Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

37. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

38. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Club Exploria may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

39. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

40. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

7

41. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

42. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

43. After receiving the pre-recorded telemarketing calls, Plaintiff contacted Club Exploria who informed him that he was called by a vendor of theirs.

44. Club Exploria is legally responsible for ensuring that the company that made the calls complied with the TCPA, even if Club Exploria did not itself make the calls.

45. Club Exploria knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

46. In fact, Club Exploria accepted the business from the illegal calls, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

47. By hiring a company to make calls on its behalf, Club Exploria "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

48. Throughout the Telemarketing Campaign, Club Exploria maintained control and gave interim instructions to its vendors regarding (a) the volume of calls to be made, (b) the numbers they were permitted to call, (c) how to respond to complaints about the calls, and (d) changes to be made to the pre-recorded script that was used for calling.

49. Club Exploria had day-to-day control over each of the vendors' actions on its behalf, including the ability to prohibit them from using pre-recorded messages to contact potential customers of Club Exploria.

50. Club Exploria instructed its vendors on (a) when days they could make the calls (b) what time they were to start and stop (c) what they could say and (d) the amount of calls they could make.

51. Club Exploria also instructed its vendors to transfer the called parties to Club Exploria to complete the process of signing a customer up for their service. Moreover, Club Exploria had absolute control over whether, and under what circumstances, it would accept a customer.

**Class Action Allegations**

52. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings Counts One and Two set forth below on behalf of the following classes of persons or entities

9

similarly situated throughout the United States.

53. The classes of persons Plaintiff proposes to represent are tentatively defined as:

### DO NOT CALL LIST CLASS

All persons within the United States to whom: (a) Defendant or a third party acting on its behalf, made at least two telephone solicitation calls during a 12-month period; (b) promoting Defendant's resort properties (c) to a residential landline or cellular telephone number registered on the do-not-call list for at least 30 days prior to the first call; (d) on or after March 1, 2018.

### PRERECORDED CLASS

All persons within the United States to whom: (a) Defendant or a third party acting on its behalf, made one or more telephone calls promoting Defendant's resort properties; (b) to a residential landline or cellular telephone number; (c) through the use of a prerecorded voice; and (d) on or after March 1, 2018.

54. Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

55. The classes as defined above are identifiable through phone records and phone number databases.

56. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

57. Plaintiff is a member of the classes.

58. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Club Exploria violated the TCPA by calling individuals on the National Do Not Call Registry;

10

      b.      Whether Defendant's calls are solicitations;

      c.      Whether Defendant placed calls without obtaining the recipients' prior express written consent for the call;

      d.      Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendant's actions.

      e.      Whether Defendant is vicariously liable for the calls.

59. Plaintiff's claims are typical of the claims of class members.

60. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and is represented by counsel skilled and experienced in class actions, including TCPA class actions.

61. The actions of the Defendant are generally applicable to the classes as a whole and to Plaintiff.

62. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

63. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

64. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One**
**Violations of the TCPA's Do Not Call Provisions**

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. Defendant violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating, or having one of its vendors initiate on its behalf, multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry and without signed, written prior express invitation or permission,

67. Defendant's violations were negligent and/or willful.

## Count Two
## Violation of the TCPA's Automated Telemarketing Call Provisions

68. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

69. Defendant violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(b)(1)(B), 47 C.F.R. § 64.1200(a)(2), and 47 C.F.R. § 64.1200(a)(3) by initiating, or having one of its vendors initiate on its behalf, a call that includes an advertisement or constitutes telemarketing to the Plaintiff's cellular telephone number using a pre-recorded voice without his prior express written consent.

70. Defendant's violations were negligent and/or willful.

## Relief Sought

For himself and all Classes members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D.     A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from using pre-recorded messages;

F.     An award to Plaintiff and the Classes of damages, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

*/s/ Timothy J. Sostrin*
Timothy J. Sostrin
Keith J. Keogh
KEOGH LAW, LTD.
55 W. Monroe St. Suite 3390
Chicago, IL 60603
tsostrin@KeoghLaw.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

13