**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated, | |
| Plaintiff, | Case No. 19-cv-2504 |
| v. | Magistrate Judge Sunil R. Harjani |
| CLUB EXPLORIA, LLC, | |
| Defendant. | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Currently before the Court is Plaintiff's Opposed Motion for Sanctions [107]. Plaintiff's motion presents questions regarding the ethical implications of a phone call between counsel for Defendant Club Exploria, LLC and Plaintiff George Moore. For the reasons stated below, the Court finds a violation of ABA Model Rule 4.2 (the anti-contact rule) and orders Defendant's counsel Katten Muchin Rosenman LLP to pay the attorneys' fees and costs associated with this motion to Plaintiff. Accordingly, Plaintiff's motion is granted in part and denied in part.

**<u>Background</u>**

In this putative class action, Plaintiff George Moore alleges that Defendant Club Exploria LLC violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by causing telemarketing phone calls to be placed to Moore's telephone without his consent. Doc. [55]. Club Exploria asserts that it contracted with a vendor to place TCPA-compliant calls only, and that the sub-vendor who placed the phone calls at issue apparently had consent from an individual named Donald Jorgensen to call the subject number. *See* Doc. [111] at 3.

According to Club Exploria, its investigation in this case revealed that Donald Jorgensen and Patricia Jorgenson were associated with Moore's phone number as recently as

September 2020. Doc. [121] at 1. As a result, J. David Washburn, an attorney at the law firm of Katten Muchin Rosenman LLP, counsel for Club Exploria, called Moore's alleged phone number to test the research indicating that Donald Jorgensen, and not Moore, would answer the call. Doc. [111] at 3-4.

Moore ultimately picked up the phone on October 27, 2020. Moore states that the telephone call went as follows:

- At approximately 12:12 p.m., Moore received a call from a "Private number."
- Moore answered, and a man indicated he was trying to reach someone named "Don." Moore informed the caller that there was no one named "Don" at the number and asked who was calling. The caller responded, "David Washburn."
- Moore asked Washburn if "Don" had provided the number to Washburn recently, and Washburn responded affirmatively.
- Moore told Washburn that the phone number had been assigned to Moore for nearly 20 years. Washburn asked who he was speaking with, and Moore identified himself as George Moore.
- Moore asked Washburn what company he is with and Washburn responded that he was not with any company and was just "an individual."
- Moore asked Washburn again if Don had provided the number to him recently, and Washburn responded affirmatively again. The call concluded shortly thereafter.

Doc. [107-4] ¶¶ 9-21. After the call, Moore performed a caller ID lookup for the number and learned the name associated with the number was "J David Washburn," an attorney at Katten. Doc. [107-3] at 2. Moore informed his counsel, who later emailed counsel for Club Exploria to inquire about the phone call. *Id.*

In the responding email, counsel for Club Exploria gave the following account of the October 27, 2020 phone call:

> We got an expert report on the 27th indicating the number on which your client claims he got calls is owned by or used by another individual named Don. David called the number and apparently your client answered. David asked for Don and your client responded that he is not Don. Your client asked who was calling and

> David truthfully gave his name. David said the number is supposed to be for Don and your client stated it is his number and his name is not Don. He identified himself and David apologized and said good bye. David did not ask him questions and certainly did not discuss the case. He was merely trying to verify the report we received that the number is associated with Don, not your client.

Doc. [107-3] at 2. At a hearing with the Court on January 6, 2021, counsel for Club Exploria represented that while Moore's recitation of the call was accurate, Washburn could not remember all of the specifics of the phone call. Doc. [122] at 3. Counsel further stated that because Club Exploria did not have affirmative evidence to refute Moore's recollection of the phone call, Club Exploria has accepted Moore's version for purposes of the sanctions motion. *Id.*

## Discussion

Moore has moved for sanctions in light of the October 27, 2020 phone call. Doc. [107]. Moore asserts that the phone call violated ABA Model Rule 4.2, the so-called "anti-contact" rule, and requests that the Court consequently: (1) disqualify Katten from representing Club Exploria in this action; and (2) order Katten to produce "all of its work product concerning Don Jorgensen's alleged use or ownership of the Subject Telephone Number." *Id.* at 2. Club Exploria responds that Washburn's brief phone call did not violate Rule 4.2 and that disqualification and work product production are inappropriate remedies, as Moore suffered no prejudice as a result of the phone call. Doc. [111].

The Court finds, for the reasons discussed below, that Washburn violated Rule 4.2. While his phone call with Moore was brief, Washburn purposefully called a number that was repeatedly disclosed in this litigation as Moore's phone number, without the consent of Moore's counsel. Then, even after Moore identified himself on the call, Washburn continued the conversation and made misstatements about who he was and about Donald Jorgensen, a figure central to Club Exploria's theory of the case. That being said, disqualification and the production of attorney work

product is too severe a sanction here. The Court finds that the lesser sanction of an award of the fees and costs associated with this motion is the appropriate remedy.

## I.     An Ethical Violation Occurred on October 27, 2020

Because Moore has moved to disqualify Katten from representing Club Exploria, the Court must undergo a two-part analysis. *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). First, the Court must consider "whether an ethical violation has actually occurred [.]" *Id.* Then, if an ethical violation has taken place, the Court must second determine "if disqualification is the appropriate remedy." *Id.* To answer the first question, Local Rule 83.50 instructs that the American Bar Association's Model Rules of Professional Conduct provide the applicable ethical rules for attorneys in the Northern District of Illinois.[1] N.D. Ill. L.R. 83.50.

