**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) | Case No. 1:19-cv-02504 |
| v. | ) ) | |
| CLUB EXPLORIA, LLC | ) | District Judge John Z. Lee |
| Defendant. | ) ) ) | Magistrate Judge Sunil R. Harjani |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Unsolicited robocalls are illegal and people loathe them, but only 1 in 14,000,000 results in a federal lawsuit.[1] As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls…For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). The TCPA is effective, in part, because liability under the statute is not limited to companies that place calls directly. It extends to companies who hire others to place robocalls on their behalf and who have the power to oversee the campaign, as defendant Club Exploria, LLC ("Exploria") did here with its Summer Bay campaign.

Mr. Moore's lawsuit seeks to vindicate the rights of tens of thousands of others who were harmed by "Exploria" uniform telemarketing practices. In 2018, Exploria embarked on a telemarketing campaign to promote its "Summer Bay" resort in Orlando, Florida. Exploria instructed its vendors to place prerecorded calls to persons with whom it had no prior relationship, but who satisfied Exploria's demographic requirements for new customers. Exploria instructed its vendors to make these calls utilizing prerecorded "soundboard technology,"[2] in which an agent presses buttons on a computer during the call to convey a pre-

---

[1] Compare Americans Hit by Just Under 46 Billion Robocalls in 2020, Says YouMail Robocall Index (Jan. 26, 2021), https://www.prnewswire.com/news-releases/americans-hit-by-just-under-46-billion-robocalls-in-2020-says-youmail-robocall-index-301215139.html (45.9 billion robocalls), with WebRecon, WebRecon Stats for Dec 2020 and Year in Review, https://webrecon.com/webrecon-stats-for-dec-2020-and-year-in-review/ (last visited January 27, 2022) (3,302 TCPA complaints).

[2] Soundboard calls are "prerecorded" calls under the TCPA. *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act*, 35 FCC Rc. 14640, 14640 (Dec. 18, 2020); *Bakov v. Consol. World Travel, Inc.*, 2019 U.S. Dist. LEXIS 211399, 13 (N.D. Ill. Dec. 9, 2019).

approved script of prerecorded voice statements, questions, and responses to the called party. Once the call progressed to a certain point in the script, the soundboard agent transferred the call to Exploria's call center, where Exploria took over the call and attempted to complete a sale. Plaintiff received two of these calls and moves to certify the following class:

> All persons in the United States subscribing to a cellular telephone number that received a prerecorded soundboard call promoting Club Exploria's Summer Bay resort between March 1, 2018 and August 15, 2019, where the soundboard operator initiated a transfer of the call to Club Exploria.

As demonstrated below, the class satisfies each of the Rule 23(a) and (b)(3) elements for class certification, and should be certified.

## STATUTORY AND REGULATORY BACKGROUND

Congress enacted the TCPA in 1991 "to address the problem of intrusive telemarketing." *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 460 (7th Cir. 2020) "In particular, Congress reported, many consumers are outraged over the proliferation of intrusive, nuisance, telemarketing calls[.]" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (internal punctuation omitted). The Act thus "bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC) to prescribe implementing regulations." *Ibid.*

In this case, Plaintiff alleges Exploria violated 47 U.S.C. § 227(b), and the corresponding FCC regulation 47 C.F.R. § 64.1200(a)(2), which prohibit the use of a prerecorded voice in telemarketing calls made to cellular telephone numbers. The TCPA grants recipients of these calls a private right of action to recover a minimum of $500 in statutory damages per call and up to $1,500 per call if the Defendant acted "willfully or knowingly." 47 U.S.C. § 227(b)(3).

### I. Prior Express Written Consent

Although the TCPA provides for an affirmative defense of "prior express written consent," Exploria cannot establish it here. *See Hossfeld v. Lifewatch, Inc.*, 2021 U.S. Dist. LEXIS 25650,

2

*20-21 (N.D. Ill. Feb. 5, 2021). "The term prior express written consent means

> an agreement, in writing, bearing the signature of the person called that *clearly authorizes the seller to deliver or cause to be delivered* to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(9) (emphasis added).

