IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE MOORE, on behalf of
Himself and other similarly
situated,

               Plaintiff,

        v.

CLUB EXPLORIA, LLC,

               Defendant.

Case No. 19 C 2504

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

In 2019, Plaintiff George Moore brought action against Defendant Club Exploria for alleged violations of the Telephone Consumer Protection Act. On October 4, 2022, Defendant filed a Motion for Summary Judgment [Dkt. No. 212]. On October 5, 2022, Plaintiff moved for Class Certification [Dkt. No. 213]. For the reasons herein, Defendant's Motion for Summary Judgment [Dkt. No. 213] is denied. Plaintiff's Motion for Class Certification [Dkt. No. 213] is granted as described herein.

### I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. LOCAL RULE 56.1 STATEMENTS

The parties have submitted statements pursuant to Local Rule 56.1. Defendant Club Exploria ("Exploria") claims that

Plaintiff George Moore's ("Moore") Response to Defendant's
Statement of Material Fact does not comply with Local Rule 56.1(c)
because it contains legal argument and additional facts.
Therefore, such responses ought to be stricken and disregarded,
citing *Cady v. Sheahan,* 467 F.3d 1057, 1060-61 (7th Cir. 2006).

On that, Exploria is correct. One need only read the response
of Moore to Exploria's Statement of Material Fact No. 2. The
request reads:

> As part of its business, Club Exploria sold
> vacation packages for Summer Bay through various
> marketing channels, including telephone campaigns
> using leads developed by third parties. Ex. 1, Am.
> Compl. ¶¶ 2-3; Ex. 2, Rogers Tr. 12:4-12:7.

The response is:

> Response: Denied that the "leads" were developed
> exclusively by third parties. Exploria reviewed and
> expressly approved of the "opt-in" language that it
> wanted the leads to agree to in a communication
> with Spencer Green, including the language at
> diabeteshealth.info. Ex. 1, Rogers Tr. 76:10 -
> 77:1; Ex. 2, CE-00148 (Spencer Green explaining
> that Prospects DM works with the websites,
> providing diabeteshealth.info as an example,
> explaining that "all websites have the same TCPA
> opt-in at the time of enrollment," and Exploria
> approving). And Exploria went through the same
> review and approval process with Yodel. Ex. 1,
> Rogers Tr. 79:9-12 (showing Vice President of
> Marketing and corporate counsel requesting to
> review the website language), 80:1-15; 105:21
> 106:1; Ex. 3, CE-04690 (Exploria reviewing opt-in
> language provided by Yodel); Ex. 4, CE-04608
> (Exploria explaining that its legal team had
> reviewed the opt-in language).

> Moreover, Exploria "developed" the "leads" by instructing its vendors on the parameters required for the individuals called, including that they were from one of 16 "Target areas", that they were older than 25, that they had a household income of over $65,000, and that they have active credit cards. Ex. 5, CE-00017.

> Otherwise, admitted.

The request merely asked Moore to agree that Exploria used leads developed by third parties. Moore does not deny this. He over burdens the Court with a 15-line response which essentially says that Exploria did not rely exclusively on third parties, but in the last line says, "Otherwise admitted."

The answer to Statement of Fact No. 2 is merely one example. The responses to subsequent statements of fact are even less compliant.

Statement of Fact No. 3 requests admission that Exploria contracted with GaI and Acquis for TCPA inbound calls that were compliant with the TCPA.

Instead of admitting or denying, Moore rambles on for 52 lines refuting that Exploria contracted "solely" for inbound calls and denied that Exploria contracted for TCPA compliant calls and proceeds to use the next 44 lines of his answer discussing the entire theory of the Plaintiff's case. It ends with the cryptic "Otherwise, admitted."

Unfortunately, Exploria did not itself comply with the spirit of Rule 56.1.  Time after time when asked to admit that Exploria's contracts contained certain provisions, Exploria refused to admit or deny the obvious:

### STATEMENT OF ADDITIONAL FACT NO. 17

Exploria's written agreements with both Acquis and GaI further allowed Exploria to terminate the relationship and revoke their authority to make calls on its behalf. Ex. 85, CE-00020¬24 at ¶¶ 11-12; Ex. 86, CE-00125-29 at ¶¶ 11-12.

### RESPONSE NO. 17

The cited contracts are written documents and are the best evidence of their own contents. Club Exploria disputes any assertions in Statement No. 17 that are inconsistent with the cited documents.

