### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **GEORGE MOORE**, on behalf of Himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **CLUB EXPLORIA,** <br><br> Defendant. | **Case No. 19 C 2504** <br><br> **Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions. The first is Defendant Club Exploria, LLC's ("Club Exploria"), 12(b)(1) Motion to Dismiss for lack of subject-matter jurisdiction. (Dkt. No. 239). Next is Plaintiff George Moore's ("Moore") Motion to Approve Class Notice. (Dkt. No. 250). For the reasons stated herein, the Court rejects Defendant's Motion and grants Plaintiff's Motion.

### I. BACKGROUND

Defendant Club Exploria is a vacation company that owns and manages vacation properties. To generate business, Club Exploria contracted with Yodel Technologies, LLC ("Yodel") for its telemarketing services. On two occasions, September 14, 2018, and October 16, 2018, Plaintiff Moore received prerecorded calls made by Yodel on behalf of Club Exploria. These calls form the basis of Plaintiff Moore's class action lawsuit against Club Exploria and Yodel for violations of the Telecommunications Protection Act ("TCPA"),

47 U.S.C. § 227, currently before the Court. Yodel settled the matter out of court, while Club Exploria defended itself against liability.

On August 17, 2023, this Court denied Defendant's Motion for Summary Judgment, finding that the calls at issue were non-compliant with the TCPA and chargeable to Club Exploria. (Dkt. No. 225). The Court then certified the class. *Id*.

On September 27, 2023, Club Exploria submitted a flurry of motions, including Defendant's Motion to Dismiss for lack of subject-matter jurisdiction before the Court now. (Dkt. No. 239). The basis for the Motion is that Plaintiff lacks standing to bring his claim. A month later, on October 27, 2023, Club Exploria filed to withdraw its Motion to Dismiss without prejudice, claiming that its filing was technically premature. (Dkt. No. 257). While federal courts are generally permitted and encouraged to provide leave to amend pleadings "when justice so requires," FED. R. CIV. P. 15(2), Club Exploria only asserts that there will be "additional factual support" for their motion after the class has been notified. Club Exploria otherwise intends to "renew" its motion. (Dkt. No. 257 ¶ 6). The Court struggles to understand how, *after* the close of discovery, additional facts might change its standing analysis, and Defendant has not provided one. But in any case, we "have an independent obligation to confirm our jurisdiction." *Gadelhak v. AT&T Servs.,* 950 F.3d 458, 461 (7th Cir. 2020) (citing *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990)). We therefore deny Defendant's request for leave to fulfil our obligation and confirm our jurisdiction below.

## II. **DEFENDANT'S MOTION TO DISMISS**

### A. Legal Standard

Defendant moves to dismiss Plaintiff's complaint for lack of standing. To have standing, the plaintiff must allege to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 331. Thus, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citation omitted). Instead, "a 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* at 340.

Defendant claims that the Plaintiff-class fails to allege a (1) concrete injury that is (2) traceable to Defendant's conduct. We dissect and reject each argument below.

### B. Discussion

#### 1. Concrete Harm

Moore's complaint alleges that he received unwanted calls from Club Exploria despite having his number registered on the National Do Not Call Registry and informing Exploria that he did not want to be contacted. There is no serious question that unwanted calls to individuals on the Registry are a concrete injury under the TCPA. *Gadelhak v. AT&T Servs.,* 950 F.3d 458 (7th Cir. 2020) (finding that allegations of unwanted text messages constitute a concrete harm under the TCPA); *Aranda v. Caribbean Cruise Line, Inc.,* 202 F.Supp. 3d 850, 858 (N.D. Ill. 2016) ("It does not matter whether plaintiffs lack

additional tangible harms like loss of cell phone battery life, actual annoyance, and financial losses; Congress has identified that such unsolicited telephonic contact constitutes an intangible, concrete harm, and plaintiffs have alleged such concrete harms that they, themselves suffered.")

