# Exhibit A

**No. 25-2721**

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

GEORGE MOORE,

*Plaintiff-Appellee,*

v.

CLUB EXPLORIA, LLC,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of Illinois, No. 1:19-cv-02504, Hon. Edmond E. Chang

## OPENING BRIEF AND REQUIRED SHORT
## APPENDIX FOR DEFENDANT-APPELLANT

Livia M. Kiser
KING & SPALDING LLP
110 North Wacker Drive
Suite 3800
Chicago, IL 60606
(312) 995-6333

Michael D. Roth
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
(213) 443-4355

Paul Alessio Mezzina
 *Counsel of Record*
Amy R. Upshaw
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
pmezzina@kslaw.com

Martha Banner Banks
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
(404) 572-4600

*Counsel for Defendant-Appellant Club Exploria, LLC*

November 20, 2025

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2721

Short Caption: George Moore v. Club Exploria, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Club Exploria, LLC

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

King & Spalding LLP (Appellate)

Troutman Amin LLP; Smith, Gambrell & Russell, LLP, Holland & Knight, Katten Muchin Rosenman Llp (District Court)

(3)      If the party, amicus or intervenor is a corporation:

      i)      Identify all its parent corporations, if any; and

              Appellant is a Delaware LLC with CRE Echo Group, LLC as its managing and sole member.

      ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

              None

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/Paul Alessio Mezzina      Date: 11/20/2025

Attorney's Printed Name: Paul Alessio Mezzina

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ✓    **No** ☐

Address: King & Spalding LLP, 1700 Pennsylvania Avenue NW, Suite 900, Washington, DC 20006

Phone Number: (202) 737-0500      Fax Number: (202) 626-3737

E-Mail Address: pmezzina@kslaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __25-2721__

Short Caption: __George Moore v. Club Exploria, LLC__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Club Exploria, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    King & Spalding LLP (Appellate)

    Troutman Amin LLP; Smith, Gambrell & Russell, LLP, Holland & Knight, Katten Muchin Rosenman Llp (District Court)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Appellant is a Delaware LLC with CRE Echo Group, LLC as its managing and sole member.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: __/s/Livia M. Kiser__    Date: __11/20/2025__

Attorney's Printed Name: __Livia M. Kiser__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✓]

Address: __King & Spalding LLP, 110 N Wacker Drive, Suite 3800, Chicago, IL 60606__

Phone Number: __(312) 995-6333__    Fax Number: __(312) 995-6330__

E-Mail Address: __lkiser@kslaw.com__

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __25-2721__

Short Caption: __George Moore v. Club Exploria, LLC__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Club Exploria, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    King & Spalding LLP (Appellate)

    Troutman Amin LLP; Smith, Gambrell & Russell, LLP, Holland & Knight, Katten Muchin Rosenman Llp (District Court)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Appellant is a Delaware LLC with CRE Echo Group, LLC as its managing and sole member.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: __/s/Michael D. Roth__    Date: __11/20/2025__

Attorney's Printed Name: __Michael D. Roth__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: __King & Spalding LLP, 633 West Fifth Street, Suite 1600, Los Angeles, CA 90071__

Phone Number: __(213) 443-4355__    Fax Number: __(213) 443-4310__

E-Mail Address: __mroth@kslaw.com__

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __25-2721__

Short Caption: __George Moore v. Club Exploria, LLC__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Club Exploria, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    King & Spalding LLP (Appellate)

    Troutman Amin LLP; Smith, Gambrell & Russell, LLP, Holland & Knight, Katten Muchin Rosenman Llp (District Court)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Appellant is a Delaware LLC with CRE Echo Group, LLC as its managing and sole member.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: __/s/Amy R. Upshaw__      Date: __11/20/2025__

Attorney's Printed Name: __Amy R. Upshaw__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [ ]  **No** [✓]

Address: __King & Spalding LLP, 1700 Pennsylvania Avenue NW, Suite 900, Washington, DC 20006__

Phone Number: __(202) 737-0500__      Fax Number: __(202) 626-3737__

E-Mail Address: __aupshaw@kslaw.com__

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>25-2721</u>

Short Caption: <u>George Moore v. Club Exploria, LLC</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Club Exploria, LLC</u>

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>King & Spalding LLP (Appellate)</u>

<u>Troutman Amin LLP; Smith, Gambrell & Russell, LLP, Holland & Knight, Katten Muchin Rosenman Llp (District Court)</u>

(3)      If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

        <u>Appellant is a Delaware LLC with CRE Echo Group, LLC as its managing and sole member.</u>

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None</u>

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/Martha Banner Banks</u>      Date: <u>11/20/2025</u>

Attorney's Printed Name: <u>Martha Banner Banks</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: <u>King & Spalding LLP, 1180 Peachtree Street NE, Suite 1600, Atlanta, GA 30309</u>

Phone Number: <u>(404) 572-4600</u>      Fax Number: <u>(404) 572-5100</u>

E-Mail Address: <u>bbanks@kslaw.com</u>

rev. 12/19 AK

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...............................................i

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................4

STATEMENT OF THE ISSUES ............................................................5

STATEMENT OF THE CASE.................................................................5

    A.    Club Exploria hires TCPA-compliant vendors to market its properties .................................................................5

    B.    Moore sues Club Exploria under the TCPA, and Club Exploria litigates Moore's individual claims...........................8

    C.    After class certification, Club Exploria promptly asserts arbitration as a defense and consistently pursues its arbitration rights.................................................10

    D.    The district court denies Club Exploria the right to compel arbitration ....................................................13

SUMMARY OF THE ARGUMENT .......................................................15

STANDARD OF REVIEW ...................................................................17

ARGUMENT .......................................................................................17

I.    Moore bears a heavy burden to establish that Club Exploria waived its arbitration rights .............................................18

II.    Club Exploria did not waive its arbitration rights before class certification ..........................................................................20

    A.    Defendants cannot waive their arbitration rights as to putative class members before those class members become parties to the litigation ............................20

B.    Even under the Ninth Circuit's outlier rule, Club
      Exploria's litigation conduct would not give rise to
      waiver ................................................................... 27

III.   Club Exploria did not waive its arbitration rights after
       class certification ............................................................. 29

CONCLUSION ............................................................................. 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

STATEMENT CONCERNING THE APPENDIX

REQUIRED  SHORT APPENDIX

# TABLE OF AUTHORITIES

## Cases

*Ackerberg v. Johnson,*
  892 F.2d 1328 (8th Cir. 1989).................................................25

*Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,*
  50 F.3d 388 (7th Cir. 1995)...................................................31

*Chassen v. Fid. Nat'l Fin., Inc.,*
  836 F.3d 291 (3d Cir. 2016) ............................................24, 25

*Christianson v. Colt Indus. Operating Corp.,*
  486 U.S. 800 (1988) ...........................................................36

*Cooper v. Asset Acceptance, LLC,*
  532 F. App'x 639 (7th Cir. 2013) ........................................31

*Cruson v. Jackson Nat'l Life Ins. Co.,*
  954 F.3d 240 (5th Cir. 2020)...............................................26

*Ernst & Young LLP v. Baker O'Neal Holdings, Inc.,*
  304 F.3d 753 (7th Cir. 2002)..........................................17, 34

*Fisher v. A.G. Becker Paribas Inc.,*
  791 F.2d 691 (9th Cir. 1986)...............................................25

*Gore v. Alltel Commc'ns, LLC,*
  666 F.3d 1027 (7th Cir. 2012)..............................................17

*Gutierrez v. Wells Fargo Bank, NA,*
  889 F.3d 1230 (11th Cir. 2018)..............................2, 16, 21, 24

*H&T Fair Hills, Ltd. v. All. Pipeline L.P.,*
  76 F.4th 1093 (8th Cir. 2023) ...............................2, 16, 21, 24

*Halim v. Great Gatsby's Auction Gallery, Inc.,*
  516 F.3d 557 (7th Cir. 2008)..............................17, 19, 32, 36

*Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co.,*
  770 F.3d 676 (7th Cir. 2014)..................................................4

*Hill v. Xerox Bus. Servs., LLC*,
    59 F.4th 457 (9th Cir. 2023) ....................................................27, 28, 29

*Hollins v. Regency Corp.*,
    867 F.3d 830 (7th Cir. 2017)................................................................16

*In re Checking Acct. Overdraft Litig.*,
    780 F.3d 1031 (11th Cir. 2015)......................................................21, 26

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019)........................................................16, 24

*Ins. Mktg. Coal. Ltd. v. FCC*,
    127 F.4th 303 (11th Cir. 2025) .............................................................6

*Jokich v. Rush Univ. Med. Ctr.*,
    42 F.4th 626 (7th Cir. 2022) ...............................................................19

*Kawasaki Heavy Indus., Ltd.
    v. Bombardier Recreational Prods., Inc.*,
    660 F.3d 988 (7th Cir. 2011) .........................................................*passim*

*Miller v. Drexel Burnham Lambert, Inc.*,
    791 F.2d 850 (11th Cir. 1986)..............................................................25

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012) ................................................................................4

*Moore v. Club Exploria, LLC*,
    No. 23-3215 (7th Cir. Nov. 21, 2023), Dkt. 2 .......................................11

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022) ..................................................................3, 18, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...................................................................................18

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020)................................................................23

*Nettles v. Midland Funding LLC*,
    983 F.3d 896 (7th Cir. 2020)..................................................................4

*Peterson v. Shearson/Am. Express, Inc.*,
849 F.2d 464 (10th Cir. 1988)....................................................25

*Randall v. Rolls-Royce Corp.*,
637 F.3d 818 (7th Cir. 2011)......................................................22

*Sharif v. Wellness Int'l Network, Ltd.*,
376 F.3d 720 (7th Cir. 2004)....................................15, 32, 34

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011)....................................................................23

*Speerly v. Gen. Motors, LLC*,
143 F.4th 306 (6th Cir. 2025) ...............................2, 16, 22

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*,
376 F.3d 664 (7th Cir. 2004)....................................................19

*St. Mary's Med. Ctr. of Evansville, Inc.*
*v. Disco Aluminum Prods. Co.*,
969 F.2d 585 (7th Cir. 1992)..................................15, 18, 20

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)....................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................................................................23

## Statutes

9 U.S.C. § 16(a)(1) ..............................................................4, 15

28 U.S.C. § 1331 ...........................................................................4

47 U.S.C. § 227 ...................................................................1, 4, 6

## Rules

Fed. R. App. P. 4(a)(1)(A)...........................................................4

Fed. R. Civ. P. 8(c)....................................................................33

**Other Authorities**

Appellant's Jurisdictional Memorandum,
  *Moore v. Club Exploria, LLC*,
  No. 23-3215 (7th Cir. Dec. 11, 2023), Dkt. 12......................................11

## INTRODUCTION

This appeal results from two phone calls that Plaintiff George Moore received more than seven years ago about a vacation property owned by Defendant Club Exploria, LLC.  Asserting that these calls were unauthorized telemarketing, Moore brought class-action claims against Club Exploria under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*  But Moore and the class members he sought to represent had, in fact, signed agreements consenting to receive telemarketing calls.  And many of the putative class members had further agreed to resolve any disputes related to those calls through arbitration.

As soon as those class members became parties to the litigation, Club Exploria moved to compel arbitration as to them.  The district court improperly denied that motion, concluding that Club Exploria had implicitly waived its right to compel arbitration.  The district court's conclusions regarding waiver are erroneous.

***First***, the district court erred as a matter of law in determining that Club Exploria's actions *before* class certification waived its arbitration rights as to unnamed class members.  As several courts of appeals have

held, a defendant's conduct before a putative class is certified cannot waive its arbitration rights as to absent class members. These courts correctly recognize that "failure to seek arbitration with … unnamed class members prior to class certification" is not a waiver because before certification, it is "jurisdictionally impossible" for the district court "to compel arbitration against speculative plaintiffs" who are not yet parties to the action. *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018); *accord H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, 76 F.4th 1093, 1100 (8th Cir. 2023); *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 335–36 (6th Cir. 2025). That rule is consistent with this Court's holding that if a district court does "not have the power to grant" a motion to compel arbitration, a defendant cannot be "required to submit that motion to prevent waiver." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011).

**Second**, the district court was also wrong to conclude that Club Exploria's actions *after* certification gave rise to waiver. After the class was certified, Club Exploria promptly notified Moore and the court of its arbitration defense, consistently pursued that defense at the trial and appellate levels, and moved to compel arbitration as soon as the opt-out

2

period closed.  The district court nonetheless held that several motions Club Exploria filed on September 27, 2023—just *twelve days* before it sought leave to amend its answer to add an arbitration defense on October 9, 2023—demonstrated an intent to waive Club Exploria's arbitration rights.  That was wrong: The district court cited no case (and Club Exploria is aware of none) holding that a twelve-day delay in raising arbitration can constitute waiver, and in any event, the motions at issue did not seek a ruling on the merits and were entirely consistent with Club Exploria's intent to arbitrate with some (but not all) members of the newly certified class.

