CERTIFIED COPY
A True Copy
Teste:
Nathaniel Vladic
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 25-2721

GEORGE MOORE,

*Plaintiff-Appellee,*

*v.*

CLUB EXPLORIA, LLC,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-02504 — **Edmond E. Chang**, *Judge*.

---

ARGUED APRIL 15, 2026 — DECIDED AUGUST 18, 2026

---

Before BRENNAN, *Chief Judge*, and JACKSON-AKIWUMI and MALDONADO, *Circuit Judges*.

BRENNAN, *Chief Judge*. This case presents the question of whether a defendant in a class action waived its right to compel arbitration of disputes with putative class members. The district court found waiver, in part because before the class was certified, the defendant acted inconsistently with a desire to arbitrate. We decide whether this court's waiver rules permit consideration of a defendant's pre-certification conduct.

After clarifying the appellate standard of review of an order denying a motion to compel arbitration, we hold that courts may consider pre-certification conduct. Because the district court committed no clear error here, we affirm.

## I. Background

Club Exploria, LLC ("Exploria") owns and manages vacation properties throughout the United States. To promote its Summer Bay resort in Florida, Exploria contracted with third-party vendors to run a telemarketing campaign in 2018. These vendors purchased "leads"—the phone numbers of those who had agreed to receive sales calls—which had been generated through various "opt-in" websites. Using scripted, pre-recorded calls, the Summer Bay campaign reached tens of thousands of potential customers. George Moore received two of these calls.

In April 2019, Moore sued Exploria, alleging that he and a potential class received these pre-recorded calls without their consent in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), *see* 47 U.S.C. § 227.

Over the next four years, Exploria defended itself in court. It filed pleadings with affirmative defenses, engaged in class-related discovery, filed motions on the merits of Moore's claims, and opposed class certification. After the class was certified, Exploria filed more motions, including a request to reopen discovery and to amend its answer to add more affirmative defenses, which it then filed with leave of the court.

In this motion to amend, Exploria finally raised the topic of arbitration, although it would not move to compel arbitration for at least a year. Its second amended answer sought to "reserve the right to assert arbitration." Three days later after

filing the amended answer, Exploria sought leave to file a third amended answer to add, as an affirmative defense, purported arbitration agreements accepted by unnamed class members through the opt-in sites.

The district court denied this request: "It seems to me," the district judge explained, "it's too late … to raise arbitration. That was clearly waived by not bringing it up before now."[1] Meanwhile, the class action went forward. Class notice was issued. The class was later finalized and Moore then moved for summary judgment.

Two months after briefing finished on Moore's summary judgment motion, Exploria moved to compel arbitration. It argued that 1,026 of the 66,682 class members had entered into mandatory individual arbitration agreements. Previously, though, Exploria had maintained that up to 70% of the class—approximately 47,000 class members—is subject to similar arbitration agreements.

The district court labeled the motion "out of the blue" and ordered supplemental briefing on whether the arbitration defense was waived. After reviewing the arguments, the court ruled that Exploria had waived an arbitration defense. It also granted summary judgment to Moore and the class and ordered the parties to restart settlement negotiations.

In finding waiver, the district court concluded that Exploria's conduct before and after class certification was

[1] The case was then pending before the Honorable Harry D. Leinenweber.

"inconsistent[] with the right to arbitrate."[2] (quotation omitted). The court noted that before certification, Exploria had engaged in two years of discovery and moved for summary judgment, and after certification. Exploria had "filed a flurry of motions" and "[d]espite all of those merits-related filings, [it] still did not mention arbitration." To submit this case for decision on the merits after discovery and after certification, the district court explained, was inconsistent with an intent to arbitrate.

Exploria appeals under the Federal Arbitration Act, which authorizes interlocutory appeals from orders denying motions to compel arbitration. 9 U.S.C. § 16(a)(1)(B); *see Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020).

## II. Discussion

Our analysis proceeds in three parts. First, we consider the appellate standard of review for orders denying motions to compel arbitration. Second, we examine the district court's decision to consider pre-certification conduct in evaluating implied waiver of arbitration rights. Third, we review with deference the district court's finding of waiver, looking only for clear error.