Moore alleges here that Washburn violated the ABA's "anti-contact" rule, Rule 4.2. Doc. [107] at 5. That rule provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Model R. Prof. Conduct 4.2 (ABA 2020). At least four policy goals underpin Rule 4.2, including: (1) "to prevent attorneys from exploiting the disparity in legal skills between the attorney and lay people"; (2) "to preserve the integrity of the attorney-client relationship"; (3) "to prevent inadvertent disclosure of privileged information"; and (4) "to facilitate settlement by channeling disputes through lawyers accustomed to the negotiation process." *Kole v. Loyola Univ. of Chicago*,

---

[1]     Washburn is not an attorney of record in this case, but the Katten law firm is counsel of record for Club Exploria. Although Washburn is admitted to practice in Texas, state rules of professional conduct only apply on a matter not addressed by the ABA Model Rules or when the state professional rules are inconsistent with the ABA Model Rules. N.D. Ill. L.R. 83.50. Because ABA Rule 4.2 and Rule 4.02(a) of the Texas Disciplinary Rules of Professional Conduct are identical in all relevant respects, the Court applies and refers only to the ABA rule here.

No. 95 C 1223, 1997 WL 47454, at *4 (N.D. Ill. Jan. 30, 1997) (citing *Polycast Technology v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y.1990)).

Courts in the Seventh Circuit have recognized that a Rule 4.2 violation can occur even in brief and insignificant encounters with a represented party. In *Weibrecht v. S. Illinois Transfer, Inc.*, a Federal Employers' Liability Act (FELA) case, the defendant corporation alleged that one of its employees was improperly contacted on at least two occasions in contravention of the anti-contact rule. 241 F.3d 875, 878 (7th Cir. 2001), *as amended on denial of reh'g* (Mar. 27, 2001). The first time occurred when the plaintiff, purportedly at his attorney's behest, contacted the employee before his deposition to discuss a case theory and request that the employee contact the plaintiff's counsel. *Id.* at 877-78. The second time occurred when the lawyer left a message with the employee, asking the employee to call the attorney back. *Id.* at 878. The lawyer insisted that "the only purpose of his call was to make sure [the employee] was aware that the time of the deposition had been changed." *Id.* While there was a dispute over whether the plaintiff's contact with the employee was at the attorney's behest, it was undisputed that the attorney left a message with the employee on the eve of his deposition. *Id.* The district court held that the attorney's message violated the anti-contact rule, and the Seventh Circuit agreed. *Id.* at 883.

More recently in *Mullen v. GLV, Inc.*, an attorney was found to have violated Rule 4.2 by sending a short reply email to a class member after class certification had taken place. 334 F.R.D. 656 (N.D. Ill. 2020), *reconsideration denied*, No. 18 C 1465, 2020 WL 5630454 (N.D. Ill. Sept. 20, 2020). The *Mullen* case entailed a class action brought against a youth volleyball training business, wherein a parent asserted that the business concealed one owner's history of sexual abuse of underage girls. *Id.* at 658. Following class certification, there was a significant amount of email traffic among class members, the owner of the defendant volleyball company, and the vice

president of the company regarding opting out of the class. *Id.* at 659-61. In one instance, two class members sent a mass email to several other class members with details about opting out. *Id.* at 660. One recipient of the email forwarded the correspondence to the vice president and owner of the company, writing that several people had responded asking to be "removed from the list." *Id.* That forward, was then, in turn, forwarded to counsel for the defendant. *Id.* The attorney responded directly to the class member who sent the "removed from the list" message and requested the names of the parents who wanted to be removed from the email list. *Id.* The *Mullen* Court found that defense counsel's short response violated Rule 4.2, even though she did not initiate the contact, and even though the communication was not coercive. *Id.* at 664-65.

Cases in this jurisdiction further guide an attorney to take a conservative, rather than aggressive approach, when interacting with ambiguities in the anti-contact rule. In a commercial airline crash disaster action, for example, plaintiffs' lawyers were sanctioned for commissioning a questionnaire sent to pilots employed by one of the defendant airline companies. *In re Air Crash Disaster Near Roselawn, Indiana on Oct. 31, 1994*, 909 F. Supp. 1116 (N.D. Ill. 1995). The attorneys there argued that, because it was difficult to discern whether the pilot recipients of the survey constituted represented persons by virtue of their employment, their good faith conduct was excusable. *Id.* at 1120, 1122-23. The court disagreed. *Id.* at 1121-23. Although the court acknowledged the difficulty in discerning which employees constitute represented persons in the corporate context, the court found that the interpretive challenge called for caution rather than boldness:

> Since an employee could potentially bind the corporation pursuant to Fed.R.Evid. 801(d)(2)(D), it is fair to require that the employer's attorney be present. Nevertheless, this Court recognizes that it may be difficult to determine which employees fit into the category prior to attempting discovery. This difficulty, however, does not justify an aggressive approach that results in ethical violations. Instead,

> counsel, when confronted with a need to obtain information from witnesses that might reasonably lead to ethical problems, must take a conservative rather than aggressive approach. The "chalk lines" drawn by the ethical rules are meant to be avoided at all costs. The goals should not be to come so close to the "chalk lines" that one is covered in white dust. The goal must be to operate at all times well within the ethical "chalk lines" drawn by our ethical rules.