"The term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 CFR § 64.1200(f)(10). It is undisputed Exploria is the "seller" in this case. *See Doc. 165 – Exploria's SOMFs* at ¶¶ 1, 2-4, 11, 24. Yet, as shown below, it is undisputed none of the written disclosures Exploria seeks to rely on in this case actually identify Exploria and thus do not clearly authorize calls made on its behalf. Indeed, two courts have held such a disclosure fails to meet the requirements of 47 C.F.R. § 64.1200(f)(9). *See Williams v. Pillpack*, 2021 U.S. Dist. LEXIS 27496, *15 (W.D. Wash. Feb. 12, 2021); *Mantha v. Quotewizard.com, LLC*, 2021 U.S. Dist. LEXIS 245059, * 23 (D. Mass. Dec. 3, 2021) (Report and Recommendation, adopted at 2022 U.S. Dist. LEXIS 19502 (Feb. 3, 2022). Thus, unlike some other TCPA actions where evidence indicated some class members may have provided consent, the issue of consent does not predominate this action, and is a class wide issue in any case.

### II. Vicarious Liability

In *In re Dish Network, LLC*, 28 FCC Rcd. 6574 (2013), the Federal Communications Commission (FCC) confirmed that a seller may be vicariously liable for robocalls placed on its behalf by third-party telemarketers. As the FCC explained, "the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers[.]" *Id.* at 6588. Seller liability "give[s] the seller appropriate incentives to ensure that their telemarketers comply with [the

3

FCC's] rules." *Ibid.* As the FCC put it:

> "we see no reason that a seller should not be liable under [section 227(b)] for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised." *Id.* at 6593

Following the FCC's Order, the Seventh Circuit has ruled that a defendant in a TCPA case may be vicariously liable for its "lead generator's unauthorized robocalling under actual authority, apparent authority, and ratification principles of agency liability." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021). As shown below, vicarious liability is clear here and presents a class wide issue that is resolved through common evidence applicable to the class as a whole.

## STATEMENT OF FACTS

In March of 2018, Exploria hired Yodel Technologies, LLC ("Yodel") to make prerecorded soundboard calls promoting Exploria's Summer Bay resort in Orlando and transfer those calls to Exploria's call center. Ex. 1, Wood Tr. 14:24 –17:9, Ex. 2, CE-00176-86, Ex. 3, Insertion Orders. The prerecorded script conveyed in Yodel's calls stated the caller was a "Trip Advisor" from "the Helping Hands Association," and offers a 3 night stay in "magical Orlando" at Exploria's Summer Bay Resort. Ex. 4, CE-01598-99; Ex. 5, CE-01605-07; Ex. 6, CE-03239-40. The script further conveyed that in order to qualify, the called party would need to be over the age of 25, have a major credit card, and a household income of at least $65k per year. *Id.*

In May 2018, Exploria hired Prospects DM, Inc. ("Prospects DM"), as a subcontractor of GA Investments, LLC ("GAI") and Acquis, LLC, ("Acquis),[3] to make additional prerecorded

soundboard calls promoting Exploria's Summer Bay resort and transfer those calls to Exploria's call center. Ex. 8; Ex. 9. ██████████████████

██████████████████████████. Ex. 7, CE-00016-19; Ex. 8. Exploria gave these vendors a slightly modified version of the Yodel script to use in the Prospects DM calls. Ex. 12, CE-05039; Ex. 13, Rogers Tr. 55:3-14; 33:3-6; Ex. 14, CE-03073. ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████. *Id.*

When Exploria was preparing its call center agents to receive transfers of the Prospects DM calls, it informed them that ████████████████████████████████

████████████████ Ex. 12. When Exploria received a complaint about the calls, its standard procedure was to ask both Yodel and GAI to investigate the complaint because Yodel and Prospects DM were using the same script. Ex. 13, 49:7-23.