This obfuscatory conduct did not assist the Court in deciding the Motion for Summary Judgment.  The main purpose of Rule 56.1 is to provide the Court the ability to determine easily whether issues of fact exist.

While the Court is tempted to strike the responses of both parties, the Court deems that much unnecessary.  It concludes that the basic issues in the case are whether the calls were non-compliant with the TCPA and whether the violations are chargeable to Exploria.  The Court could, and did, arrive at its decision upon consideration of undisputed facts.

**B.   BACKGROUND**

- 4 -

The Defendant, Club Exploria, LLC ("Exploria"), is a vacation ownership company that owns and manages vacation properties, one of which is known as Summer Bay at Orlando, Florida. It sells vacation packages utilizing various marketing channels, including telemarketing campaigns using leads developed by third parties. The Plaintiff, George Moore ("Moore"), is a resident of Illinois, and says that he received two prerecorded telephone calls made on behalf of Exploria even though he signed onto a national "do not call" site. He seeks to represent a class of similarly situated individuals who also received unwanted marketing phone calls.

As part of its marketing program for Summer Bay, Exploria contracted with Ga Investments, Inc. ("GaI") to make outbound telephone calls using a prerecorded telemarketing message from a script that it approved. The script stated that the caller was associated with "Trip Advisor" or the "Helping Hands Association" and offered a three-night stay at the Summer Bay Resort at no cost to the recipient. If the recipient indicated interest and passed a brief quiz to establish eligibility, the call was to be transferred to Exploria for a live sales talk. If any complaints resulted from the calls Exploria asked GaI to investigate them.

Prior to GaI commencing work under the agreement with Exploria, GaI sub-contracted with Acquis LLC ("Acquis") to perform its responsibilities under its contract with Exploria. At the

same time Exploria also contracted with Acquis to perform the telemarketing duties for Summer Bay. The agreements required GaI and Acquis to deliver verbatim a script that had been agreed upon and to make phone calls that were compliant with all laws including the Telephone Consumer Protection Act ("TCPA"). The agreements also made clear that neither GaI nor Acquis was an agent of Exploria. The agreements authorized GaI and Acquis to utilize a company called Prospects DM to operate as a call center for the telemarketing.

The TCPA requires a telemarketer using an automated calling system or a prerecorded script to obtain a written, signed statement from the recipient authorizing such calls beforehand. The statements giving consent are to be obtained and maintained at what are known as "opt-in" websites. GaI and Acquis utilized "opt-in" websites owned by others, the identity of which Exploria was unaware. Exploria did not investigate the owners of the opt-in registry websites, but it did review and approve the websites themselves as appropriate. The websites listed the names of the individuals who consented to be contacted by telemarketers but did not mention Exploria, as the seller of product to be telemarketed.

The Complaint alleges on two occasions, September 14, 2018, and October 16, 2018, Moore received prerecorded calls from telemarketers on behalf of Exploria. One caller identified himself

as associated with "the Helping Hand Association," and the other associated with "Trip Advisor." Both gave a spiel promoting the Summer Bay Resort owned by Exploria. Moore says that he received these calls despite the fact that he was on the national do-not-call registry and had not signed the opt-in registry. Exploria contends that his number was in fact on an opt-in telephone registry that was used in this case. Moore listened to the pitch to determine who the caller represented but hung up before being transferred to Exploria because he was not interested. The registered holder of the telephone number which Moore answered, is disputed by the parties. Exploria contends that the number is listed under Moore's wife's name, but Moore claims that he is the holder of the account. (For purposes of this Motion, it is assumed Moore was the registered holder.) He states that he did not give consent to be called using a prerecorded voice in its telemarketing campaign on Exploria's behalf and, therefore, he claims that the two calls violated the TCPA.

Exploria denies that it initiated any telephone call to Moore; rather any such calls were initiated by Acquis, Prospects DM, or Tele-Skills, a third-party call center located in the Philippines; and that the callers were contractually obligated to be initiated in compliance with the TCPA. Exploria has moved for summary judgment.

## C. <u>DISCUSSION</u>

The TCPA was enacted to regulate the telemarketing industry to protect consumers from annoying telephone calls. The Act prohibits any person, without prior express written consent, from making a telephone call, using an automatic system, to a telephone number assigned to a cellular telephone service where the called person is charged for the call. 47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communication Commission held that there may be vicarious liability for TCPA violations under federal common-law principles of agency. *Warciak v. Subway Restaurants, Inc.,* 949 F.3d 354 (7th Cir. 2020).