Instead, Club Exploria argues that Moore's allegations are not concrete because some of the calls made on Club Exploria's behalf were made with consent. However, as noted in Plaintiff's Reply, consent is an affirmative defense. *Blow v. Bijora, Inc.,* 855 F.3d 793, 803 (7th Cir. 2017) ("Express consent is an affirmative defense on which the defendant bears the burden of proof.") The Seventh Circuit has clarified that when an affirmative defense defeats a claim, "it does so on the merits, not by displacing jurisdiction." *Our Country Home Enter., Inc. v. Comm'r of Internal Revenue,* 855 F.3d 773 (7th Cir. 2017); *accord Kenmen Eng'g v. City of Union,* 314 F.3d 468, 479 (10th Cir. 2002) (finding that "res judicata is *not a jurisdictional bar*; it is an affirmative defense") (emphasis added). This principle is well illustrated by *Van Patten v. Vertical Fitness Group, LLC,* where the Ninth Circuit held that the plaintiff had standing to sue under the TCPA in the very same decision that the court found, on the merits, that the plaintiff consented to the unwanted contacts. 847 F.3d 1037, 1043-44.

Confronted directly with the consent-standing issue in *Oliver v. TTC-Ameridial, LLC,* a court in this District reasoned that, "[w]ere courts to treat the TCPA consent defense as implicating standing, then virtually every case in which a defendant claimed that a plaintiff consented to calls would generate a Rule 12(b)(1) motion . . . that would be indistinguishable from a trial on the merits." 2018 WL 1255017, at *4 (N.D. Ill.,

Mar. 12, 2018). The *Oliver* court did not think it appropriate to import an affirmative defense into a threshold determination of standing, and neither does this Court. Thus, any argument about consent cannot defeat Plaintiff's complaint at this stage.

### 2. Traceability

Club Exploria also contends that Moore's injury is not traceable to Club Exploria's conduct. To establish traceability, the plaintiff must show only "that 'but for' the violation, the injury would not have occurred." *Greater Rockford and Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391 (7th Cir. 1993) The threshold is low, as "[s]tanding is not always lost when the causal connection is weak, and a defendant's actions need not be 'the very last step in the chain of causation.'" *J.B. v. Woodard,* 997 F.3d 714, 720 (7th Cir. 2021) (quoting *Doe v. Holcomb,* 883 F.3d 971, 978 (7th Cir. 2018)).

Relying on the Eleventh's Circuit ruling in *Cordoba v. DIRECTV, LLC,* Club Exploria argues that the calls at issue here are not traceable to its conduct because Club Exploria neither placed nor directly identified themselves in the calls. 942 F.3d 1259 (11th Cir. 2019). Club Exploria misreads *Cordoba*.

In *Cordoba,* plaintiff Sebastian Cordoba ("Cordoba") allegedly received at least eighteen phone calls from DIRECTV and its third-party telemarketer, Telecel, even though Cordoba was on the National Do Not Call Registry and repeatedly told the defendants that he did not want to be called. *Id.* at 1266. Cordoba sought to represent two classes in claims brought under the TCPA for the defendants' alleged failure to maintain a TCPA-compliant internal do-not-call list, both of which were certified by the trial court. *Id.* at 1264. On appeal, the second class, which was not at issue, was defined as "all individuals

- 5 -

whose telephone numbers were on the National Do Not Call Registry but nevertheless received more than one DIRECTV marketing call from Telecel on or after October 27, 2011." *Id.* at 1266. The first class, which was at issue on appeal, was defined as individuals whose telephone numbers were not on the National Do Not Call Registry and had not told the defendants to stop calling. *Id.* at 1267.

First, the problem the Eleventh Circuit had with the second class of plaintiffs was not that the *defendants* did not directly place the calls or did not identify themselves – nothing to do with traceability. The problem was that the *claimants* never listed their numbers on the National Do Not Call Registry and had never told the defendants not to call. The Eleventh Circuit explained that "if an individual not on the National Do Not Call Registry was called by Telecel and never asked Telecel not to call them again, *it doesn't make any difference* that Telecel hadn't maintained an internal do-not-call list." *Id*. at 1272 (emphasis added). Hence, the first class could not trace any purported harm back to the defendants' conduct since there was "no remotely plausible causal chain linking the failure to maintain an Internal do-not-call list to the phone calls received by class members who never said to Telecel they didn't want to be called again. These plaintiffs would therefore lack Article III standing to sue." *Id*.