The district court's strict arbitration waiver rule, which would require a defendant in a putative class action to expressly invoke the *possibility* of arbitration with absent class members long before those class members are before the court, is illogical and inconsistent with precedent.  It also defies the Supreme Court's instruction that courts must afford arbitration rights the same respect as they would other contract rights.  *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because Moore's claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 387 (2012).

Because Club Exploria appeals from the district court's denial of its motion seeking to compel arbitration against unnamed class members, *see* A-176–94; SA-6–10, this Court has jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B). *See, e.g., Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (section 16(a)(1) "authorizes an immediate appeal from an order denying a motion to compel arbitration"); *Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co.*, 770 F.3d 676, 678 (7th Cir. 2014) (district court's "denial" of a party's "request" that an "issue be submitted to arbitration" falls "within the scope of 9 U.S.C. § 16(a)(1)(B), which authorizes an interlocutory appeal").

This appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A). The district court entered its order denying Club Exploria's motion on September 26, 2025, SA-33, and Club Exploria filed

its notice of appeal from that decision on September 29, 2025, Dkt. 377 at 1.

## STATEMENT OF THE ISSUES

Whether Club Exploria implicitly waived its right to compel arbitration as to unnamed class members when it refrained from litigating the merits of absent class members' claims, promptly sought to assert arbitration as a defense following class certification, and moved to compel arbitration against the class members shortly after the notice-and-opt-out period closed.

## STATEMENT OF THE CASE

### A.     Club Exploria hires TCPA-compliant vendors to market its properties.

Club Exploria owns and manages vacation properties throughout the United States, including the Summer Bay resort in Orlando, Florida. Dkt. 193 at 2. To promote its properties, Club Exploria contracts with third-party vendors to contact potential customers, while expressly requiring those vendors to fully comply with applicable telemarketing laws like the TCPA. Dkt. 193 at 3. Those vendors called individuals who had previously consented to receive marketing calls and played them a prerecorded message. *See* SA-3–4. If the recipient expressed interest in

5

the prerecorded message, the vendor then transferred them to Club
Exploria to learn more.  *See* SA-3–4.

Moore alleges that by placing these calls, Club Exploria's vendors
violated the TCPA's prohibition on "initiat[ing] any telephone call to any
residential telephone line using an artificial or prerecorded voice …
without the prior express consent of the called party."   47 U.S.C.
§ 227(b)(1)(B).   Although the recipients had consented to receive
telemarketing calls from the vendors, Moore claims that these consents
were insufficient because they did not identify Club Exploria by name.
*But see Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 314–15 (11th Cir.
2025) (holding that "all consumers must do to give 'prior express consent'
to receive a robocall is clearly and unmistakably state … that they are
willing to receive the robocall" and rejecting FCC's attempt to impose
additional requirements for consent to be deemed sufficient).  Moore
further claims that Club Exploria is vicariously liable for the vendors'
alleged violations.

Many members of the putative class, however, had agreed not only
"to be contacted" by the vendors and their "marketing partners,"
including Club Exploria, but also to "mandatory arbitration" of all claims

regarding that contact. A-196 (quotation marks omitted). As relevant here, from approximately March 1, 2018, through August 15, 2018, about 1,026 class members visited the website "samplesandsavings.com," entered their contact information, and opted in to receive telemarketing calls. A-176, 195. As part of the opt-in process, class members acknowledged that they "underst[ood] and agree[d] to … Terms and Conditions which include[d] mandatory arbitration." A-196 (located in the graphic under "Start by Telling Us a Little About Yourself"). Those Terms and Conditions, which were hyperlinked from the opt-in webpage, provided:

> These Terms & Conditions contain a mandatory arbitration provision, as detailed below, that requires you to arbitrate, individually, all disputes or claims that you may have with us, our parent, related parties, advertiser clients and marketing partners (collectively, "Marketing Partners") who are third-party beneficiaries of the mandatory arbitration provision. Thus, for example, if you provide prior express written consent to be contacted via telemarketing or SMS/text messaging, any claims that you may have regarding any telemarketing or SMS/text messages that you receive are subject to the mandatory arbitration provision. The mandatory arbitration provision also waives your right to participate in a class action or multi-party arbitration.

A-196–97.  Under the plain meaning of those terms, any claim regarding telemarketing that a call recipient has against a marketing partner, like Club Exploria, must be resolved through arbitration.

### B.     Moore sues Club Exploria under the TCPA, and Club Exploria litigates Moore's individual claims.

Moore filed his initial class action complaint in April 2019, alleging that Club Exploria and its vendor Yodel Technologies, LLC violated the TCPA and its state counterpart, the Illinois Automatic Telephone Dialers Act.  *See* Dkt. 1 ¶¶ 2, 67–92.  Moore eventually dismissed his claims against Yodel, *see* Dkt. 34, and in December 2019, he filed an amended complaint.  *See* A-1–13.  That complaint, which remains the operative pleading in this action, alleges class-wide claims solely against Club Exploria and solely under the TCPA.  A-11–12 ¶¶ 65–70.

Club Exploria answered Moore's amended complaint the following month, January 2020.  A-14–33.  In that answer, Club Exploria reserved its right "to add, delete, or modify affirmative defenses based on legal theories, facts and circumstances which may or will be developed through discovery or further legal analysis of Plaintiff's and the putative class's claims and Club Exploria's position in this litigation."  A-33.

8

After Club Exploria answered the amended complaint, the case proceeded through discovery. In September 2021, Club Exploria moved for summary judgment on all of Moore's claims. *See* A-34–48. Notably, Club Exploria's motion was directed only to "Plaintiff George Moore's … individual claims," not those of unnamed putative class members. A-34. Club Exploria's summary judgment arguments focused on the "two calls" made specifically "to Plaintiff." A-34, 36–37, 39–40, 44–48, 54–57, 61, 64, 67–73.

In late February 2022—nearly three years after filing this lawsuit—Moore finally moved for class certification. *See* Dkt. 186. Club Exploria swiftly opposed class certification, highlighting the predominance of individualized issues (such as consent), Moore's unsuitability as a class representative, and ascertainability issues plaguing the class, as putative class members could not be identified from existing call log data. *See* Dkt. 193 at 9–20.

Despite Club Exploria's prompt response, further delays ensued. In September 2022, the case was reassigned, and the pending summary-judgment and class-certification motions were stricken without prejudice "to provide the receiving judge with time to become familiar with the

9

case." Dkt. 205. The parties eventually refiled their respective motions at the court's direction. *See* Dkt. 211. But in December 2022, the case was reassigned yet again. Dkt. 218.

Nearly eight months later, on August 17, 2023, the district court finally ruled on the pending motions, denying Club Exploria's request for summary judgment on Moore's individual claims and granting Moore's motion for class certification. Dkt. 225 at 19–20.

### C.   After class certification, Club Exploria promptly asserts arbitration as a defense and consistently pursues its arbitration rights.

After class certification, Club Exploria hired new counsel and sought to raise defenses to the claims of members of the newly certified class. *See* Dkt. 228; Dkt. 231; Dkt. 234. In a two-week period between September 27 and October 9, 2023, Club Exploria moved (1) for reconsideration of the class certification order, A-102, 105; (2) to dismiss the action for lack of jurisdiction under Rule 12(b)(1), A-74–88; (3) to either reopen discovery or quash subpoenas Moore had improperly issued after discovery closed, A-108–19; (4) to amend its answer to assert additional affirmative defenses, A-89–98; and (5) to amend its answer to add an arbitration defense, A-120–29.

On October 19, 2023, the district court held a hearing on Club Exploria's pending motions. During the hearing, the court stated, "It seems to me that … it's too late, in my judgment, to raise arbitration. That was clearly waived by not bringing it up before now." SA-7 (emphasis omitted) (quoting A-158). The court entered an order that same day denying Club Exploria's motion for leave to amend its answer to raise arbitration as a defense "[f]or reasons stated on the record." A-149.

Out of an abundance of caution to protect its arbitration rights, Club Exploria appealed the district court's order to this Court under the Federal Arbitration Act. *See* Dkt. 262. This Court ordered Club Exploria to file a memorandum explaining the basis for appellate jurisdiction. *See Moore v. Club Exploria, LLC*, No. 23-3215 (7th Cir. Nov. 21, 2023), Dkt. 2. In response to that order, Club Exploria argued that the denial of leave to assert the arbitration defense was a final decision denying arbitration, thus giving rise to an interlocutory appeal. *See* Appellant's Jurisdictional Memorandum at 2, *Moore v. Club Exploria, LLC*, No. 23-3215 (7th Cir. Dec. 11, 2023), Dkt. 12. This Court dismissed the appeal for lack of jurisdiction in September 2024, holding that the denial of Club Exploria's

11

motion for leave to amend its answer (unlike the denial of a motion to compel arbitration) was not an immediately appealable order.  *See* A-174–75.

Meanwhile, because the district court certified Club Exploria's appeal as frivolous and refused to stay the action while the appeal was pending, *see* A-154, the case proceeded below, where it was reassigned yet again in June 2024, *see* Dkt. 292.  Class members were given notice and an opportunity to opt out of the class, and the opt-out period closed on October 7, 2024.  *See* Dkt. 309; A-177.  Two weeks later, Moore moved for summary judgment on behalf of himself and the class.  *See* Dkt. 321. And six weeks after that, on December 10, 2024, Club Exploria moved to compel arbitration as to the 1,026 class members who agreed to the "samplesandsavings.com" arbitration agreement.  *See* A-178.[1]  The district court subsequently entered a sua sponte minute order "convert[ing]" Club Exploria's motion to compel arbitration "to a motion for leave to file an arbitration motion" and directed the parties to submit

---

[1] Club Exploria also reserved the right to move to compel arbitration against additional class members at a later date.  *See* A-177 n.1.

briefing "solely on the issue of whether the arbitration defense has been waived." A-199.

**D.    The district court denies Club Exploria the right to compel arbitration.**

After nearly nine months, the district court denied Club Exploria's arbitration motion. *See* SA-1–33. The court first held that the "law-of-the-case doctrine applies, and th[e] Court presumes that the prior ruling on waiver will stand." SA-8. Next, the court held that even if it were "to consider the waiver argument afresh," Club Exploria's motion would fail because "[b]oth [Club] Exploria's pre-certification and *post*-certification litigation conduct … are inconsistent with an intent to arbitrate." SA-10.

With respect to pre-certification conduct, the district court pointed to Club Exploria's participation in discovery, its summary-judgment motion, and its failure to raise arbitration before class certification. *See* SA-9. The court acknowledged Club Exploria's argument that the non-party status of unnamed class members prevented it from moving to compel arbitration as to those individuals before a class was certified and the opt-out period ended—meaning it could not have waived its arbitration rights before that time as a matter of law. *See* SA-9. But the

13

district court did not address that question of law and appeared to assume that pre-certification conduct could give rise to waiver.  *See* SA-9.

With respect to post-certification conduct, the district court asserted that Club Exploria had filed a "flurry" of "merits-related" motions following the class-certification order.  SA-9–10.  The court also chastised Club Exploria for supposedly failing to "provide[] … information allowing th[e] Court to determine that it did all it could do to detect a potential arbitration defense before its first mention of arbitration some four years after Moore's initial class action complaint was filed."  SA-9 n.3.

In the same order where it denied Club Exploria's motion to compel arbitration, the court granted Moore's motion for summary judgment. Among other things, the court held that even though class members had consented to receive telemarketing calls from the vendors who placed the calls, those consents were insufficient to satisfy the TCPA because "the online opt-in forms did not list [Club] Exploria's name on them."  SA-21. The district court has not entered final judgment, so Club Exploria cannot yet appeal that erroneous ruling.  But it promptly appealed the

denial of its motion to compel arbitration, which is immediately appealable under 9 U.S.C. § 16(a)(1).  *See* Dkt. 377.

## SUMMARY OF THE ARGUMENT

The district court erred when it concluded that Club Exploria waived its right to compel arbitration as to unnamed class members.

**I.**  Because Moore is the party seeking to avoid arbitration, he bears the "heavy burden" of establishing that waiver occurred.  *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 590 (7th Cir. 1992).  To do so, he must show that Club Exploria's actions were "inconsistent[]" with an intent to exercise its arbitration rights.  *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004).  Moore has not carried this burden.