### A. Standard of Review

The parties differ as to what standard of review should apply to the denial of a motion to compel arbitration. Both parties agree that waiver presents a mixed question of law and fact—how a legal standard applies to the court's factual

---

[2] In the alternative, the district court concluded that Judge Leinenweber had ruled that Exploria waived its right to arbitration, so the law-of-the-case doctrine applied.

findings. Exploria calls for de novo review of the ultimate waiver decision, and clear error review of only the underlying factual findings. Moore, on the other hand, calls for clear error review of the ultimate waiver decision and the underlying factual findings.

*1. Conflicting Standards of Review*

The parties' dispute is understandable, as this court's law is inconsistent. Partly to blame is that motions to compel arbitration can raise more than one mixed question of law and fact. For example, some motions are denied for lack of arbitrability—that is, whether two parties are bound by an arbitration agreement and whether the dispute fits within the scope of its terms. Other motions are denied on the basis of waiver, which is a separate defense against arbitration.

One line of cases applies de novo review to orders denying motions to compel. *See, e.g.*, *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 779 (7th Cir. 2014); *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012); *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 480 (7th Cir. 2010); *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).[3] These decisions all involve arbitrability, not waiver, but the language of the standard of review was broad enough to encompass any grounds for denial.

[3] This line of cases stretches back even further. *See, e.g.*, *James v. McDonald's Corp.*, 417 F.3d 672, 676 (7th Cir. 2005); *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1027 (7th Cir. 2002); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); *Int'l Union of Operating Eng'rs, Loc. No. 841 v. Murphy Co.*, 82 F.3d 185, 187 (7th Cir. 1996); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995); *Kresock v. Bankers Tr. Co.*, 21 F.3d 176, 177–78 (7th Cir. 1994).

These cases include no reasoned explanations for de novo review. The standard appears to have been drawn from two Supreme Court cases which held that judges, not arbitrators, decide arbitrability. *See Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 429 (7th Cir. 2025) (Easterbrook, J., concurring) (tracing the doctrine back to *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964), and *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). So, "[t]hrough a process in the nature of a rumor chain," the statement about who decides arbitrability was transformed into a statement about the standard of review, resulting in an "unreasoned proposition about de novo appellate decisions lack[ing] provenance in a statute, rule, or common-law tradition." *Id.*

Conflicting standards of review arose in cases in which waiver was the basis for denying a motion to compel arbitration. The earlier cases adopted a deferential posture toward the mixed question of waiver, reviewing both the facts and the application of law to the facts for clear error. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 588–89 (7th Cir. 1992); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995).

This approach was well reasoned and based on the case-specific, fact-bound nature of waiver questions, as well as the different functions and expertise of district courts and appellate courts. *See St. Mary's*, 969 F.2d at 588. It also attempted to align the law with how this circuit has evaluated mixed questions of law and fact more generally. *Id.* ("In this circuit, the application of legal standards to undisputed facts is classified as a fact … . We defer to the factfinder's application just as we

do to his findings … . In either case the appellate standard is clear error." (citation modified)).

Then, in *Iowa Grain Co. v. Brown*, 171 F.3d 504, (7th Cir. 1999), this court tried to harmonize *St. Mary's* and *Cabinetree* with the line of cases reviewing de novo orders that denied motions to compel arbitration. *Id.* at 508–09. Adopting the Second Circuit's "two-tiered" approach to mixed questions, *Iowa Grain* explained that application of a legal standard is reviewed de novo, but the factual findings are reviewed for clear error. *Id.* (citation omitted). Later cases followed suit. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) ("The factual determinations … are reviewed for clear error, while the legal question of whether the conduct amounts to waiver is reviewed de novo."); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561–62 (7th Cir. 2008).