*Id.* at 1122. The court further held that when Rule 4.2 might be an issue, counsel must either: "(1) follow the more restrictive interpretation of the Rule; (2) contact opposing counsel; or (3) seek guidance from the Court." *Id.* at 1123; *Stearns v. Navigant Consulting, Inc.*, 89 F. Supp. 2d 1014, 1016 (N.D. Ill. 2000) (citation omitted). In short, "[p]rudence dictates avoiding even the remote appearance of impropriety," *Stearns*, 89 F. Supp. 2d at 1016, and the onus is on the attorney to dodge improper contacts with represented persons.

With that legal backdrop in mind, the Court turns to analyzing whether Washburn's brief phone call with Moore violated Rule 4.2. Specifically, the Court looks at the following three elements of the Rule: (1) whether the attorney knew that the attorney was communicating with a person represented by another lawyer; (2) whether the communication was about the subject of representation; and (3) whether the attorney had the consent of the person's lawyer or was otherwise authorized by law to engage in the communication.

### A. Knowledge

Washburn's knowledge regarding who was on the other end of the line on October 27, 2020 is central to the Rule 4.2 analysis. As Comment 8 to Rule 4.2 makes clear, "[t]he prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation[.]" MRPC 4.2 cmt. 8. However, that same comment provides that "actual knowledge may be inferred from the circumstances," and that

"the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." *Id.*

Here, the record shows that Washburn had reason to believe that an individual other than Moore could have had access to the subject phone number. Club Exploria possessed documents linking Donald Jorgensen and Patricia Jorgensen to the same phone number that Moore identified as his number in discovery responses. *See* Doc. [121-1]. Significantly, some of the connections to the Jorgensens were recent, with one record linking them to the subject phone number as late as September 2020. *Id.* In addition, Washburn began the phone call by asking for "Don," which indicates, at the very least, that he thought there was a chance that Donald Jorgensen could have answered the call. Doc. [107-4] ¶ 11. As a result, the Court cannot find that Washburn had actual knowledge at the outset that he was communicating with a represented person.

However, the facts also demonstrate that there were plenty of warning signs that Moore could answer the call on October 27, 2020. Washburn did not just call any phone number disclosed in discovery, he called *the* subject phone number at the heart of this lawsuit; Moore's entire case is based on his claim that Club Exploria violated the TCPA by causing telemarketing phone calls to be placed to the subject phone number without his consent. Doc. [55]. Moreover, Moore has repeatedly identified the subject phone number as belonging to him and being under his control throughout the litigation. In addition, Moore produced phone records tied to the subject phone number, exhibiting his control over the subject phone number. Doc. [107-4] ¶ 6. Even in one of Club Exploria's *own* records in support of its Donald Jorgensen theory, Moore is listed as an individual connected to the subject phone number. Doc. [121-1] at 2. From these circumstances, the Court infers that Washburn knew, prior to initiating the call, that there was a significant risk that Moore would answer a call placed to the subject phone number. Washburn therefore initiated

the phone call with an aggressive, rather than conservative approach. *See In re Air Crash*, 909 F. Supp. at 1122.

Club Exploria asserts that it is "clear from the fact that Mr. Washburn began the call by asking for Don," that Washburn "did not intentionally call Plaintiff." Doc. [111] at 7. Club Exploria additionally highlights the fact that Moore faults Washburn for knowingly calling the subject phone number, rather than knowingly calling Plaintiff. *Id.* As an initial matter, the Court disagrees that the mere fact that Washburn asked for Don meant that Washburn was intentionally calling Jorgensen, as opposed to Moore. Washburn could have just as easily been calling to see if Jorgensen or Moore would pick up—a more credible explanation—or to find out more information about Don's connections to the subject phone number. At any rate, a Rule 4.2 violation takes place if an attorney knowingly communicates with a represented person, and Washburn was not allowed to avoid the scope of the anti-contact rule "by closing [his] eyes to circumstances that make it obvious that the person to be communicated with is represented in the matter in question." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003) (quoting ABA Formal Op. 95–396 (1995)). In this case, the circumstances made it obvious that Moore was connected to the subject phone number, and Washburn could not close his eyes to those circumstances when making a phone call to the subject phone number.

Furthermore, Washburn's knowledge, for purposes of Rule 4.2, is not limited to what he knew before placing the phone call to the subject number. Once Washburn placed the call, he asked for Don and was told that there was no one named Don at the number. Doc. [107-4] ¶¶ 11-12. That, alone, raised another warning flag that Moore could have been the other person on the line. Washburn nevertheless continued the call, and when he was asked who he was, he provided his name but failed to identify himself as counsel for Club Exploria. *Id.* ¶¶ 12-13. Moore asked

Washburn if Don had provided the number to him recently, and Washburn responded affirmatively. *Id.* ¶ 15. This, of course, was not true. Moore then told Washburn that the number had been assigned to him for roughly 20 years, an answer largely consistent with Moore's discovery responses, and yet another signal that Moore was the individual on the line. *Id.* ¶ 16. Finally, Washburn asked who was on the line, and Moore identified himself. *Id.* ¶ 17.