████████████████████████████████████████████████

██████████████████████████████████████. Ex. 15, Grant Declaration (Royal Seas) at ¶¶ 4, 6; Ex. 1 at 81:10-17, 82:21 - 84:9, 87:22 – 90:17; Ex. 16, Grant. Tr. 69:11-71:9, 72:13 – 73:10, 75:11-14, 82:6-21, 86:7 – 87:3, 116:17-23, 139:15 – 140:17, 140:20 – 144:10. ████████████████████████████████████████████████

████████████████████████████████. *Id.* at 70:11-23, 74:10-14.

_____

████████████████████████████████████████████████

Ex. 7; Ex. 11, at pp.1-4.

All of the "leads" called by both Yodel and Prospects DM were purchased from third party data brokers; an arrangement which Exploria understood and agreed to at all times. Ex. 13, 71:14 – 73:5; Ex. 17, Lizotte Tr. 95:16 – 99:12, Ex. 18, CE-04710 – CE-04711. These data brokers generally purport to sell the contact information of persons who sign up to receive marketing calls on a website that contains a consent disclosure. *Id.*

It is undisputed the disclosures at issue here never mentioned Exploria. *See e.g.,* Ex. 13, 78:2-8 (Exploria admitting the same); Ex. 19, CE-00148 (█████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████; Ex. 1 at 38:18 -39:18 (Yodel confirming that none of the websites mentioned Exploria). Instead, they purport to authorize calls from "the Helping Hands Association" (a███████████████████████████)[4] because Yodel asked the data brokers to ensure that dba showed up in the consent disclosure. *Ibid.* Neither Exploria nor Yodel asked the data brokers to put Exploria's name in the disclosure. *Ibid.*

Exploria's Summer Bay campaign ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████. Ex. 13, 65:16-66:14; Ex. 20, CE-01573.

In discovery, both Prospects DM and Yodel produced records of their calls made on the Summer Bay campaign. Plaintiff's expert witness, Aaron Woolfson, analyzed those call records and identified the class. *See* Ex. 21 - Woolfson Report; Ex. 22 - Woolfson Rebuttal Report. Mr. Woolfson first identified and counted only those calls that utilized a prerecorded voice in the soundboard process by excluding unsuccessful calls. Ex. 21 at ¶ 33-34.[5] He then identified

---

[4] See Ex. 15, at ¶¶ 4, 6; Ex. 16, 139:15-140:17

[5] ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████

which of those calls were placed to a phone number assigned to cellular telephone service at the time of the calls. *Id.* at ¶ 38-41. Finally, he identified which of those calls were transferred to Exploria after the prerecorded messages played. *Id.* at ¶ 51. Mr. Woolfson's analysis identified 71,538 calls placed on the Summer Bay Campaign that were made to cellular telephone numbers and during which the soundboard agent initiated a transfer of the call to Exploria after the conveyance of a prerecorded message. Ex. 22 at ¶ 12, § (c)(i). Those calls were made to 66,682 unique telephone numbers. *Ibid.* Plaintiff seeks to certify a class of persons subscribing to those telephone numbers at the time of the calls.

## **ARGUMENT**

### I.    **TCPA Claims are Well Suited for Class Certification**

Virtually every appellate court to examine the issue has recognized the TCPA as well suited to class certification, which is essential to enforcing the TCPA and redressing the rampant explosion of robocalls. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("'Class certification is normal in litigation under [the TCPA], because the main questions …. are common to all recipients.'") (quoting *Ira Holtzman, C.P.A., & Assoc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)); *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 656 (4th Cir. 2019); *see also, e.g., Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012) (affirming certification of TCPA class). The Fourth Circuit has emphasized the TCPA was designed for the class mechanism:

> "Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive

---

██████████████████████ Ex. 16, 22:11-23; 62:3-13; 63:16 – 67:23, 117:2-4. Accordingly, the call records produced by Prospects DM reflect connected calls using a prerecorded voice.

individual complications."