Exploria's Motion is straightforward: it is not directly liable to Moore because it did not initiate either call to him, and, to be directly liable under the TCPA, a person must initiate the call. *Smith v. State Farm Mutual Ins. Co.,* 30 F.Supp. 3d. 765, 770 (N.D. Ill, 2020). A call is initiated when a person takes steps physically to place the call. *Id.* Moore doesn't contend that Exploria initiated the calls. Plaintiff's Brief in Opposition. P.1 ("Exploria's agent placed prerecorded calls to plaintiff . . ..").  The calls were initiated by either Prospects DM or Tele-Skills.

Exploria also denies that the call initiators were its agents, either actual or apparent. To round out its defense, it also

denies that it ratified the calls made to Moore. Moore takes issue with all of these defenses: he contends that the calls were made by Exploria's actual agent, and if not, were made by its agent through apparent authority, and, in any event, Exploria ratified the acts of the call initiators by accepting the benefits of the calls.

Exploria relies on the contract language in its agreements with GaI and Acquis, and that contained in the subcontracts between GaI, Acquis, and Prospects Dm, which clearly state that GaI, Acquis, and Prospects DM were not Exploria's agents and only had authority to initiate telephone calls that were TCPA compliant. Exploria doubts that either of the two calls violated the TCPA, but, if they did, it argues, they were the responsibility of its independent contractors. There is no evidence, it says, that it authorized, either expressly or by implication, anyone to place non-compliant TCPA calls.

Moore responds to the Motion arguing that the FCC and the Seventh Circuit have held that a TCPA defendant can be vicariously libel for a lead generator's unauthorized robocalling under actual authority, apparent authority, or ratification, citing *Dish Network, LLC,* 28 F.C.C. Rcd. 6674, 6584 (2013), and *Bilek v. Fed. Insurance Co.,* 8 F.4th 581, 587 (7th Cir. 2021).

In *Dish Network, LLC,* the FCC held that a seller may be vicariously liable for calls placed on its behalf by third-party telemarketers because it "is in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588. Seller liability "gives the seller appropriate incentives to ensure that their telemarketers comply with [the FCC's] rules." *Id.*

*Bilek,* citing *Dish Network,* involved a consumer suit under the TCPA alleging unauthorized telemarketing calls soliciting the purchase of health insurance. 8 F.4th at 587. The district court dismissed the case under Rule 12(b)(6) finding that the plaintiff did not plausibly allege sufficient facts to establish an agency relationship. *Id.* The Seventh Circuit reversed holding that the plaintiff had in fact alleged enough to get by the motion to dismiss. *Id.* The court deemed important the allegation that the robocalls had been part of a telemarketing campaign to sell the defendant's health insurance. *Id.* The defendant contracted with a telemarketer, who in turn contracted with lead generators that initiated the robocalls. *Id.* According to the complaint, the defendant gave the telemarketer and the lead generators authority to use its trade name, approved the scripts used, and disclosed to them its proprietary pricing and product information for use in sales pitches to the plaintiff. *Id.* The defendant accepted

benefits from the lead generators' robocalls, through advertising and sales of its insurance products. *Id.* The telemarketer received payments for generating sales. *Id.* The Seventh Circuit found that plaintiff had plausibly alleged an actual agency relationship. *Id.*

Moore also cites *Bakov v. Consolidated World Travel,* 2016 WL 4146471 (N.D. Ill., Aug. 4, 2016), and *Williams v. Pillpack,* 2021 WL 535215 (W.D. Washington, Nov. 3, 2021). He claims that *Bakov* involved a telemarketing contract with the same terms as are present here, *i.e.,* approval of the script, weekly reports on calls, and the right of the defendant to terminate the agreement. He claims that *Pillpack* is factually identical to this case. In *Pillpack,* the court held that failure to list the name of the seller of product on the relied upon opt-in registry site did not comply with the TCPA's consent requirement, thus alleging a TCPA violation.