On the other hand, plaintiff Cordoba and the first class had "no problem" meeting the traceability requirement "since those whose numbers [were] on the Registry and nevertheless received marketing calls suffered an injury that is traceable to Telecel's misconduct – if Telecel had followed the law and not called numbers on the Registry, they would not have been injured." *Id.* at 127. Plaintiff-class here also has no problem

meeting the traceability requirement: like the plaintiff in *Cordoba*, Moore asked not to be called, and he is a part of the Do Not Call Registry – and if Club Exploria (and its agents) had followed the law and not called the numbers on the Registry, Moore would not have been harmed. The conduct is traceable to Club Exploria.

Given that the Plaintiff-class does allege a concrete and tradeable injury, the Plaintiff-class has standing, and the Defendant's Motion to Dismiss is accordingly denied.

In their Reply to Moore's Response, Club Exploria raises a new argument that the class lacks standing because "it is clear that Club Exploria does not raise consent as the predicate to defeating standing — rather it is the *subjective* desire to receive calls that defeats standing." Def's Rep. in Supp. of Mot. to. Dismiss at 10 (emphasis added). First, this is a misrepresentation of their initial Motion which was entirely predicated on consent; Defendant's initial Motion mentioned the word "consent" 26 times but never once the word "desire." Any standing argument based on desire is therefore waived. *Laborers' Pension Fund v. W.R. Weis Co.,* 879 F.3d 760, 768 (7th Cir. 2018) ("Our standard is clear: Arguments raised for the first time in a reply brief are waived.")

Regardless, contrary to what Club Exploria asserts, this new argument is merely an attempt to semantically transform an analysis of consent on the merits into a standing analysis. Even in their Reply, Club Exploria admits that plaintiffs' supposed desire is "demonstrated by an improper consent." *Id*. at 11. As discussed in *Oliver, supra* II.B.1, were we to treat the consent defense as implicating standing, then virtually every case in which a defendant claimed that a plaintiff consented to calls would generate a Rule 12(b)(1) motion that would be indistinguishable from a trial on the merits. That is

- 7 -

precisely the problem the Court would run into here were it to impute a "desire" analysis, which relies seemingly entirely on an inquiry into plaintiff's consent. This, the Court will not do.

### III. CLASS NOTICE CERTIFICATION

Now that Plaintiff's standing is established, we turn to Moore's Motion to Approve Class Notice. On August 17, 2023, this Court certified the following class under Rule 2(b)(3):

> All persons in the United States subscribing to a cellular telephone number that received a prerecorded soundboard call promoting Club Exploria's Summer Bay Resort between March 1, 2018, and August 15, 2019, where the soundboard operator initiated a transfer of the call to Club Exploria.

For any class certified under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. (23)(b)(3). The notice proposed by Defendant Club Exploria and agreed to by Plaintiff Moore satisfies Rule 23's requirements. First, the proposed method to deliver the notices, which include email and First-Class U.S. Mail, are sufficient. *Palomar v. SMC Corp. of America,* 2021 WL 5364150, at *XX (S.D. Ind. Sept. 27, 2021) ("courts have relied on email to provide notice of class actions and class action settlements"); *see also In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 351 (N.D. Ill. 2010). Moreover, the email, website, and summary cards contain all of the information that Rule 23 requires. *See* 4 Newberg on Class Actions § 11:53 (4th ed. 2010) ("The notice need not be unduly specific. The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and

constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprize interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.") As such, Plaintiff's Class Action Notice is approved.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (Dkt. No. 239) is denied. The Court grants the Motion to Approve Class Notice (Dkt. No. 250).

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 12/20/2023