**II.**  Club Exploria did not implicitly waive its arbitration rights as to unnamed class members before class certification and opt-out.  If a district court lacks the power to grant a motion to compel arbitration, a party need not make that motion to preserve its arbitration rights.  *See Kawasaki*, 660 F.3d at 997.  And before class certification and opt-out, unnamed class members are not "parties" to litigation, so a court cannot compel them to arbitrate their claims.  *See Hollins v. Regency Corp.*, 867

F.3d 830, 833 (7th Cir. 2017); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 503 n.19 (5th Cir. 2019).  Taken together, these principles mean that a defendant's failure to seek arbitration against unnamed class members before class certification and opt-out cannot give rise to waiver—as multiple circuits have correctly recognized.  *E.g., Speerly*, 143 F.4th at 335–36; *H&T Fair Hills*, 76 F.4th at 1100; *Gutierrez*, 889 F.3d at 1238. The district court's conclusion that Club Exploria's "pre-certification" actions waived its arbitration rights as to unnamed class members, SA-10, was thus legal error.

**III.**  The district court also erred when it held that Club Exploria's "*post*-certification" actions gave rise to waiver.  SA-10.  Within approximately six weeks of the class-certification order and before any rulings on the merits, Club Exploria notified Moore of its arbitration rights as to unnamed class members and sought to preserve that defense by amending its answer.  *See supra* pp. 10–11.  When the district court rejected those efforts, Club Exploria timely appealed the district court's decision and pursued its arbitration rights before this Court.  *See supra* p. 11.  And once the opt-out period closed and Club Exploria could discern which class members were bound by arbitration clauses, Club Exploria

16

formally moved to compel arbitration as to those class members. *See supra* p. 12. This course of conduct is entirely "consistent" with an intent to pursue arbitration as to the class members. *Kawasaki*, 660 F.3d at 998. The district court was wrong to hold otherwise.

## STANDARD OF REVIEW

This Court generally "review[s] *de novo* a district court's grant or denial of a motion to compel arbitration." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012). When assessing a district court's holding that a party waived its arbitration rights, "[f]actual determinations on which a district court predicate[d] a finding of waiver are reviewed for clear error, while legal questions of whether a party's conduct amounts to waiver are reviewed *de novo*." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561–62 (7th Cir. 2008) (citing *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.,* 304 F.3d 753, 756 (7th Cir. 2002)). Here, the district court made no factual findings pertinent to its waiver ruling, so this Court's review of that ruling is entirely *de novo*.

## ARGUMENT

Club Exploria did not waive its right to compel arbitration as to absent class members. The party seeking to establish an implied waiver

must clear a high bar by showing that its opponent acted inconsistently with its arbitration rights.  Here, Club Exploria *could not* have acted inconsistently with its right to compel arbitration as to unnamed class members prior to certification and opt-out.  And after that time, Club Exploria *did not* act inconsistently with its arbitration rights.

## I.    Moore bears a heavy burden to establish that Club Exploria waived its arbitration rights.

The Federal Arbitration Act embodies a "policy favoring arbitration," seeking "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."  *Morgan*, 596 U.S. at 418 (quotation marks omitted).  Given this "strong federal policy," parties seeking to invalidate an arbitration agreement by "asserting waiver bear a 'heavy burden[,]' and courts should not 'lightly infer' waiver."  *St. Mary's Med. Ctr.*, 969 F.2d at 590; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues," including "an allegation of waiver," "should be resolved in favor of arbitration.").

Under ordinary contract-law principles, waiver requires "the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. at 417 (quotation marks omitted).  A waiver can be either express or implied through action.  *Halim*, 516 F.3d at 562.  Club Exploria never expressly waived its arbitration rights, so the question is whether it "conduct[ed] itself in a manner which is wholly inconsistent with" its right to seek arbitration as to absent class members, "thereby indicating its intent to abandon the contractual right." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 679 (7th Cir. 2004) (discussing waiver of contractual rights).  "Put differently," Moore bore the burden to establish that Club Exploria's conduct was "inconsistent with any intention other than to waive the [arbitration] right." *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 636 (7th Cir. 2022) (quotation marks omitted) (discussing contract-law waiver principles).

The district court misapplied this standard.  Instead of determining whether Moore bore his "heav[y]" burden of establishing waiver, the court faulted Club Exploria for not providing enough information to allow the court to discern whether Club Exploria had made the "earliest feasible determination" to pursue arbitration.  SA-9 n.3 (quotation marks

omitted).  This reasoning misstates the evidentiary burden with respect to waiver, which was Moore's—not Club Exploria's—to carry.  *See St. Mary's Med. Ctr.*, 969 F.2d at 590 (the "heavy burden" of establishing waiver is on the party seeking to avoid arbitration).  And as set forth below, Moore has not carried—and cannot carry—that burden.

## II.    Club Exploria did not waive its arbitration rights before class certification.

The district court held that Club Exploria waived its arbitration rights as to absent class members by its conduct before any class was certified.  *See* SA-10.  That was wrong as a matter of law.  A defendant in a putative class action cannot, merely by defending itself against the named plaintiff's claims, waive arbitration rights as to absent putative class members who are not yet before the court.

### A.    Defendants cannot waive their arbitration rights as to putative class members before those class members become parties to the litigation.

As several courts of appeals have held, a party does not waive its arbitration rights as to absent class members by failing to invoke those rights before class certification.

The Eighth Circuit, for example, held that in a putative class action where "none of the named plaintiffs … ha[d] arbitration provisions" in

their contracts, the defendant "did not act inconsistently with its right to arbitrate" when it waited until "after the class was certified" to move to compel arbitration as to absent class members. *H&T Fair Hills*, 76 F.4th at 1100. The court reasoned that finding waiver would be illogical given that "a motion to compel arbitration prior to class certification would have been a motion to bind parties who were not yet part of the case." *Id.*

The Eleventh Circuit has likewise concluded that a defendant's "failure to seek arbitration with … unnamed class members prior to class certification" "cannot be said" to have "manifested inconsistency with its arbitration rights, considering that it would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the [d]istrict [c]ourt to rule on those motions before the class was certified." *Gutierrez*, 889 F.3d at 1238; *see also In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031, 1036–37 (11th Cir. 2015) ("[B]ecause a class including the unnamed putative class members had not been certified, Article III's jurisdictional limitations precluded the District Court from entertaining Wells Fargo's conditional motions to dismiss those members' claims as subject to arbitration.").

The Sixth Circuit has agreed: A defendant's decision to "waive[] arbitration as to the named plaintiffs" before class certification does not create waiver "as to the entire class" because absent class members are not parties bound by the court's rulings. *Speerly*, 143 F.4th at 335–36.

While this Court has not yet addressed this precise question, the rule applied by the Sixth, Eighth, and Eleventh Circuits follows naturally from two legal principles that this Court has adopted: (1) that class members are not parties to an action until after class certification and opt-out, and (2) that the law does not require a party to file a futile motion to preserve its rights.

*First*, it is black-letter law that unnamed class members are not parties to a case—and cannot be bound by judicial rulings in that case— until the class is certified and class members are provided an opportunity to opt out. As this Court has recognized, because Rule 23(b)(3) requires an opportunity to opt out of class actions for monetary damages, only "those [class members] who do not opt out will be bound by the judgment." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 820–21 (7th Cir. 2011). The Supreme Court, too, has recognized that "in the context of a class action predominantly for money damages … absence of notice and

opt out violates due process." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). The Court has thus explained that it would be "surely erroneous" to "argu[e] that a nonnamed class member is a party to the class-action litigation before the class is certified," *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (emphasis omitted) (quotation marks omitted), because prior to certification, the named plaintiff "cannot legally bind members of the proposed class," *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013).[2]

Moore effectively conceded this point in the district court, arguing that a motion Club Exploria filed seeking to dismiss class members' claims for lack of standing "was improper because class members had not yet been notified of the case and, therefore, could not have rulings entered against them." A-160. Club Exploria agreed and sought to withdraw the motion, *see* A-150, but the district court denied the motion anyway, *see* A-173.

---

[2] Even *after* the class is certified, "absent class members are not full parties to the case for many purposes," *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020), but they are not parties for *any* purpose *before* the class is certified.

Because an absent class member is not a party until after a class has been certified, a defendant cannot move to compel arbitration with absent class members until after class certification. *See H&T Fair Hills*, 76 F.4th at 1100; *Gutierrez*, 889 F.3d at 1238; *see also JPMorgan Chase*, 916 F.3d at 503 n.19.

*Second*, this Court has explained that a party need not file a futile arbitration motion to preserve its arbitration rights. In *Kawasaki*, this Court rejected the plaintiff's argument that the defendant implicitly waived its arbitration rights by participating in earlier, related litigation in the Eastern District of Texas and failing to move to compel arbitration during that proceeding. *See* 660 F.3d at 997. The Court reasoned that under the Federal Arbitration Act's venue provisions, the Texas district court "did not have the authority to compel arbitration," and if a court "d[oes] not have the power to grant a certain motion, [the defendant] could not have been required to submit that motion to prevent waiver." *Id.*

Other circuits agree, holding that failure to file a motion to compel arbitration cannot give rise to waiver if that motion would have been "futile." *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 293 (3d Cir. 2016).

24

As the Third Circuit explained, "futility can excuse the delayed invocation of the right to compel arbitration" because a party "cannot" "waive a right 'in a situation in which no right existed'"—as "[e]very circuit to have answered this question has held." *Id.* (quotation marks omitted); *see also, e.g., Ackerberg v. Johnson*, 892 F.2d 1328, 1333 (8th Cir. 1989) ("To find that … defendants waived a right they did not have [at that time] is not only illogical, but also would encourage litigants, in order to avoid a finding of waiver, to file motions they knew to be futile."); *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 466 (10th Cir. 1988) ("Because Shearson almost certainly could not have [previously] obtained an order for arbitration of the Rule 10b–5 claim … , it did not waive its right to arbitrate the claim."); *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986) (per curiam) ("This circuit does not require a litigant to engage in futile gestures merely to avoid a claim of waiver."), *abrogated on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 697 (9th Cir. 1986) (because "[a]n earlier motion to compel arbitration would have been futile," defendant's failure to "make a motion to compel arbitration at the outset of this

litigation" was not "inconsistent with [its right] to arbitrate disputes");
*cf. Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250–51 (5th Cir.
2020) ("[a]pplying the Eleventh Circuit's reasoning" in *Checking Account
Overdraft Litigation*, 780 F.3d at 1034, to conclude that defendant did
not waive personal-jurisdiction defense against unnamed class members
because they were not parties who could be bound by the district court's
rulings prior to certification).

Consistent with the decisions of the Sixth, Eighth, and Eleventh
Circuits, this Court should hold that in a putative class action, a
defendant's pre-certification litigation conduct vis-à-vis the named
plaintiff cannot be an implied waiver of the defendant's right to arbitrate
with absent class members. Because Club Exploria had no obligation to
assert its arbitration rights as to those putative class members before
they were properly brought before the district court and made parties to
the litigation, the district court's holding on pre-certification conduct
should be reversed as a matter of law.

**B.    Even under the Ninth Circuit's outlier rule, Club Exploria's litigation conduct would not give rise to waiver.**

Although most appellate courts to address the question have held that pre-certification litigation conduct cannot give rise to an implied waiver of arbitration as to absent class members, in the district court, Moore relied heavily on a divided Ninth Circuit decision that held otherwise.  But even under the rule espoused by the Ninth Circuit, Club Exploria's pre-certification conduct would not give rise to waiver.

In *Hill v. Xerox Business Services, LLC*, 59 F.4th 457 (9th Cir. 2023), the panel majority held that a defendant's pre-certification conduct waived its right to arbitrate with absent class members.  There, the defendant selectively pursued a pre-certification arbitration defense under one agreement (a 2012 Dispute Resolution Plan, or "DRP") but not another (a 2002 DRP).  *See id.* at 470–71.  And the defendant "embarked on a six-year appellate journey aimed at judicially resolving the *merits*— the legal heart—of the class members' (including class members who had signed the 2002 DRP) claims with full knowledge that their claims were implicated by the appeal to the same extent as were [the named plaintiff's]."  *Id.* at 473.  This "litigation history," the court found,

27

indicated that defendant had made a "tactical choice" to selectively
pursue arbitration for some claims but "resolve [other] claims judicially,"
then "belatedly … retreat and claim the benefit of arbitration" rights it
had previously forsaken "only once its judicial strategy failed." *Id.*; *see
also id.* at 481 ("That [defendant] took actions inconsistent with its
arbitration rights under the 2002 DRP by choosing to raise the 2002
agreement as a defense only after engaging in six years of merits
litigation[] that, had it been successful, would have defeated the claims
by the signatories of the 2002 DRP agreement, despite having
successfully preserved its 2012 DRP arbitration rights by seeking the
2012 DRP signatories' exclusion from the provisionally certified class,
substantiates a finding of waiver.").