The attempt in *Iowa Grain* at harmonization did not succeed. The two-tier approach developed in later cases is irreconcilable with *St. Mary's* and *Cabinetree*, which call for deferential review even of the district court's application of law to facts. More recently, a panel of this court made a nuanced attempt to reconcile our precedents. *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020). Although helpful, that case did not account for the line of cases calling for de novo review of orders denying motions to compel arbitration in general. Our doctrine thus remains "in shambles." *Al-Nahhas*, 129 F.4th at 430 (Easterbrook, J., concurring).

*2. Supreme Court Guidance*

This case presents the question of the applicable standard of review, and the parties have briefed the issue. So, we take this opportunity to clarify this court's law. The Supreme Court set out its most recent guidance on standards of review for ordinary civil litigation in *U.S. Bank National Ass'n v. Village at Lakeridge, LLC*, 583 U.S. 387 (2018). As the Court explained, "[m]ixed questions are not all alike." *Id.* at 395–96. What standard applies when reviewing a mixed question depends on "whether answering it entails primarily legal or factual work." *Id.* at 396.

For a mixed question that requires courts to "expound on the law" by "amplifying or elaborating on a broad legal standard," such that the court develops "auxiliary legal principles of use in other cases," review should be de novo. *Id*. This is because appellate courts have "institutional advantages" in giving "legal guidance." *Id*. (quotation omitted). But for mixed questions that "immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address … multifarious, fleeting, special, narrow facts that utterly resist generalization," the district court's decision should be reviewed with "deference." *Id.* (citation modified); *see also Bufkin v. Collins*, 604 U.S. 369, 381–83 (2025) (applying *Lakeridge*).

Following *Lakeridge*, courts of appeals reviewing orders denying motions to compel arbitration must consider whether the specific issue involves legal principles that will impact future cases or case-specific factual considerations. If the former, de novo review applies. If the latter, clear error review applies. This is true regardless of whether

arbitrability, waiver, or any other issue is the grounds for the order denying a motion to compel arbitration.

In this way, *St. Mary*'s and *Cabinetree* do not conflict with *Lakeridge*. These two cases called for deference in resolving mixed questions of law and fact unless they "establish and articulate [new] legal rules," which is the "appellate court's primary function." *St. Mary's*, 969 F.2d at 588. If anything, *St. Mary's* presaged *Lakeridge*. *Cabinetree* follows *St. Mary's*. 50 F.3d at 389–90. And *Brickstructures* ultimately applies *Lakeridge*. 952 F.3d at 891.

The other lines of cases, however, are inconsistent with *Lakeridge*. Cases like *Druco* and those preceding it call for de novo review of all orders denying a motion to compel arbitration. But some mixed questions of arbitrability will be fact-bound and case specific. *See, e.g.*, *Carter v. SP Plus Corp.*, 172 F.4th 970, 973 (7th Cir. 2026). Similarly, *Halim*, 516 F.3d at 562, and *Ernst & Young*, 304 F.3d at 756, call for de novo review of the mixed question of waiver. But waiver inquiries are "intensely fact-bound" and "immerse courts in case-specific factual issues" of a party's conduct; the "district judge is in a better position to assess" these questions. *Brickstructures*, 952 F.3d at 891 (citations omitted). Under *Lakeridge*, then, so long as the decision does not announce a new legal rule, waiver decisions should be reviewed for clear error.

To proceed under *Lakeridge*, however, we must overrule the caselaw that does not follow its guidance. The two lines of cases that call for de novo review of orders denying a motion to compel arbitration conflict with *Lakeridge*.[4] They are thus

[4] Some other circuits continue de novo review of orders denying a motion to compel arbitration. They have not reevaluated their approach in

overruled only as to the applicable standard of review and to the extent they are inconsistent with this opinion.[5]

**B. Pre-certification Conduct**

With the standard of review settled, before us is the district court's order denying a motion to compel arbitration due to waiver. To the extent reviewing this order requires us to elaborate on this circuit's waiver rules and set precedent for future cases, our review is de novo. Otherwise, the district court's waiver decision is reviewed for clear error.