Actual knowledge becomes crystal clear at this point. Once Moore identified himself, Washburn clearly had knowledge that he was speaking with a represented person. At this point, the call should have immediately terminated. *See* MRPC 4.2 cmt. 3 (if "after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule," Rule 4.2 requires the lawyer to "immediately terminate communication."). Yet, the call continued. Moore asked Washburn what company he was with, at which point Washburn stated that he was not with any company, and was just "an individual." Doc. [107-4] ¶¶ 18-19. Moore asked again whether Don had provided Washburn with the number recently, and Washburn said yes. *Id.* ¶¶ 20-21. Both of these statements are misleading, but more on that later. More importantly, only at this point did the call end. Thus, even if Washburn did not have actual knowledge before the call that he would be speaking with Moore, the circumstances of the call show that he gained that knowledge over the course of the call and continued to speak with Moore.

Club Exploria cites to *Robinson v. Chefs' Warehouse Inc.*, a distinguishable case from the Eastern District of California, in support of its claim that Washburn's contact with Moore was unknowing. *See* Doc. [111] at 8. In *Robinson*, a class action alleging wage and hour violations, as well as various discrimination claims, the defendant's law firm hired contract attorneys to contact putative class members in order to settle their individual claims and reduce the size of the potential class. *Robinson v. Chefs' Warehouse, Inc.*, No. 315CV05421RSKAW, 2019 WL 3220288, at *4

(N.D. Cal. July 17, 2019). The contract attorneys were provided a spreadsheet call list with approximately 100 former employees of the defendant that the contract attorneys could edit together in real time, as well as a script on what to say to the putative class members. *Id.* at *1. A named plaintiff was listed but originally had a "do not call" designation next to his name. *Id.* at *2. One contract attorney working on the call list, named Gonzales, edited the spreadsheet and accidentally removed the "do not call" note next to the named plaintiff's entry. *Id.* Gonzales subsequently called the named plaintiff and discussed settlement. *Id.* When Gonzales was informed by a supervisor that the named plaintiff was a represented person in the litigation, Gonzales discontinued contact with the plaintiff and informed him that he could not have further discussions with him. *Id.* The court found that Gonzales did not violate Rule 4.2 because he was a contract attorney who "was not aware that Prado was represented, let alone a named plaintiff." *Id.* at *4.

Club Exploria likens Washburn's conduct to Gonzales's inadvertent contacts, but the facts are starkly different here. Simply put, Gonzales accidentally called a named plaintiff due to a formatting error in a spreadsheet, but Washburn's contact was no accident. Washburn purposefully called the central phone number in a TCPA class action lawsuit, a number known to be connected to the named plaintiff. Washburn, a partner at Katten, was also far more sophisticated than the contract attorney in Gonzales. What's more is that Gonzales identified himself as counsel during the communications, *id.* at *2, whereas Washburn failed to identify himself as an attorney for Club Exploria and acted as if he were a disinterested person. Finally, Washburn had actual knowledge that he was speaking with a represented person once Moore identified himself but continued the conversation by answering two more questions. *Robinson* is therefore inapposite.

The Court also is troubled by the fact that Moore made two misleading representations during the call when he had actual knowledge that he was speaking to a represented party. Washburn was not just an "individual," he was a partner at Katten and counsel for Club Exploria. Washburn also did not receive the phone number for Jorgensen – he received it from a report that was done to investigate the phone number.[2] The Court will note that Washburn's misleading responses also allow the inference that Washburn was aware that he was now talking to a represented person, and had thus crossed the ethical line. Accordingly, the Court finds that Washburn had actual knowledge for purposes of Rule 4.2.

### B. Subject of the Representation

Rule 4.2 prohibits an attorney from speaking with a represented person regarding the "subject of the representation." Comment 4 clarifies that the rule does not prohibit communications "concerning matters outside the representation." MRPC 4.2 cmt. 4. In a formal opinion, the ABA clarified that the anti-contact rule "does not bar communications on other, unrelated matters." ABA Formal Op. 95–396 (1995). The opinion provided the example of a lawyer who represents a defendant on a charge relating to a crime, "Crime A." *Id.* Rule 4.2 would prevent another lawyer, such as a prosecutor or counsel for a co-defendant, from talking to the client about Crime A without consent of the lawyer. *Id.* However, if the communicating lawyer represents a client with respect to a separate crime, "Crime B," Rule 4.2 would not bar discussion with the represented person about that separate crime. *Id.* Thus, the ABA comment and formal opinion illustrate that a lawyer can have discussions with a represented person related to a separate

---

[2] It is worth mentioning that Washburn's lack of knowledge would not have absolved him of other ethical duties implicated by the October 27, 2020 phone call. Rule 4.1 requires that attorneys not make false statements of material fact during the course of representation. Model R. Prof. Conduct 4.1 (ABA 2020). Washburn stated that he was not associated with any company, and that he received the subject phone number from Don – both of which are not true. Doc. [107-4] ¶¶ 15, 19, 20-21.

matter, that is a matter that is distinct from the one for which the represented person has retained counsel.