*Krakauer*, 925 F.3d at 656. Recently, the Eleventh Circuit recognized TCPA actions are appropriately certified even where individual questions about the class members' injuries exist "if there is a plausible straightforward method to sort them out at the back end of the case." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1275 (11th Cir. 2019).

## II.     The requirements of Rule 23(a) are satisfied.

### a.     The Class is Sufficiently Numerous

"Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable." *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 579 (N.D. Ill. 2014). Here, there are 66,682 unique telephone numbers that satisfy the class definition. Ex. 22 at ¶ 12, § (c)(ii). Numerosity is satisfied because joinder of the class members (the subscribers to those numbers) is clearly impracticable. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (it is "plain enough" that a class of 10,000 members is "too numerous to allow joinder")

### b.     Numerous Common Questions Decide Exploria's liability for the calls.

Commonality requires "there are questions of law or fact common to the class" (Fed. R. Civ. P. 23(a)(2)) and that "the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As the Supreme Court explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" such that "all their claims can be productively litigated at once." *Wal-Mart Stores*, 564 U.S. 338 at 350 (citation omitted). A common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions, § 4:50, pp. 196-97 (5th ed. 2012).

This case is well-suited to class certification because all of the class members received prerecorded calls promoting the Summer Bay campaign on a cell phone without providing prior express written consent.  As such, all class members suffered the same injury and there are significant questions of fact or law that are common to class members. For instance, whether the soundboard technology utilized by Prospects DM and Yodel qualifies as use of a pre-recorded voice under the TCPA is a common question. *See Johnson v. Comodo Group, Inc.*, 2020 U.S. Dist. LEXIS 18033, at *10 (D. N.J. Jan. 31, 2020) (whether soundboard calls violate the TCPA are common questions); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018) (same, and certifying class of calls made by Yodel on behalf of the defendant).

Likewise, whether Exploria is vicariously liable for the calls physically placed by its vendors Prospects DM and Yodel are also common questions for the class.  The answers to these questions are established by the relevant contracts and communications between Exploria and its vendors rather than individualized evidence from the class members. *Braver*, 329 F.R.D. 320 at 328 (common question "whether Northstar is liable for calls placed on its behalf through Yodel's system"); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2017 U.S. Dist. LEXIS 69307, *17 (N.D. Cal. May 5, 2017) (finding named defendant's vicariously liability for calls made by an entity it contracted with common question and certifying class under the TCPA).

Similarly, whether a disclosure authorizing calls by the "Helping Hands Association", but making no mention of Exploria, qualifies as "prior express written consent" is also a common question for the class. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 806 (7th Cir. 2017) (consent is a common question in a TCPA case where the question was resolved by considering the terms of a customer loyalty card); *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (class certification appropriate in TCPA cases where plaintiffs "advance any viable theory

9

employing generalized proof concerning the lack of consent"); *Bridging Cmtys Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1124-25 (6th Cir. 2016) (reversing denial of class certification in a TCPA case where "the class-wide evidence presented . . . show[ed] an absence of consent.").

  **c.**  <u>Mr. Moore's Claims are Typical of the Class's Claims</u>

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). In general, a claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

In this case, Mr. Moore and each class member received prerecorded messages utilizing the same technology as part of a uniform calling campaign. The fact that the calls were physically dialed by two different vendors (Yodel and Prospects DM) does not defeat typicality. *See Reed v. Advocate Health Care*, 268 F.R.D. 573, 579 (N.D. Ill. 2009) (Typicality is a "low hurdle" that "requires neither complete coextensively nor even substantial identity of claims.") As shown above, all of the calls at issue, whether placed by Yodel or Prospects DM, (i) used the same prerecorded soundboard technology, (ii) were placed to leads purchased by Yodel; (ii) which supposedly originated at websites containing a disclosure authorizing calls from the "Helping Hands Association" but not mentioning Exploria (raising the same common question regarding consent); and (iii) utilized the same script, stating the caller was a "Trip Advisor" from "the Helping Hands Association," offering a 3 night stay in "magical Orlando" at Exploria's Summer Bay Resort, and set forth the exact same demographic requirements to qualify for the offer.