The Court has reviewed the agreements between GaI, Acquis and Exploria, and the agreements between Acquis and Prospects DM, and finds that, although they were drafted to avoid agency relationship between any of the telemarketers and lead generators and Exploria, Exploria can nevertheless be in violation of the TCPA as an agent. Although Exploria relies on the contractual provision requiring the telemarketers to make only TPCA compliant calls, the agreements also called for the telemarketers to use prerecorded voice scripts

- 11 -

that Exploria approved. The evidence shows that Exploria had the opportunity to review the opt-in site registries provided by the telemarketers that did not list Exploria as the seller of the product promoted. The TCPA was amended in 2012 to require that a call using a prerecorded voice for telemarketing, must be made with the prior express written consent of the called party and the consent must state the name of the seller of the product to be telemarked. 27 F.C.C. Rcd. 1830, 1838 (2012). The opt-in registry used by telemarketers did not mention Exploria. As this Court stated in *Bakov:*

> [D]efendant cannot eschew liability by pointing out that VVI [the telemarketer] was contractually obligated to obey the TCPA. Defendant cannot create a contract with a company to make calls on its behalf that by its terms requires it to violate the TCPA and then shirk liability by arguing that VVY was contractually obligated to bey the TCPA."

Exploria negotiated a contract that requiring the telemarketer to obey the TCPA, but also required the telemarketer to use a prerecorded voice for the telephone calls obtained from an opt-in registry that did not mention itself, which, like in *Bakov,* may constitute a TCPA violation. This prevents summary judgment. Defendant's Motion for Summary Judgment [Dkt. No. 212] is denied.

## II.  <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

### A.  <u>BACKGROUND</u>

Plaintiff Moore has filed a Motion for Class Certification seeking to represent a class he describes as follow:

> All persons in the United States subscribing to a cellular telephone number that received a prerecorded soundboard call promoting Club Exploria's Summer Bay Resort between March 1, 2018 and August 15, 2019, where the soundboard operator initiated a transfer of the call to Club Exploria.

Since the Court has denied Exploria's Motion for Summary Judgment, the Motion is ripe for consideration.

### B. <u>LEGAL STANDARD</u>

Class certifications are governed by Federal Rule of Civil Procedure 23. Specifically, in order to qualify as a class action, the proponent must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy; and satisfy the requirements of Rule 23(b)(3): questions of law and fact common to the class members predominate over questions that affect only individual members and a class action is superior to other procedures.

Exploria takes aim at all four of the Rule 23(a) requirements, arguing: Moore fails to meet the numerosity requirements; there is no commonality with the other proposed class members; Moore's claims are not typical; and he is not an adequate representative. Exploria also claims that the Rule 23(b)(3) requirements cannot be met because the class cannot be ascertained due to inadequate

records as to the proposed identities of the alleged illegal call recipients.

## C.  <u>DISCUSSION</u>

### *1. Class Certification Requirements*

#### *a.  Numerosity*

Moore's case involves 66,682 unique telephone numbers who received calls that allegedly violated the TCPA. Exploria contends that some of the calls were made on behalf of developments other than Summer Bay. However, the evidence consisted of contract orders made to the telemarketers, GaI, Yodel, and Acquis, that specified calls to be made on behalf of Summer Bay in accord with an agreed script. The Court, therefore, finds that the numerosity requirement is met.

#### *b.  Commonality*

To meet the commonality requirement the proposed class members' claims must share common questions of law or fact. "A common nucleus of operative facts is usually enough to satisfy the commonality requirement." *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998). A common nucleus of operative facts is usually present when a defendant engages in standardized conduct toward the members of the proposed class. *Id.* Exploria argues that individual issues predominate because some recipients gave consent, some of the calls were not prerecorded, and the subject of some of the calls was

- 14 -

Exploria property other than Summer Bay. Moore however states that the main issue in the case is whether the consent allegedly obtained by the telemarketers was invalid because it did not mention Exploria as the seller of the product that was the subject of the telemarketing calls. He also states that Exploria contracted for prerecorded telemarketing calls and, if there might have been a stray one made by a live person, it was contrary to the contracts with the telemarketers. Also, the calls were made on behalf of the Summer Bay program. Here the question of commonality as far as the Court can see involves the issue of consent. The reason Exploria's Motion for Summary Judgment was denied was because the calls appear to have been made without proper consent. The Court finds that Moore has met the commonality requirement.