No such facts are present here. Unlike the defendant in *Hill*, Club
Exploria aimed its early litigation strategy and motions practice squarely
at *Moore*'s claims—not those of unnamed class members. Club Exploria's
summary-judgment motion was limited to Moore's "individual" claims
and the calls made specifically to him. *See* A-34, 36 n.1, 37–39, 40, 44–
48. And only a few weeks after the district court certified a class, Club
Exploria notified Moore of a potential arbitration defense as to certain

class members and sought to amend its answer to include that defense. *See* A-120.

In any event, *Hill* is wrongly decided. As the dissent there explained, *Hill* is a "radical and unbounded expansion of waiver [that] finds no support in precedent, and in any event fails even on its own terms." *Hill*, 59 F.4th at 486 (VanDyke, J., dissenting); *see id.* at 486–94 (explaining how the majority's holding departed from established Ninth Circuit precedent regarding waiver). This Court should follow the better-reasoned decisions of the other circuits discussed above.

## III. Club Exploria did not waive its arbitration rights after class certification.

The district court was also wrong when it concluded that Club Exploria's "*post*-certification litigation conduct" was inconsistent with an intent to exercise its arbitration rights. SA-10. Of note, the district court did not fault Club Exploria for the timing of its motion to compel arbitration, which was filed shortly after the class opt-out period closed. Instead, the court primarily determined that Club Exploria waived its arbitration rights because of a less-than-two-week delay between a so-called "flurry of motions" that Club Exploria filed on September 27, 2023, and its motion for leave to add an arbitration defense on October 9, 2023.

29

*See* SA-9–10.  But the court cited no case that has ever held that such a slight delay signals an intentional decision to relinquish arbitration rights.  It does not.

After the district court certified the class and Club Exploria changed counsel, it filed a series of motions over a two-week period.  On September 27, 2023, Club Exploria's new counsel filed: (1) a motion to dismiss class members' claims for lack of standing under Rule 12(b)(1), A-74–88; (2) a motion to amend its answer to assert several new affirmative defenses, A-89–98; (3) a motion to amend the class-certification order, A-99–107; and (4) a motion to either reopen discovery or quash Moore's improper subpoenas, A-108–19.  A few days later, Club Exploria's new counsel identified an additional arbitration defense as to some members of the newly certified class, and on October 2, 2023, counsel promptly notified Moore of Club Exploria's intent to further amend its answer to assert that arbitration defense.  *See* A-120.  Moore objected to the amendment, so on October 9, 2023, Club Exploria filed another motion for leave to amend its answer to assert the arbitration defense.  *See* A-121.

The district court found waiver because of the twelve days that elapsed between the motions Club Exploria filed on September 27 and the motion it filed on October 9 raising its arbitration defense. But it identified no court anywhere that has ever found a twelve-day delay to be a waiver. To the contrary, this Court has recognized that a "modest delay in [filing a motion to compel arbitration] certainly is nothing extraordinary amid the delay endemic to the world of the law and does not shock the Court's conscience." *Cooper v. Asset Acceptance, LLC*, 532 F. App'x 639, 642 (7th Cir. 2013) (quotation marks omitted) (alteration in original). Courts normally find waiver due to delay only when a defendant seeks to obtain a judicial ruling on the merits and asserts an arbitration right only after the ruling goes against it. *E.g.*, *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) (finding waiver because defendant "wanted to play heads I win, tails you lose" by waiting "to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration"). In other words, the waiver analysis "prevents parties from waiting to see how they fare in a judicial forum before choosing arbitration." *Kawasaki*, 660 F.3d at 994–95. That never happened here.

31

Moreover, the motions Club Exploria filed on September 27, 2023—just five days before it notified Moore of its arbitration defense, and just twelve days before it sought leave from the district court to add that defense to its answer—were "wholly consistent with the intent to arbitrate" with a subset of class members. *Id.* at 998.

*First*, Club Exploria's Rule 12(b)(1) motion was consistent with its right to arbitrate. As this Court has held, a motion to dismiss—especially on jurisdictional grounds—does not amount to waiver of an arbitration right because it aligns with the position that the claims should not be resolved by the court. *See Kawasaki*, 660 F.3d at 998 (concluding that "an appropriate motion to dismiss (or an argument against jurisdiction, as the case may be) stymies a plaintiff's attempt at judicial relief and is consistent with the intent to arbitrate"); *Halim*, 516 F.3d at 562 ("This Court has explicitly held that simply moving to dismiss a case does not waive one's right to arbitrate." (citing *Sharif*, 376 F.3d at 726–27)). And, in any event, Club Exploria sought to withdraw that motion, acknowledging that it "was premature as it was filed prior to the issuance of class notice" and prior to class members being "afforded the opportunity to opt out." A-150–51.

*Second*, Club Exploria's motion to amend its answer to add defenses other than arbitration was likewise consistent with its arbitration rights. SA-10. This motion was not an attempt to litigate the case on the merits. Rather, it merely sought to comply with procedural rules by putting Moore and the court on notice of affirmative defenses that Club Exploria might assert—just like Club Exploria's subsequent motion to further amend its answer to include an arbitration defense, which was filed a mere twelve days later. *See* A-120–29; Fed. R. Civ. P. 8(c). And because only a subset of class members had agreed to arbitrate their claims, Club Exploria had an obligation to notify those class members who had not agreed to arbitrate of its other defenses.

*Third*, Club Exploria's motion to reopen discovery or quash Moore's subpoenas was also consistent with its intent to pursue arbitration as to certain class members. Club Exploria filed that motion in response to Moore's improper issuance of subpoenas to wireless carriers long after discovery had closed. *See* A-108, 116–17. In filing the motion, Club Exploria was seeking only to protect its rights and avoid the unfairness of one-sided discovery. Moreover, it was entirely proper for Club Exploria

to seek discovery in order to defend itself against the claims of those class members who had not agreed to arbitrate.

*Fourth*, Club Exploria's motion for reconsideration of the district court's class-certification order likewise did not give rise to waiver. In that motion, Club Exploria asked the court to delete from its order a statement that "'the calls [at issue] appear to have been made without proper consent,'" pointing out that this stray statement appeared to be an "*improper … substantive determination* on the sufficiency of the consent prior to class notice." A-101 (emphasis added) (quoting Dkt. 225 at 15). By filing this motion, Club Exploria was not "act[ing] inconsistently with the right to arbitrate" by seeking a judicial determination on the merits. *Sharif*, 376 F.3d at 726 (quoting *Ernst & Young*, 304 F.3d at 756). Quite the opposite: Club Exploria's motion specifically contested the district court's improper merits ruling on the issue of consent and asked the court to "strike any ruling" on that issue. A-105; *see* A-102–05.

In short, none of Club Exploria's post-certification motions support the district court's conclusion that Club Exploria intended to waive the arbitration defense that it raised in a motion filed just twelve days later.

The district court did not discuss Club Exploria's conduct after moving to amend its answer to assert arbitration as a defense, but that conduct is likewise consistent with Club Exploria's desire to pursue arbitration as to some class members. Club Exploria appealed the district court's denial of leave to add an arbitration defense to this Court and attempted to litigate the issue here, but it was unable to do so because this Court determined that the district court's order was not immediately appealable. *See* Dkt. 262. And as soon as it was able (after notice and opt-out), Club Exploria moved to compel arbitration as to the absent class members. *See* A-176. The district court was right not to suggest that any of this conduct constituted a waiver of Club Exploria's arbitration rights.

Finally, the law-of-the-case doctrine cannot redeem the district court's faulty reasoning. *See* SA-6–8 (holding that "the previously assigned judge already held that [Club] Exploria waived its arbitration defense[,] and the holding is thus the law of the case"). That doctrine is inapplicable to the case's current posture on appeal. The law of the case generally binds *trial courts* to prior rulings in the same case, but it does not bind *appellate courts* when they review trial-court decisions. *See*

35

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (observing that "a district court's adherence to law of the case cannot insulate an issue from appellate review"). Instead, as explained above, this Court reviews the legal question of whether a party's conduct amounts to waiver *de novo*. *See Halim*, 516 F.3d at 561–62. And in any event, the previous judge's waiver ruling was wrong for all the reasons identified above. Before class certification, Club Exploria could not waive its arbitration rights as to unnamed class members. And after class certification, Club Exploria did not waive those rights because its conduct was wholly consistent with an intent to arbitrate class members' claims.

## CONCLUSION

For the foregoing reasons, Club Exploria did not waive its arbitration rights, and the district court erred in concluding otherwise. This Court should reverse the district court's order and remand the case for consideration of Club Exploria's motion to compel arbitration.

Respectfully submitted,

/s/ Paul Alessio Mezzina

|  |  |
|---|---|
| Livia M. Kiser | Paul Alessio Mezzina |
| KING & SPALDING LLP | *Counsel of Record* |
| 110 North Wacker Drive | Amy R. Upshaw |
| Suite 3800 | KING & SPALDING LLP |
| Chicago, IL 60606 | 1700 Pennsylvania Avenue NW |
| (312) 995-6333 | Washington, DC 20006 |
|  | (202) 737-0500 |
| Michael D. Roth | pmezzina@kslaw.com |
| KING & SPALDING LLP |  |
| 633 West Fifth Street | Martha Banner Banks |
| Suite 1600 | KING & SPALDING LLP |
| Los Angeles, CA 90071 | 1180 Peachtree Street NE |
| (213) 443-4355 | Suite 1600 |
|  | Atlanta, GA 30309 |
|  | (404) 572-4600 |

*Counsel for Defendant-Appellant Club Exploria, LLC*

November 20, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 7,117 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word for Office 365 ProPlus in Century Schoolbook 14-point font, a proportionally spaced typeface.

Date: November 20, 2025

*/s/ Paul Alessio Mezzina*
Paul Alessio Mezzina

*Counsel for Defendant-Appellant*
*Club Exploria, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2025, a copy of the foregoing document was filed with the Court through the CM/ECF system, which provides electronic service of the filing to all counsel of record who have registered for CM/ECF notifications in this matter.

*/s/ Paul Alessio Mezzina*
Paul Alessio Mezzina

*Counsel for Defendant-Appellant Club Exploria, LLC*

## STATEMENT CONCERNING THE APPENDIX

Pursuant to Circuit Rule 30(d), I certify that all the materials required by Circuit Rule 30(a) are included in the short appendix attached to the brief, and all the materials required by Circuit Rule 30(b) are included in a separate appendix for Defendant-Appellant.

Date: November 20, 2025

/s/ *Paul Alessio Mezzina*
Paul Alessio Mezzina

*Counsel for Defendant-Appellant*
*Club Exploria, LLC*

# REQUIRED
# SHORT APPENDIX

# TABLE OF CONTENTS TO
# REQUIRED SHORT APPENDIX

**Page**

Dkt. 376

　　Memorandum Opinion and Order, *Moore v. Club
　　Exploria, LLC*, No. 1:19-cv-02504 (N.D. Ill. Sep. 26, 2025) ....... SA-1

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 56 of 88 PageID #:9959
Case: 25-2721      Document: 13      Filed: 11/20/2025      Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 1 of 33 PageID #:9480

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-CV-02504 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CLUB EXPLORIA, LLC, | ) | |
| | ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

George Moore brings this class-action suit against Club Exploria, LLC, alleging violations of the Telephone Consumer Protection Act (usually called the TCPA), 47 U.S.C. §§ 227 *et seq*. R. 55, Am. Compl.[1] Moore now moves for summary judgment on behalf of himself and the class under Section 227(b). R. 319, Pl.'s Mot. Even viewing the evidence in Exploria's favor, no reasonable jury could find that Exploria's prerecorded calls to the class were permissible under the TCPA. So Moore's motion is granted in full.

## I. Background

In deciding a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party (here, Exploria) and draws all

---

[1]Federal district courts have federal-question jurisdiction, 28 U.S.C. § 1331, for suits brought under the TCPA's private right of action. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 57 of 88 PageID #:9960
Case: 25-2721     Document: 13     Filed: 11/20/2025     Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 2 of 33 PageID #:9481

reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.,* 512 F.3d 903, 907 (7th Cir. 2008). Exploria is a vacation company that owns and operates several resort properties throughout the United States. R. 320, PSOF ¶ 1; R. 320-1, Exh. 1, Rogers Dep. at 10:18–11:8. One of those properties is the Summer Bay resort in Orlando, Florida, which was the subject of a marketing campaign run by Exploria in 2018. PSOF ¶¶ 1–3; Rogers Dep. at 11:11–12:10. To assist with the Summer Bay campaign, Exploria contracted with two telemarketing vendors—Yodel and Ga Investments, LLC (the parties call the latter "GaI")—in the spring of 2018 to place outbound calls on its behalf. PSOF ¶¶ 2–3, 14; R. 320-3, Exh. 3, Yodel Agreement; R. 320-4, Exh. 4, Yodel Insertion Order; R. 320-15, Exh. 15, GaI Insertion Order; R. 320-24, Exh. 24, GaI Agreement.