At oral argument, Exploria contended that *Lakeridge* supports de novo review of this decision, or at least an aspect of it. The district court's waiver decision, it argues, improperly considered Exploria's pre-certification conduct. This question of what a party must do, if anything, before certification to preserve the right to arbitrate the claims of putative class members divides the circuits and remains an open one in our court. Answering this question, Exploria submits, requires

---

light of *Lakeridge*, and their approach traces back to decades-old cases with little rationale. *See, e.g.*, *Abdisalam v. Strategic Delivery Sols., LLC*, 171 F.4th 30, 35 (1st Cir. 2026); *Sessoms v. USHealth Advisors, LLC*, 176 F.4th 795, 801 (4th Cir. 2026); *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 734 (5th Cir. 2026); *Schlacks v. Chheda*, 174 F.4th 1061, 1066 (8th Cir. 2026); *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168, 1173 (9th Cir. 2026); *Tejon v. Zeus Networks, LLC*, 174 F.4th 1322, 1325 (11th Cir. 2026). The same is true when the ground for denial is waiver. *See, e.g.*, *Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 126 (2d Cir. 2025); *In re Chrysler Pacifica Fire Recall Prods. Liability Litig.*, 143 F.4th 718, 722 (6th Cir. 2025); *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1087 (8th Cir. 2021).

[5] This opinion was circulated to all judges in regular active service under Circuit Rule 40(e). No judge voted to rehear this case en banc. Judge John Z. Lee did not participate in the consideration of this Rule 40(e) circulation.

"elaborating on a broad legal standard" and developing an "auxiliary legal principle[] of use in other cases"—a task for which courts of appeals have an institutional advantage. *Lakeridge*, 583 U.S. at 396. We agree and review this aspect of the decision de novo.

Waiver is the "intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Like any contractual right, the right to arbitrate can be waived. *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018) (citing *St. Mary's*, 969 F.2d at 590). Waiver of a contractual right can be "express or implied through action." *Al-Nahhas*, 129 F.4th at 426 (quoting *Brickstructures*, 952 F.3d at 891). Because Exploria did not expressly relinquish this right, waiver can only be inferred. To infer waiver, we must determine, under the totality of the circumstances, whether a party acted inconsistently with the right to arbitrate. *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011).

A party's "diligence," or lack thereof, in asserting its arbitration right weighs heavily in the analysis. *See Al-Nahhas*, 129 F.4th at 426–27 (quoting *Cabinetree*, 50 F.3d at 391). Courts thus evaluate whether a party has done "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration[.]" *Id*.

Relatedly, courts consider whether the party delayed its request for arbitration or participated in discovery and litigation. *Id*. at 427. Dispositive motions that "[s]ubmit[] a case to the district court for decision" are inconsistent with the right. *See St. Mary's*, 969 F.2d at 589 (summary judgment motions

"preclude any arbitration … by virtue of waiver") (quoting *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 465 (2d Cir. 1985)). But this does not include motions to dismiss for lack of jurisdiction. *Kawasaki*, 660 F.3d at 998.

With these ground rules, we turn to class actions specifically. Exploria contends that by moving to compel arbitration after the class was finalized, it has not waived its arbitration rights. Before then, Exploria reasons, such a motion would be futile—the putative class members are not yet a party, so the district court lacks jurisdiction over them. This position finds support from other circuits. *H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, 76 F.4th 1093, 1100 (8th Cir. 2023) ("[A] motion to compel arbitration prior to class certification would have been a motion to bind parties who were not yet part of the case."); *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) (a motion to compel arbitration before class certification is futile because it is "impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on those motions before the class was certified"); *see also Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 335–36 (6th Cir. 2025) (en banc).[6]

---

[6] *Speerly* is related, but it was an interlocutory appeal from an order granting class certification, rather than from an order denying a motion to compel arbitration, as here.