In this case, although the phone call was short-lived, the discussion did involve the subject of the representation. By Club Exploria's own admission, Washburn called the subject phone number to advance its investigation in this TCPA lawsuit regarding Don Jorgensen's connections with the subject phone number. *See* Doc. [107-3] at 2; Doc. [111] at 3-4. Washburn was not calling to discuss a separate lawsuit or transaction, and Club Exploria does not claim that Washburn dialed the subject phone number to discuss a discrete matter. Nor did Washburn or Jorgensen or Moore have any prior relationship such that they would be calling each other. Club Exploria nevertheless insists that, "[a]t no point did Mr. Washburn and Plaintiff discuss the case, the phone calls at issue in the case, or any other topic at issue in this case." Doc. [111] at 4. Yet in the same breath, Club Exploria characterizes the "complications around ownership of the Subject Phone Number" as the potential "death knell" to Moore's individual claims. *Id.* at 2. Indeed, evidence indicating that Don Jorgensen (who Club Exploria claims provided consent for telemarketing calls) controlled the subject phone number supports Club Exploria's third affirmative defense in this litigation. Doc. [62] at 17. As a result, the short phone conversation encompassing remarks about Don Jorgensen, Moore's ownership of the phone for almost 20 years, and Jorgensen having provided Washburn with the subject phone number did involve the TCPA lawsuit, the subject of representation in this case.

Club Exploria stresses the fact that Moore did most of the talking in the conversation, and that other than asking who Moore was, Washburn "posed no other questions and answered a few other brief questions posed by the Plaintiff." Doc. [111] at 4. Certainly, the phone call would have been more egregious had Washburn called and questioned Moore at length regarding the subject

phone ownership issues. However, Rule 4.2's proscription is not limited to lengthy interrogations by attorneys. There is no escape clause for attorneys who speak to represented parties about the subject matter of the representation where the contact is brief and nothing pertinent is discovered. That is merely fortuitous—the Rule accounts for the potential, by the very contact, that a represented party could disclose information about the subject matter of the lawsuit to an opposing counsel.

Club Exploria directs the Court to two cases, but neither case is akin to this one. The first case, *United States v. Ford*, exemplifies the Crime A/Crime B scenario presented in the ABA formal opinion, discussed above. 176 F.3d 376 (6th Cir. 1999). *See* ABA Formal Op. 95–396 (1995). In *Ford*, prosecutors placed an undercover informant in the defendant's cell to investigate allegations of criminal wrongdoing by the defendant. *Id.* at 378. Specifically, the prosecutors were acting upon a tip that the defendant was plotting to have an Assistant United States Attorney, an Internal Revenue Service Agent, and a Louisville Police Officer killed. *Id.* The defendant claimed that because he was represented by counsel for purposes of his money laundering and gambling offenses, it was improper for the prosecutors to ask him questions through the undercover informant. *Id.* at 381-82. The *Ford* Court disagreed, explaining, "[s]ince prosecutors were investigating an offense other than the offense for which Defendant was indicted, the contact does not pertain to the 'subject matter of the representation' as Rule 4.2 states." *Id.* at 382. Because Washburn was not calling in connection with a separate lawsuit or matter, *Ford* does not fit the facts of this case.

The facts of Club Exploria's second cited case, *Scanlan v. Eisenberg*, are also dissimilar to the facts here. 893 F. Supp. 2d 945. There, the plaintiffs sued various lawyers and a trustee company in connection with the purchase of certain shares of stock and loans made to insiders, as

well as for legal malpractice and breach of fiduciary duties. *Id.* at 947. The plaintiffs hired Schiff Hardin LLP to represent them in the lawsuit and to advise one of the plaintiffs on her personal assets and investments. *Id.* To the latter end, a Schiff Hardin real estate attorney, Grossberg, was actively involved in financial advising for the plaintiffs. *Id.* Grossberg accordingly met with Greaves, an individual who held positions with MB Investments, an investment company closely linked to the plaintiffs' family, in order to advise the plaintiff about her assets and investments. *Id.* at 948. Greaves also happened to serve as a non-employee officer and director of the trustee company being sued by the plaintiffs. *Id.* After being alerted to the contact between Grossberg and Greaves, counsel for the trustee company in the lawsuit complained of the contact and alleged that Grossberg violated Rule 4.2 by communicating with a represented person. *Id.* at 949. The court found, however, that because Greaves only communicated with Grossberg in his MB Investments capacity, and because MB Investments was not a represented party in the lawsuit, there was no Rule 4.2 violation. *Id.* at 950-52. In this case, Washburn did not call the subject phone number in a different capacity; he called the number as counsel for Club Exploria. Washburn's communications, further, were not "separate from the litigation." *Id.* at 948. Washburn called the subject phone number in order to investigate the ownership of the subject phone number and thereby bolster Club Exploria's defense in this TCPA lawsuit. The *Scanlan* case is not analogous. The brief phone call here absolutely involved the subject of the representation.