**d.** Plaintiff and his Counsel are Adequate

The adequacy requirement ensures the plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement "is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Fournigault v. Independence One Mortf. Corp*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

Plaintiff's counsel have extensive experience and proven success with class actions brought under the TCPA, achieving some of the largest settlement in the history of the TCPA. They have been appointed as class counsel in this District numerous times. Ex. 23 - Paronich Decl.; Ex. 24 - Keogh Decl.; Ex. 25 - Sostrin Decl.. Mr. Moore has also vigorously prosecuted this action, including sitting for a deposition, participating in the discovery process and availed himself to all phases of litigation. Ex. 26 - Moore Decl. He also understands his duties as a class representative. *Id*. In fact, Judge Kennelly appointed Mr. Moore as a class representative in November of last year in a TCPA case. *See Moore v. Tribune Publishing Company*, Civil Action No. 20-cv-7666, ECF No. 39 (N.D. Ill).

### III. The Class is Demonstrably Ascertainable

Although not an element of Rule 23, Courts have examined whether the class is ascertainable. This is not a stringent requirement, but only requires the class be defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. July 28, 2015). Class membership here is readily determined by objective criteria: the promotion of Summer Bay, the use of a prerecorded voice, the number called, the date of the call, the type of phone called, and the initiation of a transfer to Club Exploria. Indeed, Plaintiff's expert has already utilized these objective criteria to identify the class member's telephone numbers from the call records produced

11

by Prospects DM and Yodel. Nothing more is required.

Indeed, ascertainability is often established in TCPA actions, as it is here, through the compilation of a list of telephone number belonging to the individuals that satisfy the class criteria. *See e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D. Ill. 2014) ("it is fairly clear that the identities of the persons whose numbers are on plaintiffs' list of 930,000—indeed, the subscribers for those numbers at the time defendants called them—are sufficiently ascertainable."); *George v. Shamrock Saloon II, LLC*, 2020 U.S. Dist. LEXIS 5646, * 21 (S.D. N.Y. January 13, 2020) (ascertainability satisfied where "each individual's cell phone number can be found on a list, which Plaintiff's expert used in creating his report.")

Plaintiff has already identified the class members' telephone numbers and need not identify additional contact information, such as their names and addresses, to establish ascertainability. Indeed, Rule 23 does not require that *any* contact information for class members be obtainable at any stage of litigation, as the rule allows for certification and notice even by publication where class members cannot "be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); see also *Mullins,* 795 F.3d. at 665 ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail. When that is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process.")

Nevertheless, if necessary for notice, Plaintiff can provide direct notice of certification to the vast majority of the class by subpoenaing the telephone carriers for the names and addresses of the persons subscribing to the telephone numbers at issue at the time of the calls. *See* Ex. 21 at ¶¶ 4, 28, 40-49; Ex. 22 at ¶¶ 19-25. Plaintiff's counsel has successfully subpoenaed carriers to obtain class member contact information in other TCPA cases as well. *See Ex. 25* at ¶ 12.

**IV.     The Requirements of Rule 23(b)(3) are Satisfied.**

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

a.     <u>Common Issues Predominate over any Individual Issues</u>

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Predominance is satisfied when "the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation omitted).

The predominance analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 809 (2011). A plaintiff does not need to "prove that each 'element of her claim is susceptible to classwide proof.'" *Amgen,* 568 U.S. at 469 (citation and alterations omitted). Yet here, each element of the class members' TCPA claim *is* amenable to classwide proof, making predominance an easy hurdle.  To succeed, Plaintiff must establish three elements to prove the class members' claims: (1) use of an artificial or prerecorded voice (2) in a telemarketing call (3) to a telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). Each of these elements will be proven with common evidence focused on the conduct of Club Exploria and its agents or subagents, requiring no evidence from individual class members.  Elements (1-2) will be proven by the call records, soundboard scripts, email communications between Exploria and its vendors, the testimony of

13

Exploria and its vendors and the testimony of Plaintiff's expert witness. Likewise, element (3) will be proven by the calls records and through testimony of Plaintiff's expert witness.