### c. Typicality

"A plaintiff's claim is typical if it arises from the same event or practice, or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225 (7th Cir. 1983). It can be satisfied even though there may be factual differences between the plaintiff and other class members; similarity of legal theory may control over fact differences. *Id.* Exploria makes much of the fact that Moore did

- 15 -

not remain on the line to hear the Exploria spiel, did not receive or respond to the qualifying questioning, did not visit the opt-in web registration site, but was on the National Do Not Call Registry. While these factual differences exist, his legal theory, *i.e.,* prerecorded calls made without proper consent of the recipient violates the TCPA. Moore was called and received a prerecorded message that mentioned Exploria as the product seller to which he had not consented to receive. This arguably violated the TCPA, which relies on the same legal theory the other class members have. The Court finds that typicality is met.

### d. Adequacy

Adequacy has two components: (1) the plaintiff's counsel must be experienced, qualified, and be able to conduct the litigation, and (2) the class representative must not have claims antagonistic to or conflicting with the claims of other class members. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682 (7th Cir. 1985). Exploria does not take issue with Moore's counsel's ability. It contests Moore's adequacy to represent the class. According to Exploria, Moore is subject to two unique defenses: he did not receive a verbatim recorded message and he did not consent to be called. However, as Moore states, the gravamen of his TCPA claim is that individuals received telemarketing calls without their express, written consent. So, it makes little difference that

Moore did not consent because none of the class members consented. He received a telemarketing call without consent even though the call was not identical to the calls that the other class members received. Moore testified that he received a prerecorded telemarketing call without his consent that was made on behalf of Exploria's Summer Bay. Thus, his claim is the same as the others.

Exploria also points out that Moore is a serial TCPA filer. However, the Seventh Circuit has said that frequent litigators may be better able to manage the litigation, so that is not a disqualification. *Murray v. GMAC Mort, Corp.,* 434 F.3d 948 (7th Cir. 2006). All Moore did was answer the telephone when the telemarketer called him. He did not entrap anyone. He did not create the violation. The Court finds that the Plaintiff is an adequate representative of the class.

### 2. *Rule 23(b)(3) Requirements*

Rule 23(b)(3) has two requirements: questions of law and fact common to the members predominate over law and facts affecting only individual members, and a class action superior to other available methods for fair and efficient adjudication of the controversy. Exploria contends that Moore cannot satisfy these requirements because there is no way to ascertain the members of the class. It argues that the call logs, upon which Moore relies, lack sufficient information to identify class members, which will

- 17 -

make notice to the class members impossible. Exploria says that large quantities of cellular numbers are reassigned daily so that the logs lack historical subscriber data, and, in addition, prepaid cellular subscribers make up 15% of all connections and these users do not provide identifying information. Also, carriers rent bandwidth to other carriers so that identification of the appropriate carrier for each call will be impossible. Exploria also argues that the calls involved differing campaigns run on its behalf, the scripts changed over time, calls were made by different telemarketers, and the logs don't exclude those receiving live calls, and those who consented to be called.

Moore responds that Exploria is urging the Court to impose the heightened ascertainability requirement that was specifically rejected by the Seventh Circuit in *Mullins v. Direct Digital, LLC,* 795 F.3d 654 (7the Cir. 2015). *Mullins* involved the difficulty of identifying class members for purposes of giving notice. *Id.* The court's reason for rejecting heightened ascertainability under Rule 23(b)(3), was because class actions are most essential where the class claims involve low-cost goods or services that do not provide incentives for individuals to bring solo actions. *Id.* The court suggested that the superiority requirement of Rule 23(b)(3) should not be sacrificed to the manageability requirement. *Id.* Refusing to certify on manageability grounds should be the last

resort and the ascertainability problem can be dealt with at a later date when the extent of a problem is better known. *Id.* The court suggested a variety of types of notices that can be considered depending on cost and benefits. *Id.* If ascertainability is insurmountable, decertification could be considered. At the certification stage denial should be the last resort.

The other arguments raised by Exploria all center around its position that the opt-in consent procedure was not in violation of the TCPA. The Court has already considered this at the summary judgment stage and rejects these renewed arguments. The Court therefore rejects Exploria's argument that the proposed class violates Rule 23(b)(3).

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion for Summary Judgment [Dkt. No. 112] is denied.

The Court grants the Motion for Class Certification [Dkt. No. 113] and certifies a class as follows:

> All persons in the United States subscribing to a cellular telephone number that received a prerecorded soundboard call promoting Club Exploria's Summer Bay Resort between March 1, 2018, and August 15, 2019, where the soundboard operator initiated a transfer of the call to Club Exploria.

- 19 -

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated: 8/17/2023