Before GaI began working on the Summer Bay campaign, it subcontracted with Acquis, LLC, to perform GaI's responsibilities under the Exploria contract. PSOF ¶ 20; R. 320-19, Exh. 19, Connolly Decl. ¶ 3. Exploria was aware of this subcontract and even entered into its own additional marketing contract with Acquis around this time; the Exploria-Acquis contract bore identical terms to the Exploria-GaI contract. PSOF ¶ 21; R. 320-20, Exh. 20, Acquis Agreement. Acquis then appointed a call center—Prospects DM—to perform its work under the Exploria contract. PSOF ¶ 28; Connolly Decl., Exh. B, Prospects Insertion Order at 1; R. 320-22, Exh. 22, Acquis Insertion Order. Exploria was aware of this arrangement; the insertion order between Exploria and Acquis explicitly references Prospects as the call center that would be performing the calls to generate the live transfers to Exploria's agents. *See*

2

**SA-2**

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 58 of 88 PageID #:9961
Case: 25-2721 Document: 13 Filed: 11/20/2025 Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 3 of 33 PageID #:9482

Acquis Insertion Order at 1 (referring to the campaign as "Exploria Resorts Call Transfer at ProspectsDM call center"). The Prospects call center agents were to use the "approved telemarketing script" that was part of the contract between Exploria and Acquis. *See id.* (referencing the "script read ad message verbatim" which was approved by Exploria as the "Advertiser").

The calls placed by Yodel and Prospects for the Summer Bay campaign were the result of "leads"—phone numbers—that Yodel had purchased from third-party website operators. PSOF ¶ 40; R. 320-2, Exh. 2, Wood Dep. at 13:20–14:5, 22:19–24, 27:20–28:8; R. 320-31, Exh. 31, Grant Dep. at 70:11–71:4, 74:7–14, 75:22–76:12. The leads were generated through "opt-in sites" that allowed people to authorize certain organizations to call them with sales offers. *See* Rogers Dep. at 71:14–25. For the Summer Bay campaign, the authorization form on the opt-in sites did *not* list Club Exploria as the seller that may call, and instead listed alternative names that the vendors did business as. Rogers Dep. at 77:20–78:8; *see also* R. 320-5, Exh. 5 at 1 (Exploria requesting Yodel's telemarketers use a script that introduced themselves as a "Trip Advisor" from the "Helping Hands association"). The opt-in sites were not owned or operated by any entity that was involved in the campaign itself, and Exploria did not investigate whether the opt-in data that the vendors were using was potentially fabricated or deficient. PSOF ¶¶ 41, 43; Rogers Dep. at 72:1–75:8; 80:19–81:5; Wood Dep. at 70:10–71:7; Grant Dep. at 69:2–5.

As part of the agreements, the vendors were supposed to generate "live transfers," which meant that the vendors' agents would place calls to the phone numbers

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 59 of 88 PageID #:9962
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 4 of 33 PageID #:9483

obtained through leads and then play prerecorded prompts before transferring the call to Exploria. R. 335, Def.'s Resp. to PSOF ¶ 6; Yodel Insertion Order at 1; GaI Order at 1. Exploria gave scripts to the vendors to use during the calls, and the script offered a vacation package at a special rate in exchange for a cash payment. *See* Exh. 5 at 1; GaI Agreement at 1. Exploria hoped that once at the resort, customers would purchase a timeshare interest. R. 320-8, Exh. 8, Lizotte Dep. at 83:15–20. And as hoped, the Summer Bay calling campaign resulted in nearly $2 million in sales for Exploria. PSOF ¶¶ 54–55; Rogers Dep. at 65:16–66:14; R. 320-66, Exh. 66.

Moore received two calls from telemarketers on Exploria's behalf regarding the Summer Bay campaign. *See* PSOF ¶¶ 58–59; R. 320-67, Exh. 67, Woolfson Decl. ¶ 35. Moore later complained to Exploria by sending the company a demand letter in which he alleged a TCPA violation. *See* R. 320-44, Exh. 44 at 3. He then filed this class-action suit against Exploria, alleging that the two calls violated the TCPA and requesting certification for a nationwide class of individuals that received prerecorded calls on their cell phones as part of the Summer Bay campaign. *See generally* Am. Compl.

In August 2023, the previously assigned judge certified a class of "[a]ll persons in the United States subscribing to a cellular telephone number that received a pre-recorded soundboard call promoting Club Exploria's Summer Bay Resort between March 1, 2018, and August 15, 2019, where the soundboard operator initiated a transfer of the call to Club Exploria." R. 225, Certification Order at 19. Moore—on behalf of himself and the class—now moves for summary judgment on his claim that

4

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 60 of 88 PageID #:9963
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 5 of 33 PageID #:9484

Exploria violated the TCPA when its vendors used prerecorded technology to make sales calls to cellular numbers without prior consent. *See generally* Pl.'s Mot.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 61 of 88 PageID #:9964
Case: 25-2721 Document: 13 Filed: 11/20/2025 Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 6 of 33 PageID #:9485

## III. Analysis

### A. Arbitration

Before considering the merits of Moore's summary judgment motion, the Court must first decide Exploria's motion for leave to file a motion to compel arbitration. *See* R. 339, Def.'s Mot. Exploria asserts that 1,026 class members visited a website where they opted-in to receive messages with promotional offers and agreed to mandatory arbitration for any claims relating to telemarketing messages that they received as a result of their opt-in. *Id*. at 4–5. According to Exploria, these 1,026 class members are thus bound by a valid arbitration agreement that governs the current dispute. *Id*. at 1–2. Exploria's motion for leave to file an arbitration motion is denied because this issue has already been decided by the previously assigned judge and, even if it had not, the motion comes much too late in this litigation.

### 1. Law of the Case

Moore first argues that the previously assigned judge already held that Exploria waived its arbitration defense and the holding is thus law of the case. Indeed, Exploria had already requested leave to file a third amended answer raising an arbitration defense, and that request was denied. *See* R. 248, Def.'s Mot. (requesting leave to add an arbitration defense to Exploria's answer); R. 272 at 11:14–17 (hearing transcript denying Exploria's motion for leave). According to Moore, the prior decision constitutes law of the case as to Exploria's waiver of any arbitration defense, and so this Court should deny Exploria's request to file an arbitration motion. *See* R. 350, Pl.'s Resp. at 6–7.

6

**SA-6**

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 62 of 88 PageID #:9965
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 7 of 33 PageID #:9486

The law-of-the-case doctrine applies where—as here—a "different member of the same court re-examines a prior ruling." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005). In those cases, the subsequent judge should not alter a previous ruling "merely because he has a different view of the law or the facts from the first judge." *Id.* (cleaned up).[2] Thus, courts apply a presumption that "earlier rulings will stand" when they touch on the same issue, absent new controlling law or clear error in the prior decision. *Id.* (cleaned up).

Exploria argues that the doctrine is inapplicable because Judge Leinenweber's statement was supposedly *dicta*. R. 352, Def.'s Reply at 6–7. It is true that statements touching on issues "not formally before the Court do not constitute binding determinations." *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533 (7th Cir. 1982) (citing *Quern v. Jordan,* 440 U.S. 332, 347 n.18 (1979)). But Exploria's earlier motion for leave to file a third amended answer asserting an arbitration defense and its current motion for leave to file a motion to compel arbitration are centered on precisely the same issue: whether the arbitration defense was waived. The prior judge's denial of Exploria's earlier motion explicitly relied on a determination that Exploria had waived any arbitration defense. *See* R. 272 at 11:14–17 ("It seems to me that, … it's too late, in my judgment, to raise arbitration. That was *clearly waived* by not bringing it up before now." (emphasis added)). And Exploria makes no showing of clear error or new

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 63 of 88 PageID #:9966
Case: 25-2721 Document: 13 Filed: 11/20/2025 Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 8 of 33 PageID #:9487

controlling law warranting departure from the prior holding—it does not even attempt to address that standard in the briefing. So the law-of-the-case doctrine applies, and this Court presumes that the prior ruling on waiver will stand.

### 2. Waiver

Even if the law-of-the-case doctrine did not apply at all—and this Court was to consider the waiver argument afresh—Exploria's request to file an arbitration motion would fail because it did, in fact, waive the defense. Waiver of the right to arbitrate may be express or inferred, and inferred waiver is a fact-dependent inquiry. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 587–588 (7th Cir. 1992). Exploria has not expressly waived its arbitration defense in this case, so the question is whether waiver may be inferred. A party implicitly waives its right to compel arbitration when, considering the totality of the circumstances, it "has acted inconsistently with the right to arbitrate." *Id.* at 588. Relevant facts to consider include whether the movant did "all it could reasonably have been expected to do" to detect the defense early, whether it participated in the litigation, whether there has been a substantial delay in its request, whether it participated in discovery, and whether the nonmovant was prejudiced by the delay. *See Kashkeesh v. Microsoft Corp.*, 679 F. Supp. 3d 731, 737 (N.D. Ill. 2023) (cleaned up). As an example, the Seventh Circuit has affirmed a waiver of the right to arbitrate where the defendant filed a motion for summary judgment, because that type of merits presentation meant that the defendant was "submitting the case to the district court for decision," which is inconsistent with the desire to arbitrate. *St. Mary's,* 969 F.2d at 589 (explaining

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 64 of 88 PageID #:9967
Case: 25-2721     Document: 13       Filed: 11/20/2025     Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 9 of 33 PageID #:9488

that summary judgment motions "preclude any arbitration … by virtue of waiver" (cleaned up)).

Just so here. This case was first filed in April 2019, R. 1, Compl., and the parties underwent two years of discovery before Exploria first moved for summary judgment in September 2021. R. 146, Def.'s Mot. for Summary Judgment. In that motion, Exploria advanced only an argument on vicarious liability; it did not mention an arbitration agreement. *See generally* Def.'s Mot. for Summary Judgment. The Court then denied Exploria's motion and certified the class in August 2023. *See* Certification Order. So Exploria, having submitted this case for a decision on the merits before ever raising arbitration and participating in years of discovery (including hiring its own expert witnesses), has acted inconsistently with the intent to arbitrate and thus waived the argument.[3]

Exploria argues that there was "no existing right" to arbitrate until after the class was certified and the notice period ended. Def.'s Reply at 12–14. But after the class was certified in August 2023, Exploria filed a flurry of motions the next month— including a motion to dismiss for lack of standing, R. 239, a motion to reopen

_____

[3]Exploria argues that under Ninth Circuit precedent, Exploria's actions evidence only a lack of awareness of the right to arbitrate, and waiver requires knowledge. Def.'s Reply at 11 (citing *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023)). But this Court is bound by Seventh Circuit precedent instructing that it should "weigh heavily" whether a party did "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration[.]" *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). And although Exploria includes this precise language in its motion for leave, Def.'s Mot. at 17, it provides no information allowing this Court to determine that it did all it could do to detect a potential arbitration defense before its first mention of arbitration some four years after Moore's initial class-action complaint was filed.

9

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 65 of 88 PageID #:9968
Case: 25-2721     Document: 13     Filed: 11/20/2025     Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 10 of 33 PageID #:9489

discovery, R. 243, a motion to file a second amended answer, R. 241, and a motion to amend the Court's decision, R. 242. Despite all of those merits-related filings, Exploria still did not mention arbitration, and all of this was after the certification of the class. Exploria did not file its motion for leave to file an amended answer (with an arbitration defense) until October 2023. *See generally* Def.'s Mot. (filed Oct. 9, 2023). Both Exploria's pre-certification and *post*-certification litigation conduct thus are inconsistent with an intent to arbitrate. For these reasons, Exploria's motion for leave to file a motion to compel arbitration is denied.

### B. Evidence of Phone Calls

Moving on to Moore's summary judgment motion, the Court must first resolve a preliminary issue on the phone-call logs of Prospects and Yodel. Exploria argues that because Moore has not provided the call logs as evidence in the record, he has no proof that any of the calls actually occurred. R. 333, Def.'s Resp. at 9–11. Moore responds that multiple pieces of record evidence incorporated the call logs and, as a practical matter, he did not submit the actual call logs into the record because the files were too voluminous to be uploaded to the electronic-filing system and also could not be reviewed by this Court without specialized software. R. 358, Pl.'s Reply at 5–6. In particular, Moore argues that the call logs are admissible because they were authenticated through deposition testimony and are incorporated into Moore's expert report by Aaron Woolfson. *Id.* at 2–7; Woolfson Decl ¶ 22. Though Moore should have included the call logs directly in the record for simplicity's sake, this Court agrees

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 66 of 88 PageID #:9969
Case: 25-2721      Document: 13      Filed: 11/20/2025      Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 11 of 33 PageID #:9490

that the expert reports' incorporation of them and the deposition testimony authentication are sufficient foundations to consider the facts reflected in the call logs.