In *Speerly*, the Sixth Circuit vacated the district court's class certification order based on defendant's arbitration agreements with different subsets of the putative class members. The named plaintiffs had argued that those arbitration agreements were waived and could not serve as a basis for vacating the class certification order. Waiver of an arbitration right as to named plaintiffs, they continued, shows waiver of arbitration rights as to all putative class members too. The court rejected this argument. *Speerly*, 143 F.4th at 335–36 ("A party who proposes a class action may not

A defendant need not file premature motions to avoid implicit waiver of its arbitration rights, as Exploria notes. But Moore counters that a defendant can still act inconsistently with its intent to arbitrate before moving to compel arbitration. For this he cites law from a different set of circuits. *See Valli v. Avis Budget Grp. Inc.*, 162 F.4th 396, 406–07 (3d Cir. 2025); *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 479 (9th Cir. 2023); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1120 (10th Cir. 2015).

Moore is correct that a defendant's pleadings, conduct during class-related discovery, and arguments in opposition to class certification are relevant to the waiver decision. Arbitration agreements with putative class members should be produced during class-related discovery and in opposition to class certification. The number and variety of such agreements impact the district court's Rule 23 analysis. *See Speerly*, 143 F.4th at 335–36; *see also Valli*, 162 F.4th at 412. By not raising arbitration at that stage—especially if the agreements preclude joinder of claims or class actions—the defendant implies it intends to litigate class claims in court. *See Valli*, 162 F.4th at 412; *see also In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031, 1039 n.10 (11th Cir. 2015) (whether a defendant waived arbitration with unnamed plaintiffs "is properly litigated via a motion to certify a class").

Moreover, if a diligent defendant intends to compel arbitration after class certification, it cannot do so promptly if those agreements have not been produced. Asking to reopen

---

tie the hands of absent class members until the court certifies and appoints them the class representative," so "waiver" as to "named plaintiffs' claims … does not speak for the unnamed class members.").

discovery shows a lack of diligence. It is also inefficient and costly to the parties and the court, which undercuts the rationale for arbitration in the first place. *See Brickstructures*, 952 F.3d at 892 (citing *Cabinetree*, 50 F.3d at 391 ("Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution.")). Therefore, we hold that a party's pre-certification conduct may support an inference that it waived its right to compel arbitration of putative class members' claims.

Even the cases Exploria cites support this holding. Each acknowledges the defendants' pre-certification conduct in determining whether waiver as to unnamed class members occurred. *H&T Fair Hills*, 76 F.4th at 1098, 1100 (no waiver when defendant opposed class certification based on arbitration agreements with putative class members and moved to compel arbitration "quickly after the class was certified"); *Gutierrez*, 889 F.3d at 1238 (no waiver when defendant raised arbitration as to putative class members in its answer and opposition to class certification, and moved to compel arbitration immediately after "class certification"); *Speerly*, 143 F.4th at 335 (no waiver when defendant raised arbitration as affirmative defense, produced arbitration agreements with unnamed class members during class-related discovery, and opposed class certification based on arbitration agreements with putative class members).

In sum, Exploria's pre-certification conduct is relevant to evaluating whether it waived its right to compel arbitration of putative class claims.

**C. Waiver Analysis**

With this legal principle settled, the district court's waiver decision is reviewed for clear error.

Exploria's conduct at each stage of litigation was inconsistent with an intent to arbitrate. Among its pleadings, Exploria filed an answer with affirmative defenses focused on the consent of the "putative class members," without mentioning arbitration. Consent is a defense to the merits of the TCPA claim, so its invocation supports the inference that Exploria intended to defend class claims on their merits. *See* 47 U.S.C. § 227(b)(1).

The parties then engaged in two years of class-related discovery. Though Exploria had reviewed the opt-in sites containing the purported arbitration agreements, it developed evidence of consent but not of arbitrability.

Unsurprisingly, then, in Exploria's brief in opposition to class certification, it advanced the consent argument with no mention of arbitration. Yet, Exploria expects as much as 70% of the putative class to be subject to such agreements. If Exploria intended to move to compel arbitration, it should have raised the issue of arbitrability in opposing class certification under Federal Rule of Civil Procedure 23.