## C. Lack of Consent

There is no dispute in this case regarding consent. It is clear that Washburn did not have the consent of Moore's counsel to call him. Further, there is no evidence in the record or claim by Club Exploria that Washburn was otherwise authorized by law to communicate with Moore. The

Court is further troubled by the fact that Washburn did not attempt to inform Moore's counsel about the improper contact after it occurred. Nor did Washburn memorialize the contact. It appears that Washburn hoped the phone call would be forgotten or go unnoticed. According to Club Exploria's counsel at the hearing, it appears Washburn made the phone call without even consulting the attorneys of record for Club Exploria in the case at the time (attorneys at Holland & Knight). Doc. [122] at 13. This is another strange, but ultimately not outcome-determinative, fact in the case. Washburn was not counsel of record at the time and nor was Katten. And even today, Washburn is not counsel of record. Nevertheless, it is undisputed that Washburn was acting as a counsel for Club Exploria on the day of the phone call. And regardless, the third element of a Rule 4.2 violation—the absence of consent—is met in this case.

Bringing it all together, Washburn violated Rule 4.2 on October 27, 2020. While Washburn had a good faith basis to believe that Don Jorgensen could be connected with the subject phone number, the facts demonstrate that he also had reason to believe that Moore could have answered his phone call as well. Washburn accordingly should have proceeded with caution, rather than with "an aggressive approach that results in ethical violations." *See In re Air Crash*, 909 F. Supp. at 1122. Already perilously close to the line demarcating unethical conduct from permissible conduct, *see Orso v. Bayer Corp.*, No. 04 C 0114, 2006 WL 2794975, at *8 (N.D. Ill. Sept. 27, 2006) (citation omitted), once on the call, Washburn did not introduce himself, and once he did state who he was, he did not identify himself as counsel for Club Exploria. When Moore identified himself, it is clear that conversing further would unequivocally result in a Rule 4.2 violation. Then, not only did Washburn respond to two questions from Moore after that point, but he also provided misleading responses about his identity and the facts surrounding his obtaining

16

of the phone number. The Court therefore finds that a Rule 4.2 ethical violation took place on October 27, 2020 by Washburn.

## II.      Disqualification and Work Product Production are Inappropriate Remedies Here

Having found an ethical violation, the Court turns to what the appropriate remedy is for that violation. Moore asks the Court to disqualify the Katten law firm from representing Club Exploria in this case. Doc. [107] at 7-9. As an additional sanction, Moore requests that Katten produce "all of its work product concerning Don Jorgensen's alleged use or ownership of the Subject Telephone Number." *Id.* at 9. In response, Club Exploria states that disqualification is a severe remedy not warranted here. Doc. [111] at 8. Club Exploria additionally avers that the two-minute phone call should not enable Moore to circumvent the work product privilege for documents relating to Don Jorgensen. *Id.* at 12-15.

### A.      Disqualification

As the party moving for disqualification, Moore bears the burden "to show facts necessitating disqualification." *Guillen*, 956 F. Supp. at 1421 (citation omitted). That burden is a heavy one. *Id.* Disqualification is understood to be a drastic measure, one that courts are hesitant to impose. *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir.1993) (citation omitted); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *Bonds v. City of Chicago*, 451 F. Supp. 3d 900, 902 (N.D. Ill. 2020) (citation omitted); *Guillen*, 956 F. Supp. at 1421 (citation omitted); *Kole v. Loyola Univ. of Chicago*, No. 95 C 1223, 1997 WL 47454, at *5 (N.D. Ill. Jan. 30, 1997) (citation omitted). "In addition to creating unnecessary delay, disqualification often deprives a party of [its] chosen legal advisor." *Guillen*, 956 F. Supp. at 1421 (citation omitted).

In determining whether to impose sanctions or which sanctions to impose, the court should consider "the seriousness of the violations and whether the violations were intentional, as well as

the nature and extent of prejudice suffered or likely to be suffered by the parties in the future as a result of the violation." *In re Air Crash Disaster*, 909 F. Supp. at 1124 (citation omitted). At least one court in this Circuit has stated that some proof of prejudice is required to warrant disqualification. *Kole*, 1997 WL 47454, at *5 (citation omitted).

In *Orso v. Bayer Corp.*, attorneys called the opposing party drug company's 1-800 number to find out information about a drug at issue in the lawsuit. 2006 WL 2794975, at *5. The court found that although the lawyers in the case, by speaking with the other party's employees without counsel's consent, "treaded dangerously close to the 'chalk line' demarcating sanctionable conduct from permissible conduct," the "absence of any prejudice, let alone significant prejudice," made disqualification an inappropriate remedy. *Id.* at *8 n.8. The *Orso* Court instead opted to strike a letter in connection with the improper conduct, a remedy which the court found "sufficient to resolve [the] issue definitively and equitably." *Id.* at *8.