Vicarious liability. Whether Club Exploria is vicariously liable for the calls is also a central issue in this case. Vicarious liability is necessary for effective enforcement of the TCPA because companies like Club Exploria who profit from telemarketing "are in the best position to monitor and police TCPA compliance by third-party telemarketers," and otherwise consumers would be left to chase down third-party telemarketers that are commonly "judgment proof, unidentifiable, or located outside the United States." *In re Dish Network*, 28 FCC Rcd. at 6588.

Courts routinely certify classes under Rule 23(b)(3) in cases where vicarious liability for TCPA violations is at issue. *See, Braver*, 329 F.R.D. 320 at 328 (common question "whether Northstar is liable for calls placed on its behalf through Yodel's system"); *Abante*, 2017 U.S. Dist. LEXIS 69307 at *17 (vicarious liability for calls placed by vendors is a common question); *McCurley v. Royal Seas Cruises*, 331 F.R.D. 142, 169 (S.D. Cal. 2019) (same); *Moser v. Health Ins. Innovations, Inc.*, 2019 U.S. Dist. LEXIS 132790, 20-22 (S.D. Cal. Aug. 2, 2019) (same) (vacated on other grounds at 8 F.4th 872); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 188 (E.D. Pa. 2014) (same); *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1013 (9th Cir. 2019) (affirming vicarious liability decision at summary judgment applicable to class); *Krakauer*, 925 F.3d at 661–62 (affirming jury verdict on vicarious liability after trial on class claims).

The same is true in this case. Exploria's vicarious liability is conclusively established through its contracts and communications with its vendors, w█████████████████████████ ████████ ████████████████████████████, and establish Exploria's day to day control over the campaign. See Doc. 165. No evidence from individual class members is required and no hypothetical individual issues concerning vicarious liability are likely to predominate this action.

14

<u>Consent</u>. As shown above the question of "prior express written consent" is also a common question in this case. Namely, whether a website disclosure that makes no reference whatsoever to Exploria "clearly authorizes the seller [Exploria] to deliver or cause to be delivered to the person called advertisements or telemarketing messages" is a common question that will resolve the issue of consent for the entire class. *See* 47 C.F.R. § 64.1200(f)(9)(i). As shown above, the undisputed evidence shows that the consent disclosures in this case were all the same in that regard. Courts that have considered the question have ruled that such disclosures fail qualify as "prior express written consent" as a matter of law. *See Mantha*, 2021 U.S. Dist. LEXIS 245059 at * 23; *Williams*, 2021 U.S. Dist. LEXIS 27496 at *15.

> b. <u>A class action is a superior method for resolving claims under the TCPA</u>.

"Rule 23(b) was designed for situations … in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the average class member received only two prerecorded calls on the campaign and thus could recover only between $1,000 and $3,000 if they filed their own lawsuits and established a negligent violation of the TCPA. Since the TCPA is not a fee shifting statute, individual actions are not feasible even if the Court were to treble damages upon a finding of willfulness, as attorneys' fees would greatly exceed the recovery. *See Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 593 (N.D. Ill. 2018) (class members had little incentive to bring individual actions given "minimal stake" of the TCPA action).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves this Court to certify the class, appoint Plaintiff as class representative and appoint Plaintiff's counsel to be counsel for the class.

Respectfully Submitted,

By:      */s/ Timothy J. Sostrin*
Timothy J. Sostrin
Keith J. Keogh
KEOGH LAW, LTD.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
keith@keoghlaw.com
tsostrin@keoghlaw.com

and

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com


*Attorneys for Plaintiff*

16