First, the expert reports from *both* parties' experts incorporated the call logs into their respective analyses. Federal Rule of Evidence 703 "allows experts to rely on inadmissible facts or data in forming an opinion so long as 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Sansone v. Brennan*, 917 F.3d 975, 982 (7th Cir. 2019) (quoting Fed. R. Evid. 703). Here, plaintiff's expert Aaron Woolfson explicitly relied on the call logs from both vendors to support his opinion that 76,255 calls were placed to 66,682 unique cell-phone numbers by Prospects and Yodel on Exploria's behalf. Woolfson Decl. ¶¶ 3, 22 (naming the "*exploria_dialing*" file and "*travel exploria call logs*" file as the materials used to identify the calls at issue in this case); *see also id.* ¶¶ 30–56 (explaining how he identified the relevant calls from the two files); ¶ 56 (describing Woolfson's conclusions); R. 320-68, Exh. 68, Woolfson Rebuttal Report ¶ 7 (explaining that the "*exploria_dialing*" file was produced by Yodel and the "*travel exploria call logs*" file was produced by Prospects). Not surprisingly, Exploria's own expert, Jennifer Smith, testified that these logs are of the type reasonably relied on by experts in her field. *See* R. 195-23, Exh. EE, Smith Rep. ¶ 13 ("I have considered data and information from various sources, all of which are reasonably relied upon by experts in my field."), PDF p. 24 (listing the call logs she relied on by file name, which are the same listed in Woolfson's report). And Exploria does not argue that the call records do not meet the Rule 703 threshold for expert reliance—only that Moore has not

11

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 67 of 88 PageID #:9970
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 12 of 33 PageID #:9491

shown that the data sets reviewed by Woolfson "have anything to do with this case at all." Def.'s Resp. at 10. Given the experts' reliance on them—the experts of *both* sides—there is some artfulness in saying that the call records have nothing to do with this case. Based on the expert-report reliance on the call logs, there is more than sufficient foundation to consider the logs.[4]

On top of that, the deposition testimony from the Yodel and Prospects representatives also adequately laid a foundation for the call logs as business records. The Seventh Circuit—in other TCPA cases—has explained that call logs may be authenticated by a custodian as business records. *See Norman v. AllianceOne Receivables Mgmt., Inc.*, 637 F. App'x 214, 216 (7th Cir. 2015) (non-precedential disposition). The custodian need only be "familiar with the company's record keeping practices," and need not "have personally made the calls to [the recipient] to testify about the meaning of the records." *Id.* (first citing *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 686 (7th Cir. 2015); and then citing *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 775–77 (7th Cir. 2006)). Indeed, "[w]hen it comes to testifying about business records, the

---

[4]Exploria also takes issue with Woolfson's methodology for identifying the calls that were transferred to Exploria's agents, arguing that Woolfson did not adequately explain his process. *See* Def.'s Resp. at 10. Rather than developing that argument in its 25-page response brief, Exploria filed a separate Rule 702 motion on the subject, which this Court declined to consider. R. 337, Def.'s Rule 702 Mot.; *see also* R. 349, Minute Entry (explaining the Court's decision to disregard the motion). In any case, Woolfson's same report was relied upon in the Court's class-certification decision in 2023, and Exploria did not attack his methods then. *See* Certification Order at 14 (relying on Woolfson's identification of the 66,682 cell-phone numbers to assess numerosity). So any Rule 702 challenge to Woolfson's methodology is forfeited at the summary judgment stage.

12

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 68 of 88 PageID #:9971
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 13 of 33 PageID #:9492

custodian need not be the individual who personally gathered" them. *Cocroft,* 796
F.3d at 686 (cleaned up).

Yodel's CEO, Kyle Wood, testified that he "overs[aw] the management teams
that run [outbound telephone campaigns]," and that Yodel produced the logs contain-
ing around 20 million call records for the calls that Yodel made on behalf of Exploria.
Wood Dep. at 9:7–15; 12:17–24; 55:20–56:7. He confirmed that the data—a dialer rec-
ord table—came from Yodel's data center in Florida and is "an actual log [of calls]
that comes from [the] dialer table." *Id.* at 56:8–10, 57:12–13. He walked through each
column to confirm which data they contained and explain which parts of the call were
captured by the table. *Id.* at 56:8–69:1. Similarly, Prospect's president and CEO,
Joshua Grant Kidd, testified that he personally searched for the call records in the
database, and that they were "a record of all the transfers on the Exploria campaign."
Grant Dep. at 12:9–17:6, 22:14–17, 41:13–18. He confirmed that the logs reflected
*only* the calls for the Exploria campaign, *id.* at 63:16–22, that they were "typical" for
what he would see in the business, *id.* at 64:23–65:3, and that he retrieved the records
either from a dialer or an Excel database, *id.* at 64:5–7.

As the above testimony clearly shows, Wood and Grant are familiar with their
employers' record-keeping practices and laid a sufficient foundation to authenticate
the logs as business records. And although Exploria blankelty argues that the call
logs have not been authenticated as business records, Def.'s Resp. at 9, the company
goes no further to challenge either of the custodians' ability to lay a foundation for
the logs or the accuracy of the logs themselves. *See Ira Holtzman, C.P.A. v. Turza,*

13

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 69 of 88 PageID #:9972
Case: 25-2721     Document: 13     Filed: 11/20/2025     Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 14 of 33 PageID #:9493

728 F.3d 682, 685 (7th Cir. 2013) (explaining that there was no material dispute in a TCPA case where the company's representative detailed how the records were compiled and no competing evidence suggested that the records were inaccurate). Having established that Woolfson's expert testimony—or, alternatively, the records-custodian testimony—laid sufficient foundation for the call logs at issue in this case, this Court may consider them in determining whether Moore is entitled to summary judgment on the TCPA claim.

### C. TCPA

The TCPA bans prerecorded telemarketing and advertising phone calls to cellular numbers unless the recipient has given prior express written consent. 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(2). The statute offers a private cause of action for aggrieved individuals to sue the alleged violator and "receive $500 in damages for each such violation." § 227(b)(3). Thus, to win summary judgment on his TCPA claim, Moore must show that Exploria initiated (1) a telemarketing or advertising call; (2) using a prerecorded voice; (3) to a cellular number. *See* § 64.1200(a)(2). Prior express consent is an affirmative defense; as such, the party raising the consent defense—here, Exploria—bears the burden of proof. *Blow v. Bijora, Inc.*. 855 F.3d 793, 803 (7th Cir. 2017). Moore argues that he has met each element of the Section 227(b) claim and is entitled to judgment as a matter of law; by contrast, Exploria argues that Moore fails on each element. *See* Pl.'s Mot. at 4; Def.'s Resp. at 3. As explained next, Moore has demonstrated—even giving Exploria the benefit of reasonable

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 70 of 88 PageID #:9973
Case: 25-2721 Document: 13 Filed: 11/20/2025 Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 15 of 33 PageID #:9494

inferences—that there is no genuine dispute as to any material fact on the elements of the class's TCPA claim, and no reasonable jury could find otherwise.

### 1. Telemarketing

To constitute a TCPA violation, the calls placed on Exploria's behalf must have "include[d] or introduce[d] an advertisement or constitute[d] telemarketing." § 64.1200(a)(2). Telemarketing is "the initiation of a telephone call … for the *purpose* of encouraging the purchase or rental of, or investment in, property, goods, or services." § 64.1200(f)(13) (emphasis added). Thus, whether a call constitutes telemarketing depends on the call's "context or purpose." *Legg v. PTZ Ins. Agency, Ltd.*, 2018 WL 3869970, at *2 (N.D. Ill. Aug. 15, 2018) (quoting *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820 (8th Cir. 2015)). Moore points to Exploria-provided scripts that advertise the Summer Bay resort, deposition testimony from Exploria's Vice President of Marketing, and the contracts with the vendors as proof that the calls were telemarketing. Pl.'s Mot. at 4–5. Exploria counters that the scripts were not necessarily used by the vendors, and even if they were, they do not actually offer a good or service for money. Def.'s Resp. at 11–12. Based on the record evidence, Moore has met his burden of showing that any reasonable jury must conclude that the calls made by Yodel and Exploria constituted telemarketing under the TCPA.

First, the contracts with Yodel and Prospects evidence the parties' understanding that the purpose of the call campaign was telemarketing. The relevant calls in this case are those placed by Yodel and Prospects on Exploria's behalf. *See* DSOF ¶¶ 3–4, 22 (explaining that Yodel and GaI/Acquis, which contracted with Prospects,

15

**SA-15**

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 71 of 88 PageID #:9974
Case: 25-2721   Document: 13   Filed: 11/20/2025   Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 16 of 33 PageID #:9495

were retained by Exploria to provide live transfers); PSOF ¶¶ 3, 14, 20, 28 (same). The Yodel Services Agreement and the Insertion Order identify Exploria as the "Advertiser" and state that the Advertiser is in the business of selling products. *See* Yodel Agreement at 2; Yodel Insertion Order at 4. It further states that the Advertiser desires to engage Yodel—referred to as the "Call Center"—to "generate certain sales leads." Yodel Agreement at 2. Similarly, the Acquis Services Agreement states that Exploria is retaining Acquis to provide leads in the form of Live Transfer Calls. *See* Acquis Agreement at 2.[5] The Acquis Insertion Order includes an "Approved Telemarketing Script" that offers the recipients of Prospects' calls a stay at the Exploria resort in exchange for a $99 refundable room deposit which will be returned to the customer as a $100 resort gift card "which can be used in [Exploria's] restaurants, bars, snack and gift shops." Acquis Insertion Order, Exh. 1 at 3–4. The agreements and the script are all aimed at executing one thing: telemarketing.

Second, Ranice Rogers, Exploria's director of national call centers at the time of the campaign, testified that Exploria engaged Yodel and GaI/Acquis to "place outbound telemarketing calls regarding the Summer Bay property." Rogers Dep. at 9:19–23; 12:4–10. Exploria's corporate counsel further confirmed that Exploria is "a real estate timeshare developer" that "sell[s] real estate," and sends potential buyers to the resorts while "hoping to sell them a timeshare interest." Lizotte Dep. at 8:11–

---

[5]Remember that Acquis appointed Prospects as the call center to perform its work under the Exploria contract. *See infra* at 2; Acquis Insertion Order at 1 (titling the campaign "Exploria Resorts Call Transfer at ProspectsDM call center").

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 72 of 88 PageID #:9975
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 17 of 33 PageID #:9496

9:13; 83:15–20. And to leave no room for doubt, Exploria's response to Moore's Rule 56.1 Statement explicitly states that it is "[u]ndisputed that Club Exploria retained vendors to place outbound telemarketing calls." R. 335, Def.'s Resp. to PSOF ¶ 2.

Thus, Moore has presented evidence that Exploria contracted with Yodel and Prospects to make the calls for the purpose of telemarketing—and with an absence of competing evidence to the contrary, no reasonable jury could find otherwise.

### 2. Prerecorded Technology

Next, Moore must show that every call to the class "us[ed] an artificial or pre-recorded voice." § 64.1200(a)(2). Moore argues that Exploria's contracts with the telemarketing vendors expressly required the use of prerecorded scripts using a soundboard system, and so "every single call began with a prerecorded voice via the soundboard process." Pl.'s Mot. at 5–6. Exploria seemingly concedes that the calls did utilize soundboard technology but argues that the issue of whether soundboard technology qualifies as a "prerecorded call" under the TCPA is a "hotly-contested legal issue." Def.'s Resp. at 12–13.

The TCPA and its implementing regulations do not define "prerecorded." Statutory interpretation begins with the plain language of the statute. The Court must "assume that the legislative purpose of the statute is expressed by the ordinary meaning of the words used." *United States. v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) (internal quotation marks and alterations omitted) (quoting *United States v. Lock*, 466 F.3d 594, 598 (7th Cir. 2006)). The plain language of the statute should be conclusive unless there is clearly expressed congressional intent to the contrary. *Id.* The

17

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 73 of 88 PageID #:9976
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 18 of 33 PageID #:9497

statute's text merely prohibits any calls "using any … prerecorded voice." § 227(b)(1)(A). As another court in this District observed in a similar TCPA suit, "prerecorded" simply means "recorded in advance." *Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188, at *3 (N.D. Ill. Dec. 9, 2019) (quoting *Prerecorded,* Merriam-Webster's Dictionary (2019)). And there is nothing within the statute itself to imply that Congress did not intend this meaning.