Exploria's post-certification conduct adds support to the inference of waiver. Exploria amended its answer to add affirmative defenses, but it did not raise arbitration as a defense to class claims. Exploria also asked the district court to amend its order denying summary judgment and certifying the class, contending it had prematurely ruled on Exploria's consent defense. But it requested that adjudication on the merits occur at trial, without mention of arbitration. Still more, Exploria

attempted to reopen discovery to "conduct merits discovery and obtain testimony from class members ahead of its intended trial showing." Each motion suggests Exploria's intent to defend against the merits of class claims in court, thus supporting the inference of waiver.

Exploria finally raised arbitration soon after its series of post-certification motions. It moved for leave to file a third amended answer to assert arbitration as a defense against unnamed class members. To show good cause for its delay, Exploria explained it had "recently retained new counsel who has evaluated the forms submitted by individuals contacted by [third-party vendors] and determined arbitration agreements were likely accepted." But given the agency relationship between counsel and client, a change in counsel late in the game cannot excuse prior counsel's lack of diligence. Otherwise, parties could revive their rights simply by hiring a new lawyer. Even at this juncture, Exploria had not identified specific arbitration agreements with any subset of class members.

Four and a half years was too long for Exploria to wait to raise the topic of arbitration. This lack of diligence falls short of doing "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration[.]" *Al-Nahhas*, 129 F.4th at 426–27 (quoting *Cabinetree*, 50 F.3d at 391). The district court, therefore, did not clearly err in denying Exploria's motion to compel arbitration because of waiver.

In response, Exploria observes that a motion to dismiss for lack of jurisdiction cannot be the basis to infer waiver. Additionally, it contends it would have taken the same steps if Moore had sued alone. For example, Exploria's summary

judgment motion focused on only Moore's claims, not those of the class members. Similarly, Exploria would have filed an answer and participated in discovery even if Moore was the sole plaintiff. To Exploria, this conduct cannot be inconsistent with an intent to arbitrate as to the unnamed class members.

Exploria's observation about its dispositive motions is correct. But its pleadings, class-related discovery, briefing in opposition to class certification, and other post-certification motions all raised defenses and developed evidence on the merits of all putative class members' claims, including those with whom it would later seek arbitration.

Two weaker legal arguments—one as to the burden of persuasion and the other about the role of diligence in our waiver doctrine—do not help Exploria. In the first, Exploria posits that the Federal Arbitration Act has a strong "policy favoring arbitration," so Moore had a "heavy burden" of proving waiver, which should not be "lightly inferred." But the Supreme Court expressly rejected this view in *Morgan v. Sundance, Inc.*: The Federal Arbitration Act does not have a policy favoring arbitration over litigation. 596 U.S. at 413–14. It merely makes "arbitration agreements as enforceable as other contracts, but not more so." *Id*. at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

In the second argument, Exploria believes the district court improperly applied the analysis for forfeiture rather than for waiver. To Exploria, considering "diligence," or asking whether Exploria did "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration," is inconsistent with Moore's "heavy burden" to show waiver. *Al-Nahhas*, 129 F.4th at 426–27 (quoting *Cabinetree*, 50 F.3d at 391).

This court has already rejected the "heavy burden" argument. Under our caselaw, "diligence" is the preeminent factor for evaluating waiver in the civil context. *See Smith*, 907 F.3d at 499. And, contrary to Exploria's insistence, *Morgan* did not foreclose consideration of diligence, and nothing in it calls for overruling our doctrine. Aside from holding that prejudice cannot be a requirement, the Supreme Court left it to the courts of appeals to adopt their own waiver rules. *Morgan*, 596 U.S. at 416–17.

**III. Conclusion**

This opinion follows the guidance of *Lakeridge* to clarify the appellate standard of review for orders denying motions to compel arbitration. Aspects of a district court's decision that, if affirmed, will have precedential impact for future cases are reviewed de novo. The ultimate waiver decision is reviewed for clear error.

A fresh look at the district court's decision shows that when evaluating whether the defendant waived a right to compel arbitration, the court correctly considered the defendant's pre-certification conduct. And reviewing that waiver decision with deference reveals no clear error.

AFFIRMED