In the *Mullen* case, discussed above, the court declined to impose a monetary or other severe sanction for an attorney's having submitted a short reply email to a class member. 334 F.R.D. at 665. In particular, the court found that given the nature of the attorney's single direct communication with a class member, which was simply a request for information (asking which parents wanted to be removed from the email list), it was "unclear how Mullen or the class were prejudiced." *Id.* "Without more," the court was "reluctant to impose a monetary or other severe sanction [ ] for [the attorney's] violation of Rule 4.2." *Id.*

Keeping in mind the severity of disqualification as a remedy and the importance of finding some proof of prejudice,[3] the Court declines to disqualify the Katten law firm as Club Exploria's

---

[3] Moore argues that prejudice is not required for the Court to order disqualification as a sanction and cites three Seventh Circuit opinions in support. Doc. [112] at 9. Initially, the Court is doubtful that Moore's cases are directly on point, as they do not pertain to disqualification motions for ethical violations. *See Patrick v. City of Chicago*, 974 F.3d 824, 832 (7th Cir. 2020) (affirming district court's "judgment call" in

counsel. Any "evidence" Moore provided during the two-minute phone call was consistent with Moore's discovery responses. Moore stated on the call that the subject phone number was his number and had been for a number of years. Doc. [107-4] ¶ 16. He also disavowed that a person named Don was associated with the subject phone number. *Id.* ¶ 12. Moore had already disclosed those facts in discovery, and he did not state anything that was new or sensitive. *Id.* ¶¶ 5-8. *See Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1004, 1018-19 (N.D. Ill. 2014) (disqualification of counsel inappropriate remedy for Rule 4.2 violation where information disclosed during improper contact was "readily available and known . . . The [impermissible] meeting likewise produced no evidence for the plaintiff and did not give rise to attitudes that did not already exist"). Regardless, Club Exploria represented to the Court that it would not use any information obtained during the phone call in the case. Doc. [122] at 14. The Court accordingly finds that Moore has failed to show that he suffered prejudice as a result of the phone call.

That being said, Moore's point is well taken that the Court's sanctions determination should not turn solely on the fact that Moore did not slip up and say something sensitive during the phone call. Doc. [112] at 11. The Court also considers the seriousness and intentionality of Washburn's actions. *In re Air Crash Disaster*, 909 F. Supp. at 1124. The Court does not find that Washburn was intentionally trying to obtain evidence unfairly from Moore. Instead, the record shows that Washburn was trying to investigate the veracity of the Jorgensen theory. An attorney does have a general right—and duty—to investigate the matter on behalf of the client. Furthermore, the seriousness of the conduct is lessened here by the brevity of the phone call and

---

denying posttrial motion for dismissal of case for witness' lies in pretrial deposition); *Barnhill v. United States*, 11 F.3d 1360, 1370 (7th Cir. 1993) (reversing district court's decision to enter judgment against government for conduct of government's counsel); *Daniels v. Brennan*, 887 F.2d 783, 785 (7th Cir. 1989) (affirming district court's dismissal for want of prosecution despite lack of prejudice shown). In any event, the Court's finding is based not only on the lack of prejudice, but also the seriousness and intentionality of Washburn's actions. *In re Air Crash Disaster*, 909 F. Supp. at 1124.

the fact that Washburn did not ask Moore questions, other than to identify himself. However, Washburn knew the risks of calling the subject phone number and should have had a better plan in place. In particular, the Court finds it serious that Washburn made two misrepresentations in the process.[4] In sum, Washburn's conduct was serious enough to warrant some sanctions, discussed below, but not serious enough to warrant disqualification of the law firm.[5]

Moore cites a litany of cases in support of his claim that disqualification is the proper remedy for Washburn's actions. Yet, in each of those cases,[6] the Rule 4.2 violation was more egregious and/or caused some sort of prejudice. *See Taylor v. Cook Cty. Sheriff's Office*, No. 13-cv-1856, 2020 WL 1047053, *2 (N.D. Ill. Mar. 4, 2020) (plaintiff's attorney secretly contacted former in-house counsel for defendant and obtained privileged and confidential information and an affidavit including privileged information); *Inorganic Coatings Inc. v. Falberg*, 926 F. Supp. 517, 518 (E.D. Pa. 1995) (opposing counsel spoke with defendant for 90 minutes about the merits of the case and conversation "severely prejudice[d]" the defendants); *Weeks v. Independent School Dist.*, 230 F.3d 1201, 1204-05 (10th Cir. 2000) (counsel for plaintiff had multiple *ex parte* communications with employees of defendant regarding main issue in case and obtained and used affidavit from employee affirmatively in case); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720

---

[4] To the extent that any counsel claims that Katten is not a company but an LLP, the Court would caution counsel not to split hairs on such a sensitive and important matter as a Rule 4.2 violation. Furthermore, Club Exploria is clearly a company and Washburn was acting on its behalf.

[5] Moore argues that disqualification of the firm is appropriate here, as Katten has only been tangentially involved in the case. Doc. [112] at 8. Moore declares that "[g]iven Katten's representation of Defendant only began recently, Defendant cannot possibly be relying on Katten's intimate knowledge of the case for its defense." *Id.* Even if that were true, disqualification is still a drastic measure, and a party has the prerogative to proceed with counsel of its choice. *Taylor v. Cook Cty. Sheriff's Office*, No. 13-CV-1856, 2020 WL 1047053, at *1 (N.D. Ill. Mar. 4, 2020).

[6] Moore also cites to *Logan v. Cooper Tire & Rubber Company*, 5:10–CV–3–KSF, 2011 WL 3475423 (E.D. Ky. Aug. 9, 2011), but that decision was reversed upon a motion for reconsideration. *Logan v. Cooper Tire & Rubber Co.*, No. 5:10-CV-3-KSF, 2011 WL 8183936, at *1 (E.D. Ky. Oct. 5, 2011).