On the record evidence, the vendor testimony and Woolfson's expert report support the contention that every call from Prospects and Yodel used a "prerecorded voice." Wood testified that the calls placed by Yodel for Exploria were soundboard calls, which means an agent pressed buttons to play prerecorded messages. Wood Dep. at 14:24–15:5, 16:19–21. He explained that Yodel creates the prerecorded clips "[u]sing voice talents that [Yodel] hire[s]," and then Yodel agents press buttons to "progress through the script." *Id.* at 46:9–47:2. Similarly, Grant testified that he "definitely know[s] … that sound board was used and prerecorded messages were used" by Prospects for the Exploria campaign. Grant Dep. at 117:2–4. In his words, soundboard technology uses "prerecorded voice clips" that the live Prospects agents "press[ed] a recording through one way or another," in lieu of using their own voice in real time. *Id.* at 62:8–13. And the expert report bolsters this testimony with the call data. According to Woolfson, he could discern which call records used prerecorded messages; the Yodel call logs listed a "call disposition" reflecting which calls conveyed prerecorded messages, and the Prospects call logs only reflected calls that were transferred to Exploria after the soundboard process that Grant described. Woolfson Decl.

18

**SA-18**

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 74 of 88 PageID #:9977
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 19 of 33 PageID #:9498

¶¶ 33–35. Woolfson's process to identify the calls to the class now at issue in this case thus only includes calls that contained prerecorded messages. *Id.* ¶ 36 (explaining that he identified 16,566,899 calls from the Yodel and Prospects call logs to 8,359,019 unique phone numbers), ¶ 38 (explaining that he compiled the list of 8,359,019 unique phone numbers to then identify which ones were cellular).

Exploria does not present competing evidence to suggest that any of the calls at issue actually did not feature a prerecorded voice. Given this, Moore has met his burden that the calls to the class placed by Yodel and Prospects were prerecorded; again, no reasonable jury could find otherwise.

### 3. Cellular Numbers

On the final element of his prima facie case, Moore must show that each of the 76,255 calls at issue in this case went to a cell-phone number. Moore presents Woolfson's data analysis of the call logs as evidence that each of the 66,682 numbers that received the 76,255 calls were assigned to a cell service. *See* Pl.'s Mot. at 6–7. Exploria responds by arguing that its expert, Ken Sponsler, "hotly contests" Woolfson's methodology on this point and the question is ultimately one for the jury. Def.'s Resp. at 13–14.

Woolfson's report explains that he identified the wireless status of the numbers from the call logs, which specifically allowed him to discern which wireless carrier the numbers were tied to. *See* Woolfson Decl. ¶ 32. He did so by sending the list of numbers to TelLingua, which "tagged each telephone number … with a label to indicate (a) whether the number isWireless, and (b) the host Operating Company

19

**SA-19**

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 75 of 88 PageID #:9978
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 20 of 33 PageID #:9499

Number that the number was associated with on the date of the call record." *Id.* ¶ 38. Woolfson's call log analysis led him to conclude that "there were 76,255 calls to cellular numbers … The 76,255 telephone calls consisted of 66,682 unique cellular numbers that received one or more calls." *Id.* ¶ 51. And although Exploria's expert disputes the reliability of identifying the *assignees* of wireless phone numbers for the purpose of identifying a class, he does not dispute that Woolfson could have reliably identified whether a number was *wireless* or not. *See* R. 334-14, Exh. 14, Sponsler Rep. ¶¶ 148–168. In fact, Sponsler testified that he "can identify any point in time back to 2003 whether a number was wireless at any particular point in history," and that "a lot of companies do that, including [his] own." R. 320-69, Exh. 69, Sponsler Dep. at 109:12–16. So there is no genuine dispute that any of the calls went to a non-cellular number, and Moore has met his burden.

### 4. Consent

Exploria argues that each class member consented to be contacted because the vendors only called numbers collected from an online opt-in web form. *See* Def.'s Resp. at 14–15. Telemarketing calls using prerecorded voices to cellular numbers do not fall within the TCPA's prohibition if they were made with the consent of the called party. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2). Consent requires a written agreement clearly authorizing an identified seller to deliver telemarketing communications using a prerecorded voice. § 64.1200(f)(9). Express consent is an affirmative defense, so Exploria bears the burden of proving that it had prior express written consent for the calls at issue. *See Blow*, 855 F.3d at 803.

20

**SA-20**

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 76 of 88 PageID #:9979
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 21 of 33 PageID #:9500

It is undisputed that Exploria's vendors did not own or operate the opt-in sites from which they purchased the leads. Def.'s Resp. to PSOF ¶¶ 40–43. Exploria concedes that the online opt-in forms did not list Exploria's name on them—instead, it argues that it did not need to. Def.'s Resp. at 15. According to Exploria, Yodel and Prospects were the "sellers," and the opt-in sites identified alternative business names for Yodel and Prospects, so the form sufficiently identified a seller. *Id.* But the implementing regulation makes clear that *Exploria* itself—not its telemarketing vendors—is the seller.[6]

The FCC's regulation defines "seller" as the entity "on whose behalf a telephone call … is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." § 64.1200(f)(10). By contrast, "telemarketer" is defined as the "entity that initiates a telephone call" for the purpose of sales or

---

[6]In connection with this point, Exploria filed a notice of supplemental authority on a decision from the Eleventh Circuit, which vacated the one-to-one consent rule promulgated by the FCC in 2023. *See* R. 361, Def.'s Suppl. Auth.; *Ins. Mktg. Coalition Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025). According to Exploria, the court's holding that consent under the TCPA need only be "'clearly and unmistakably' stated" means that the FCC's consent rule exceeds its authority to implement the TCPA. Def.'s Suppl. Auth. at 1 (quoting *Ins. Mktg. Coalition,* 127 F.4th at 314).

But the Eleventh Circuit's decision does not affect the more general rule that prior express written consent is required for prerecorded telemarketing calls, and consent must "clearly and unmistakably" state that the consumer is willing to receive calls from specific entities. *Id.* at 314 (listing cases finding consent where multiple entities were named in the form). In its holding, the court opined only on the one-to-one requirement and the logically-and-topically-related restrictions, both promulgated in 2023. *See id.* at 311–17. The one-to-one rule is not where Exploria's consent argument falters—it is the fact that there has been no showing that any class members consented to receive marketing calls on behalf of Exploria *specifically*.

21

**SA-21**

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 77 of 88 PageID #:9980
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 22 of 33 PageID #:9501

investment. *Id.* § 64.1200(f)(12). If Exploria is correct that Yodel and Prospects are sellers making calls on (supposedly) their own behalf, then there would never be a telemarketer—and the definition would be meaningless. *See Berkos*, 543 F.3d at 396 ("We avoid interpreting a statute in a way that renders a word or phrase redundant or meaningless.").

Exploria has not offered evidence that would allow a reasonable jury to find that even a single class member opted in to a consent form that identified *Exploria* as the seller. The company argues that "it is not possible for Club Exploria to answer Plaintiff's motion without the specific consent records supporting each call," Def.'s Resp. at 14, but it was Exploria's—not Moore's—responsibility to identify and present the evidence needed to support its affirmative defense. That argument is more of a concession than it is a contention. Given the absence of testimony or documentary evidence to show that any class member actually agreed to be contacted by Exploria itself, no reasonable factfinder could conclude that the calls were made with consent.[7]

The same is true even in light of the Supreme Court's recent decision, *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation,* 606 U.S. 146 (2025), that courts are not bound by the FCC's interpretation of the TCPA. *Id.* at 155.

---

[7]Exploria also seems to argue that it is enough that its contracts with the vendors required them to comply with the TCPA and use opt-in data. Def.'s Resp. at 14. But as Judge Leinenweber explained in an earlier decision in this case, "Exploria negotiated a contract that requir[ed] the telemarketer to obey the TCPA, but also required the telemarketer to use a prerecorded voice for the telephone calls obtained from an opt-in registry that did not mention itself." Certification Order at 12. So the contracts' general prohibition against TCPA violations does not suffice as evidence of consent.

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 78 of 88 PageID #:9981
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 23 of 33 PageID #:9502

Exploria argues that *McLaughlin* "throw[s] out" the FCC's interpretation of "prior express written consent," which includes identification of the seller that may contact the call recipient. R. 370, Def.'s Second Suppl. Auth. at 2. But Exploria's reading of *McLaughlin* goes too far—the Supreme Court still instructed that district courts must "afford[] appropriate respect to the agency's interpretation." 606 U.S. at 155 (citing *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 402 (2024)). If this Court "independently determine[s]" that the FCC's interpretation of the consent requirement is "correct," then the interpretation is not thrown out at all. *Id.* at 157.

Section 227(b)(1)(B) clearly requires the "prior express consent of the called party." Exploria has already conceded that consent—at a minimum—must be "clearly and unmistakably stated." Def.'s Suppl. Auth. at 1; *see also* Def.'s Second Suppl. Auth. at 2 (reciting the Eleventh Circuit's case law holding that consent minimally must be clear and unmistakable). So the Court need not engage in any more statutory interpretation to determine whether the FCC's consent requirements run afoul of the TCPA's text—Exploria fails to provide any evidence that any class member "clearly and unmistakably" opted in to receive sales calls pertaining to *Exploria. See* Def.'s Resp. at 15 (arguing only that the forms naming the doing-business-as monikers of Yodel and Prospects sufficiently obtained consent even without mentioning Exploria).

### D. Vicarious Liability

Neither party disputes the fact that Exploria itself did not actually make the calls in question. Moore argues that Exploria is vicariously liable through the federal common law of agency for its vendors' violations of the TCPA. *See* Pl.'s Mot. at 8–15.

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 79 of 88 PageID #:9982
Case: 25-2721      Document: 13      Filed: 11/20/2025      Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 24 of 33 PageID #:9503

Before addressing the merits of Moore's vicarious-liability arguments, there is a preliminary issue: is vicarious liability permitted under Section 227(b)? The Supreme Court recently held, in *McLaughlin,* that a federal court "is not bound by the FCC's interpretation of the TCPA," and should instead "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." 606 U.S. at 168The Supreme Court's instruction bears on this case because, previously, courts viewed the FCC's declaratory ruling in *Dish Network* as binding authority for the proposition that a seller may be vicariously liable under federal common law agency principles for a telemarketer's TCPA violation even if the seller did not itself "initiate" the call. *See, e.g.*, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021) (citing *Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013)). But under the Supreme Court's recent teaching in *McLaughlin,* this Court is not bound to apply *Dish Network* and must instead engage in its own analysis—taking the FCC's interpretation into consideration—to determine whether a seller may be vicariously liable for its telemarketers' Section 227(b) violations. *McLaughlin*, 606 U.S. at 168.

The Court starts "with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (cleaned up). The design of the statute may also assist with the determination of the law's plain meaning. *Berkos*, 543 F.3d at 396 (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). Section 227(b) itself has no mention of vicarious liability. Faced with this silence, the Court "assume[s] that, when Congress creates a tort action, it legislates against a legal

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 80 of 88 PageID #:9983
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 25 of 33 PageID #:9504

background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley,* 537 U.S. 280, 285 (2003) (collecting cases). Indeed, to "abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." *United States v. Texas,* 507 U.S. 529, 534 (1993) (cleaned up). And "[n]othing in the language of Section 227(b) itself indicates that common-law agency principles are inapplicable." *Smith,* 30 F. Supp. 3d at 773–74. So this Court applies the assumption that Congress enacted Section 227(b) with the intention of incorporating longstanding vicarious liability principles.

This assumption squares with the purpose of the TCPA itself. "Congress intended for the TCPA to protect individuals from the annoyance and cost of receiving certain types of telemarketing calls without their prior consent," and "sellers are in the best position to monitor and police third-party telemarketers' compliance with the TCPA." *Smith,* 30 F. Supp. 3d at 774. Allowing sellers like Exploria to avoid liability for—and even profit from—the TCPA violations of their hired telemarketers would run afoul of this purpose. And Congress' grant of a private cause of action for statutory damages under Section 227(b)—that is, a minimum amount of damages for every violation—is yet more evidence that the TCPA was designed to deter offenders. *See* § 227(b)(3). These same principles are what led the FCC to hold that sellers may be vicariously liable under Section 227(b). *See Dish Network*, 28 FCC Rcd. at 6587–89. For this reason, "the vast majority of courts that have addressed the issue since the FCC's ruling" have similarly found that the FCC's determination squares with

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 81 of 88 PageID #:9984
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 26 of 33 PageID #:9505

the TCPA's text and purpose. *Smith,* 30 F. Supp. 3d at 774–75 (collecting cases addressing the issue).