F. Supp. 1080 (S.D.N.Y. 1989) (attorney for defendant engaged in one and one-half-hour conversation with plaintiff regarding merits of case and failed to timely place firewall between attorney and other members of law firm).  Here, Washburn's conduct was quick and did not lead to an affidavit or work product being used against Moore in the litigation.  Moore's cases are therefore inapplicable to the facts here, and Moore has not met his burden in showing disqualification is necessary in this case.

> **B.      Production of Attorney Work Product**

Moore also calls for the production of Katten's work product relating to Don Jorgensen's alleged ownership or use of the subject telephone number.  Doc. [107] at 9-10.

Courts have ordered parties to produce notes, memoranda, and records made or exchanged during improper Rule 4.2 communications.  For instance in *Goswami*, the court found that plaintiff's counsel violated Rule 4.2 by having lengthy meetings with a professor of the defendant university in an employment discrimination action. 8 F. Supp. 3d at 1015.  As a result, the court ordered that the offending lawyers produce any materials shared with or by the professor in any phone conversation, email, or otherwise, as well as any notes, memoranda, or recordings relating to any improper conversations with the professor. *Id.* at 1019.  Along those same lines in the *Air Crash Disaster* case, the court ordered that all of the questionnaires, which had been sent to the defendant's employees in violation of Rule 4.2, be returned to the airline defendants' counsel. 909 F. Supp. at 1125.  *See also Inorganic Coatings*, 926 F. Supp. at 521 (ordering counsel to "produce all notes and memoranda related to the *ex parte* contact with Defendant Gregg Falberg").

The production of records related to or generated as a result of the *ex parte* contact, as exemplified in *Goswami*, *Air Crash Disaster*, and *Inorganic Coatings*, is equitable because it alleviates an unfair advantage gained by the prohibited Rule 4.2 communication.  The production

of notes, recordings, and other byproducts of improper contacts can even the playing field by showing the represented person's counsel what was learned during the course of the communication. That knowledge, when combined with a court-ordered prohibition on using the improperly gained information in the litigation, can assist the represented person's counsel in ensuring that the offending counsel does not use the information learned for impermissible means later in the case. Applying those principal considerations here, if Washburn had taken notes or made a recording of the phone call with Moore, the Court would order those records to be produced, in line with the above cases. However, Club Exploria has represented that there are no such records, and the Court accepts that representation. Doc. [122] at 3, 14.

Moore is advocating for a much broader production, one that would require Club Exploria to produce any attorney work product *relating to* Don Jorgensen's alleged use or ownership of the subject telephone number. *See* Doc. [107] at 9. That scope would necessarily pull in privileged work product compiled in the course of Club Exploria's investigation regarding the ownership of the subject phone number. The Court is not aware of, and Moore has not cited to, any authority in this jurisdiction holding that a Rule 4.2 violation warrants such an invasion of the attorney work product privilege. Regardless, Club Exploria has already produced non-privileged portions of the documents that led Washburn to believe that Donald Jorgensen was connected to the subject phone number. *See* Doc. [121]. The Court finds that production was sufficient for purposes of the Rule 4.2 violation that occurred in this case and declines to require further production from Club Exploria at this time.

## C. Briefing Costs

Although Moore's requests for disqualification and the production of attorney work product are denied, the Court does find that some remedy is warranted here. Courts "possess the

22

inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Blanchard v. EdgeMark Fin. Corp*., 175 F.R.D. 293, 303 (N.D. Ill. 1997) (internal quotation marks and citations omitted). That "inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Id.* Sanctions may include, not only disqualification, but also attorneys' fees, costs, and other monetary penalties. *Id.* The Court's discretion in selecting the appropriate sanction is broad, and the Court strives for proportionality in measuring out sanctions. *Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co*., No. 15 C 1067, 2018 WL 4976813, at *5 (N.D. Ill. Oct. 15, 2018) (citations omitted). Courts in this circuit have awarded the reasonable attorneys' fees and costs associated with briefing the sanctions motions in response to Rule 4.2 violations. *See Blanchard*, 175 F.R.D. at 305; *Goswami*, 8 F. Supp. 3d at 1019; *Parker*, 249 F. Supp. 2d at 1013.

Here, the Court finds that an award of the reasonable attorneys' fees and costs associated with briefing this motion strikes the appropriate balance and is proportional to Washburn's conduct. Disqualification and the production of attorney work product are too severe of remedies, given the lack of prejudice, the quickness of the phone call, and the absence of any intentional bad faith conduct, as discussed above. At the same time, granting no remedy would be disproportionate too, given the Rule 4.2 violation by Washburn and the potential that sensitive and privileged information could have been disclosed. The combination of this opinion identifying Washburn's violation and the award of fees and costs is a sufficient and proportional remedy. Accordingly, the Court imposes and orders the Katten law firm to pay the reasonable attorneys' fees and costs associated with Moore's motion for sanctions. *See, e.g.*, *Goswami*, 8 F. Supp. 3d at 1019.

## Conclusion

For the reasons stated above, Plaintiff's Opposed Motion for Sanctions [107] is granted in part and denied in part. Club Exploria's counsel is ordered to pay for the attorneys' fees and costs incurred by Moore in bringing this motion.

**SO ORDERED.**

Dated: January 26, 2021

_____
Sunil R. Harjani
United States Magistrate Judge