Having determined that Exploria could be vicariously liable for Yodel's and Prospects' violations of Section 227(b), the Court turns next to Moore's agency arguments. Moore advances two theories: actual authority and ratification. Moore has presented conclusive evidence establishing that Yodel and Prospects acted with actual authority to make the calls violating the TCPA, and no reasonable jury could conclude otherwise.

### 1. Actual Authority

First, Moore argues that Exploria is liable for its vendors' actions under a theory of actual authority. Pl.'s Mot. at 9–12. Exploria responds that its contracts with the vendors "specifically forbade actions that would violate the law,"[8] and that in any case, the vendors did not have actual authority to violate the TCPA. *See* Def.'s Resp. at 16–22. But under federal common law,[9] actual authority may be either express or *implied. Moriarty v. Glueckert Funeral Home, Ltd.,* 155 F.3d 859, 866 (7th Cir. 1998).

---

[8]Exploria already filed for summary judgment on this point, and the previously assigned judge rejected its argument that it cannot be held vicariously liable for a vendor's TCPA violation merely because its contracts with vendors required them, on their face, to comply with the TCPA. *See* Certification Order at 8–12. Exploria does not argue that the decision was clearly wrong or that new controlling authority has come to light to strengthen its case that it cannot be liable where its contracts required compliance with the TCPA. *See Mendenhall,* 419 F.3d at 691. So this Court declines to re-examine the prior decision, particularly where Exploria does not argue that it should.

[9]Because this case arises under the TCPA, the Court applies the federal common law of agency, which generally comports with the Restatement of Agency. *See Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 n.15 (7th Cir. 1998).

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 82 of 88 PageID #:9985
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 27 of 33 PageID #:9506

To establish actual-authority liability, Moore must show that (1) Exploria and its vendors had a principal-agent relationship; (2) Exploria controlled or had the right to control the vendors; and (3) the vendors' conduct fell within the scope of its agency. *See Bilek*, 8 F.4th at 587. Moore has presented plentiful evidence to show that any reasonable jury would have to find that Yodel and Prospects had actual authority to conduct the telemarketing calls in this case.

First, Exploria and its vendors had an agency relationship. Agency arises when a principal manifests assent to an agent that the agent will act on the principal's behalf, subject to the principal's control. *Smith*, 30 F. Supp. 3d at 775 (citing Restatement (Third) of Agency § 1.01 (2006)). Moore presents dispositive evidence in the form of contracts and deposition testimony to establish that an agency relationship existed with both Yodel and Prospects.

Yodel and Exploria entered into a contract wherein "Yodel was hired to generate live transfers" for Exploria. Def.'s Resp. to PSOF ¶ 3; *see also* Yodel Insertion Order at 1–2. Exploria had the right to conduct performance reviews of Yodel's work, which Exploria tries to brush off by saying that the performance reviews were just an opportunity for them to "connect." Def.'s Resp. to PSOF ¶ 4; *see also* Yodel Agreement at 5. But Exploria—throughout the telemarketing campaign—asked for changes to the states that Yodel called into on its behalf and altered the day-to-day volume of calls; it expected the Yodel to "comply" with those changes. Rogers Dep. at 98:12–99:19, 100:23–101:1. Yodel's agents were given a script that offered a vacation package from Exploria, and Exploria said that it was the script it would "like to have

27

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 83 of 88 PageID #:9986
Case: 25-2721     Document: 13     Filed: 11/20/2025     Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 28 of 33 PageID #:9507

used." Def.'s Resp. to PSOF ¶ 8; R. 320-7, Exh. 7 at 1. And Exploria "would make changes to the script throughout the campaign," with the expectation that Yodel would implement them. Rogers Dep. at 83:24–84:11. Thus, Moore has provided evidence showing that Yodel and Exploria had a principal-agent relationship in which Yodel conducted telemarketing calls on Exploria's behalf per the parties' contract, and Exploria regularly controlled Yodel's performance.

With regard to Prospects, Exploria and Acquis entered into an agreement under which Acquis was to provide live transfers, providing daily counts and invoices to Exploria at the end of every week. Acquis Agreement at 2. Under that agreement, Acquis was to use the Prospects Call Center to place calls with "the script read ad message verbatim as approved in writing by" Exploria. Acquis Insertion Order at 2. It is undisputed that Exploria knew that Prospects would be the entity actually placing the calls, and Exploria and Prospects' president, Joshua Grant, were looped into the same communications about the Summer Bay campaign. *See* Def.'s Resp. to PSOF ¶¶ 29, 31; Acquis Insertion Order at 1; R. 320-27, Exh. 27. So Exploria approved of Prospects' role as a subagent to perform Acquis' duties under its contract with Exploria. *See* Restatement (Third) of Agency § 3.15 ("A subagent is a person appointed by an agent to perform functions that the agent has consented to perform … An agent may appoint a subagent only if the agent has actual or apparent authority to do so."). Under the terms of that agency relationship, Exploria controlled the script that Prospects used and Exploria set the targeted demographics and regions that Prospects

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 84 of 88 PageID #:9987
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 29 of 33 PageID #:9508

could call. *See* Acquis Insertion Order. Moore has thus conclusively proved that there was a principal-agent relationship between Exploria and Prospects.

Exploria asserts that the vendors operated outside of Exploria's normal business and that they performed their duties using their own workforce, tools, and facilities. *See* DSOF ¶¶ 13, 14, 29, 36; Rogers Dep. at 10:18–19; Wood Dep. at 126:18–127:1; Grant Dep. at 23:23–25:15, 189:2–10. They were paid based on "success"—Exploria only paid for calls that were 60 seconds or more—rather than an hourly wage by Exploria. DSOF ¶¶ 20, 35; Yodel Insertion Order at 1–2; Acquis Insertion Order at 1. And the contracts themselves disclaim an agency relationship. Yodel Agreement at 9; Acquis Agreement at 2. These facts are more relevant to whether the telemarketers were *employees*—which no one contends—and they do not rise to the level of creating a genuine dispute over Exploria's agency relationships with Yodel and Prospects given the overwhelming strength of Moore's evidence of the principal-agent relationship. No reasonable jury could rely on the sparse facts offered by Exploria to undermine the evidence that Exploria was in a principal-agent relationship with Yodel and Prospects.

Next, Exploria exercised control over Yodel and Prospects during the campaign. "A hallmark of the principal/agent relationship is the principal's right to control the conduct of the agent." *Wisc. Cent. Ltd. v. TiEnergy, LLC*, 894 F.3d 851, 858 (7th Cir. 2018); *see also Smith*, 30 F. Supp. 3d at 776 (describing "the power to give interim instructions" as "the hallmark of an agency relationship"). In similar TCPA cases, other judges in this District have held that the principal exercised a significant

29

**SA-29**

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 85 of 88 PageID #:9988
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 30 of 33 PageID #:9509

level of control where a seller required the telemarketer to use an approved script, exercised control over the call volume, and generally controlled how the calls would be placed. *See, e.g.*, *Thompson v. Sutherland Global Servs., Inc.*, 2019 WL 1470238, at *6–7 (N.D. Ill. Apr. 3, 2019).

In support of this point, Moore points to Rogers' testimony stating that Exploria expected all of its telemarketing vendors to comply with its directives throughout the campaign. Pl.'s Mot. at 11; Rogers Dep. at 83:24–84:11, 98:13–99:19, 100:23–101:1, 139:8–11. Indeed, as discussed above, Exploria controlled the script, volume, and the target demographics and states for both Yodel and Prospects during the campaign. Exploria also required weekly reports from the vendors and had the contractual right to conduct performance reviews. *See* Yodel Agreement at 5; Acquis Agreement at 2. Given the evidence, no reasonable jury could find that Exploria did not control Yodel and Prospects.

Exploria seems to argue that it could not have controlled Prospects because it did not have a contract with the company itself. Def.'s Resp. at 21–22. But the relevant inquiry is not necessarily whether the two entities had a contract with one another; it is whether the subagent was appointed by the agent "to perform functions assigned to the agent by the principal." *See Griffin v. Safeguard Props. Mgmt., LLC*, 2020 WL 6118572, at *3 (N.D. Ill. Oct. 16, 2020) (cleaned up). As discussed already, the agreement between Acquis and Exploria directly referenced Prospects. Acquis Insertion Order at 2. Exploria has also admitted that it knew Prospects was going to be the call center placing the calls. *See* Def.'s Resp. to PSOF ¶¶ 29, 31. Prospects

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 86 of 88 PageID #:9989
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 31 of 33 PageID #:9510

relied on Exploria's directions on when to make calls, which states to call into, and whom to target. R. 320-37, Exh. 37 (showing emails between Prospects and Acquis discussing the schedule of calls to run by Exploria), R. 320-38, Exh. 38 (showing emails from Exploria to Acquis about Exploria's holiday hours); Rogers Dep. at 37:17–38:23 (explaining that Exploria chose the locations and demographics to call with the "approved script"). Even when viewed in Exploria's favor, this is definitive evidence that Exploria controlled Prospects, even without a contractual provision explicitly establishing the control.

Exploria also asserts that Prospects impermissibly employed Teleskills, a call center in the Philippines, to conduct the calls. DSOF ¶ 23; Grant Dep. 145:12–15, 147:24–148:5, 187:19–188:9, 209:1–18. The sole basis for this assertion appears to be the testimony from Grant, the Prospects CEO, stating that Prospects outsourced its calls to Teleskills for the Exploria campaign. Grant Dep. at 54:2-57:1; 209:1–18 (agreeing that the parties are "relying on [Grant's] memory in order to support the position" that Teleskills was involved). Despite participating in years of discovery in this case, Exploria has offered no further evidence that Teleskills was involved, aside from this best-that-I-can-remember, speculative testimony. So this, weighed against the evidence provided by Moore to support that *Prospects'* agents placed the calls, is not enough to create a genuine issue of material fact.

Finally, the calls that Yodel and Prospects placed for the Summer Bay campaign were within the scope of their agency with Exploria. The agreements required the use of prerecorded technology, Exploria requested that the vendors use scripts

31

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 87 of 88 PageID #:9990
Case: 25-2721    Document: 13    Filed: 11/20/2025    Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 32 of 33 PageID #:9511

that marketed their property, and Exploria contracted with the vendors to buy leads from sites that did not list its name for consent (after having an opportunity to review the consent form for TCPA compliance). *See* Yodel Insertion Order at 1–3; Exh. 7; Acquis Insertion Order; Rogers Dep. at 71:14–73:15, 76:14–78:8. The previously assigned judge's prior decision on vicarious liability concluded the same. *See* Certification Order at 12. No reasonable jury could find that Yodel and Prospects acted outside the scope of their agency when they placed the calls for Exploria in violation of the TCPA.

In sum, Moore has presented ample evidence to establish that Yodel and Prospects had actual authority to place calls on Exploria's behalf, and that those calls violated Section 227(b) of the TCPA. Exploria has not created a genuine issue of fact to allow a reasonable jury to conclude that the vendors' actions were not authorized by Exploria. And because Moore need only show that Exploria was vicariously liable under just one common law theory of agency, the Court need not consider the separate ratification argument.

### E. Motion to Decertify the Class

Lastly, Exploria requests to decertify the class because Moore's allegations pertaining to Yodel and Prospects are supposedly "two entirely different cases." Def.'s Resp. at 25–26. Exploria asserts that the two cases would require separate trials for juries to evaluate different bodies of evidence pertaining to each telemarketing vendor. *Id.* at 25. But there is no genuine issue of fact on the TCPA violations or Exploria's vicarious liability, and Moore is seeking only statutory damages, so no trial is

Case: 1:19-cv-02504 Document #: 395-1 Filed: 11/20/25 Page 88 of 88 PageID #:9991
Case: 25-2721     Document: 13     Filed: 11/20/2025     Pages: 87
Case: 1:19-cv-02504 Document #: 376 Filed: 09/26/25 Page 33 of 33 PageID #:9512

needed. *See* Pl.'s Mot. at 15 (requesting $500 for each of the 71,538 prerecorded calls placed to the class members); § 227(b)(3)(B). So the basis of Exploria's decertification request is non-existent, and the request is denied.

## IV. Conclusion

Exploria's motion for leave to file a motion to compel arbitration, R. 339, is denied. Moore's motion for summary judgment on behalf of himself and the class, R. 319, is granted. The parties shall confer and file a status report proposing how to proceed with the entry of judgment of statutory damages for Moore and the class, and how to litigate attorneys' fees, expenses, and any incentive award. The parties also shall restart settlement negotiations given the entry of this decision. The parties shall file a joint status report by October 15, 2025.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 26, 2025

33

SA-33