**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GEORGE MOORE,<br><br>Plaintiff,<br><br>v.<br><br>CLUB EXPLORIA, LLC,<br><br>Defendant. | Case No. 1:19-cv-02504<br><br>Hon. Edmond E. Chang<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT CLUB EXPLORIA, LLC'S**
**<u>RESPONSE TO MOORE'S MOTION FOR ENTRY OF PARTIAL JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 4

A. Factual Background ........ 4

B. Procedural History ........ 5

ARGUMENT ........ 8

I. A Judgment for Damages Cannot be Entered Without at Least a Claim-In Process. ........ 8

A. Moore has not identified the individuals who are members of the class. ........ 8

B. Moore has not established that each class member has standing. ........ 12

C. This Court should order a claim-in process before entering judgment. ........ 15

II. Awarding Each Class Member Statutory Damages Would Lead to an Aggregate Damages Award That Would Be Unconstitutional. ........ 16

III. The Requirements for Partial Final Judgment Under Rule 54(b) Are Not Satisfied. ........ 19

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*,
2019 WL 10248700 (N.D. Ill. Dec. 10, 2019) ........ 18

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240, (N.D. Ill. 2014) ........ 13

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ........ 17

*Bradford v. Sovereign Pest Control of TX, Inc.*,
167 F.4th 809 (5th Cir. 2026) ........ 18

*Campos v. TJX Cos., Inc.*,
2025 WL 360677 (D. Mass. Jan. 31, 2025) ........ 13

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ........ 20

*Chenyan v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
2022 WL 22876425 (N.D. Ill. Mar. 10, 2022) ........ 20

*Gadelhak v. AT&T Servs., Inc.*,
950 F.3d 458 (7th Cir. 2020) ........ 2, 12, 13

*Gessele v. Jack in the Box Inc.*,
174 F.4th 1108 (9th Cir. 2026) ........ 18

*Golan v. FreeEats.com, Inc.,*
930 F.3d 950 (E.D. Mo. 2019) ........ 19

*Golan v. Veritas Ent., LLC*,
2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) ........ 18, 19

*Great Am. Trading Corp. v. I.C.P. Cocoa, Inc.*,
629 F.2d 1282 (7th Cir. 1980) ........ 20

*Hall v. Xanadu Mktg., Inc.*,
682 F. Supp. 3d 1278 (N.D. Ga. 2023) ........ 14

*Hartley v. Urb. Outfitters, Inc.*,
2024 WL 3445004 (E.D. Pa. 2024) ........ 14

*Ira Holtzman, C.P.A., & Assocs., Ltd. v. Turza*,
728 F.3d 682 (7th Cir. 2013) ........ 4, 16

*Holtzman v. Turza*, 828 F.3d 606, 608 (7th Cir. 2016) ....................16

*Krakauer v. Dish Network, LLC*,
2017 WL 3206324 (M.D.N.C. July 27, 2017) ....................1, 2, 9

*Larson v. Harman-Mgmt. Corp.*,
2019 WL 7038399 (E.D. Cal. Dec. 20, 2019) ....................16

*Legg v. PTZ Ins. Agency, Ltd.*,
321 F.R.D. 572 (N.D. Ill. 2017) ....................14

*Leyse v. Bank of Am., N.A.*,
804 F.3d 316 (3d Cir. 2015) ....................13

*Lottie v. W. Am. Ins. Co., of Ohio Cas. Grp. of Ins. Cos.*,
408 F.3d 935 (7th Cir. 2005) ....................4

*Lyngaas v. Curaden AG*,
436 F. Supp. 3d 1019 (E.D. Mich. 2020), *aff'd*, 992 F.3d 412 (6th Cir. 2021) ....................16

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*,
518 F.3d 459 (7th Cir. 2008) ....................20

*Martin v. PPP, Inc.*,
719 F. Supp. 2d 967 (N.D. Ill. 2010) ....................20

*Maryland. v. Universal Elections, Inc.*,
862 F. Supp. 2d 457 (D. Md. 2012) ....................19

*Mills v. Saks.com LLC*,
2025 WL 34828 (S.D.N.Y. Jan. 6, 2025) ....................13

*Montera v. Premier Nutrition Corp.*,
2025 WL 751542 (N.D. Cal. March 10, 2025) ....................18

*In re Nat'l Prescription Opiate Litig.*,
976 F.3d 664 (6th Cir. 2020) (Moore, J., dissenting) ....................16

*Parker v. Time Warner Entm't Co.*,
331 F.3d 13 (2d Cir. 2003) ....................17

*Peerless Network, Inc. v. MCI Comms. Servs., Inc.*,
917 F.3d 538 (7th Cir. 2019) ....................20

*Philip Morris USA v. Williams*,
549 U.S. 346 (2007) ....................17

*Sherman v. Yahoo! Inc.*,
2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) ....................11

*Soppet v. Enhanced Recovery Co., LLC*,
679 F.3d 637 (7th Cir. 2012) ........................................................................... *passim*

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
251 U.S. 63 (1919)..........................................................................................3, 17, 19

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)............................................................................................17, 18

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)...................................................................................................15

*Texas v. Am. Blastfax, Inc.*,
164 F. Supp. 2d 892 (W.D. Tex. 2001)....................................................................19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..........................................................................................2, 12, 15

*United States v. Dish Network L.L.C.*,
954 F.3d 970 (7th Cir. 2020) ...............................................................................17, 19

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) ....................................................................................17

*Wonsey v. City of Chicago*,
940 F.3d 394 (7th Cir. 2019) .....................................................................................20

*Wright v. Nationstar Mort. LLC*,
2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .............................................................16

**Statutes / Rules**

Telephone Consumer Protection Act, 47 U.S.C. § 227 ...........................................16, 20

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Fed. R. Civ. P. 54(b) ..............................................................................................4, 20

## INTRODUCTION

This Court certified a class of "[a]ll persons in the United States subscribing to a cellular telephone number that received a prerecorded soundboard call promoting Club Exploria's Summer Bay Resort between March 1, 2018, and August 15, 2019, where the soundboard operator initiated a transfer of the call to Club Exploria." Dkt. 225 ("Class Cert. Order") at 19. Contrary to Plaintiff's position, however, class certification and partial summary judgment premised on a violation of the Telephone Consumer Protection Act ("TCPA") is not the end of the story. Despite multiple opportunities, Moore has failed to carry his burden of identifying class members on whose behalf *any* final judgment *in any amount* could be entered, as required by due process, Fed. R. Civ. P. 23, the TCPA, Seventh Circuit precedent, and Article III of the Constitution. Only class members who were the subscribers of the number at the time of the call and who suffered an actual, redressable injury are entitled to relief. Because Moore has failed to provide this evidence, judgment cannot be entered. At most, the Court should enter an order providing for a "claim-in" process, where class members fill the missing—but necessary—evidentiary gaps to prove entitlement to recovery.

This Court previously recognized in upholding certification that class members ultimately would have to be identified. Dkt. 301 at 1 ("The identification of additional class members who received the targeted pre-recorded calls … is a matter of obtaining more phone records[.]"); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012) (Easterbrook, Chief J.) (only the subscriber at the time the call was received can claim a TCPA violation). At summary judgment, the Court only adjudicated Moore's claims on a representative basis—the question of whether he can identify the class members entitled to entry of judgment has never been decided.

Now that the Court is considering entering a judgment, Moore can no longer avoid definitively identifying the members of the class. Fed. R. Civ. P. 23(c)(3)(B) (court must "include and specify or describe those … whom the court finds to be class members"); *Krakauer v. Dish*

*Network, LLC*, 2017 WL 3206324, at *4, 6 (M.D.N.C. July 27, 2017) ("[a]s a matter of fairness and basic due process," court cannot enter judgment where class is "yet unidentified"). Furthermore, beyond identifying the class members who were subscribers at the time of a violative call, a class member entitled to recovery must also show an injury-in-fact. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages … [as] 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'"). That is because "an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426-27. In the context of the TCPA, that means subscribers who received calls (the legal injury) must also prove that they experienced the call as an unwanted intrusion (the injury in fact). *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020). Accordingly, entering a damages award for any class member requires identifying each individual who, between March 1, 2018, and August 15, 2019: (1) subscribed to a cellular number that (2) received a prerecorded call where (3) the soundboard operator initiated a transfer; and then (4) for each such person, demonstrating Article III standing with evidence that the call was unwanted. *TransUnion*, 594 U.S. at 431 ("plaintiffs bear the burden of demonstrating … standing").

Instead of acknowledging these predicate requirements, Moore argues that there were 71,538 calls to 66,682 unique phone numbers, justifying a $35+ million judgment. Dkt. 428 ("Mot."). But nobody—not Moore's expert, the notice administrator, nor this Court—has ever identified the individuals associated with all 66,682 numbers or confirmed that they meet the class definition *and* have Article III standing. Moore's expert merely identified phone numbers—not people—that were called. The notice administrator used only "best practicable efforts to identify

class members," which included two flawed methods that could not even reliably identify the subscriber at the time of the call, *Soppet*, 679 F.3d at 643, much less identify who has standing.

Moore simplistically asks this Court to enter a $35+ million judgment for individuals who may or may not be class members, may or may not have been the subscriber at the time of the call, may or may not still be alive, may or may not have been injured, and may or may not have accurate contact information. Club Exploria estimates that Moore has obtained potentially unreliable information for 70% of the numbers in his class. *See* Declaration of Douglas Kidder ("Kidder Decl.") at 19. It appears that there may be reliable information for an average of 30% of class members, but there is no way of knowing which of the names and addresses are reliable for which numbers. *Id.* ¶¶ 53. The TCPA, Rule 23, Article III, and due process all require more.

Additionally, Moore's requested award of $500 per violative call would violate due process because it would be "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."[1] *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919). Club Exploria's conduct was far from reprehensible. This is not a case of a defendant cold calling numbers hoping to engage any random call recipient. Rather, Club Exploria engaged third-party marketing vendors who initiated the calls and represented that every number contacted was associated with a person who had previously agreed to be contacted. Moreover, those call recipients were connected with Club Exploria only after expressing interest and agreeing to the transfer. And many recipients opted to stay at Club Exploria properties as a result of receiving calls, negating any inference of actual harm. Club Exploria believed in good faith that it was complying with the TCPA as it required vendors to comply with all relevant laws.

[1] Club Exploria's sealed declaration (shared with Moore's counsel) illustrates the financial consequences of a judgment anywhere near $35 million. *See* Smith Decl. ¶¶ 8-9 & Ex. 1.

Finally, Moore has not met the required showing under Rule 54(b) for entry of partial judgment on his prerecorded call claim because his claim is not separable from the yet-to-be adjudicated do-not-call ("DNC") claim. This Court should first resolve the do-not-call claim. *Lottie v. W. Am. Ins. Co., of Ohio Cas. Grp. of Ins. Cos.*, 408 F.3d 935, 940 (7th Cir. 2005).

In sum, this Court should not enter the requested $35+ million judgment or any aggregate amount to simply apportion among the class. Importantly, a TCPA "action stems from discrete injuries suffered by each recipient of the faxes; it does not create a common fund." *Ira Holtzman, C.P.A., & Assocs., Ltd. v. Turza*, 728 F.3d 682, 688 (7th Cir. 2013). If it is inclined to enter any partial judgment, Club Exploria respectfully requests the Court assess an amount far lower than $500 per claimant as other courts have done, and prior to doing so, require a claim administration process where each class member desiring to claim in submits a sworn attestation that: (i) he or she was the subscriber of the identified phone number during the class period; (ii) he or she was the recipient of an unwanted call; and (iii) the current address on record is accurate.

## BACKGROUND

### A. Factual Background

Club Exploria owns and manages vacation properties. Dkt. 193 at 2. It contracts with third-party vendors to promote its properties, requiring the vendors to fully comply with the law. *Id*. at 3. In 2018, those vendors called individuals who had previously agreed to receive marketing calls, playing a prerecorded message and then transferring to Club Exploria recipients who expressed interest in learning more. *See* Dkt. 376, SJ Order at 3-4.

Moore alleges that he received two such calls, which were made to his wife's phone number on September 14 and October 16, 2018. Dkt. 148-8, Moore Dep. at 23:20-22 (Q: "Is the 3200 number … your wife's number?" A: "yes, it was her number."). Moore apparently only happened to receive these calls for the idiosyncratic reasons described in the Declaration of Livia M. Kiser

("Kiser Decl.") and attached exhibits. Kiser Decl. Exs. 1 & 2. Mrs. Moore passed away around April 2020. Moore Dep. at 23:22-24:5. The record also shows that someone consented to receiving telemarketing calls to the 3200 number under the name Donald Jorgensen. Dkt. 148, at 3, 10. The notice administrator's later efforts to identify the subscriber for this number through a reverse look-up also pulled the name of Donald Jorgensen, *see* Kidder Decl. ¶ 44, demonstrating the unreliability of identifying class members in this way.

**B. Procedural History**

Moore filed suit in April 2019. *See* Dkt. 55, FAC ¶¶ 65-70. In February 2022, he moved for class certification only on the Prerecorded Call Claim. Dkt. 186 at 2. To establish ascertainability, Moore relied on his expert Aaron Woolfson's report, which purported to identify cellular numbers that received calls and were transferred to a live agent based on call logs from Prospects DM and Yodel. Dkt. 186-21, Declaration of Expert Aaron Woolfson ("Woolfson Decl.") ¶ 3. Woolfson's call list changed by thousands of numbers between his original declaration and rebuttal report. *Compare* Woolfson Decl. ¶ 56(C), *with* Dkt. 186-22, Woolfson Rebuttal Report ("Woolfson Rebuttal") ¶ 11(C); Mot. at 3 n.3. And Woolfson never attempted to determine ***who*** subscribed to those numbers or actually received the calls. *See generally* Woolfson Decl.; Woolfson Rebuttal.

The Court certified a class over Club Exploria's objection that Moore could not identify class members from the call logs, noting that "[i]f ascertainability is insurmountable, decertification could be considered." Class Cert. Order at 19.

In September 2023, to prepare for the class notice process, Moore served subpoenas to ten telephone carriers requesting the name, address, and email address of 66,639 telephone subscribers for the purpose of providing class notice. Dkt. 250 at 1-2, 4, Dkt. 250-1 ¶ 6. He also sought approval of his class notice plan, which included having the notice administrator use the class

member information obtained through the carrier subpoenas to contact the class. Dkt. 250 at 2. While the Court approved that plan, it was not successful. Dkt. 277. The carriers turned over some information, but at least two carriers did not include the class time frame in responses, and at least six carriers did not provide subscribers' activation or deactivation dates, making it unclear whether subscribers' information was tied to the relevant call period or the time the subpoena was issued. Kidder Decl. ¶ 36. Also, Moore was initially able to obtain purported subscriber information for 23,600 phone numbers, or only about 35% of the class phone numbers. Dkt. 303 at 5:2-7.

In May 2024, recognizing that subscriber information was missing for a "substantial" amount of phone numbers, Moore sought to supplement the notice plan using a reverse look-up process. Dkt. 289 ¶¶ 4, 5. Under that process, phone numbers are used to try to find the name and contact information of a particular subscriber by entering phone numbers into a database, which attempts to combine public and private data to identify individuals associated with the numbers. Dkt. 290-1 ¶ 17. This data typically comes from a collection of businesses, like doctors, banks, or credit card companies, and is often incomplete because it is not updated. *Id.* Club Exploria repeatedly opposed use of the reverse look-up process because it *cannot* identify historical subscribers—it cannot pinpoint who was the subscriber at the time of the allegedly violative call (i.e., the reverse look-up in 2024 *could not* identify subscribers in 2018), as required as a threshold matter in the Seventh Circuit under *Soppet*. Dkt. 290-1 ¶ 17; Dkt. 303 at 5. Indeed, the reverse look-up here identified Donald Jorgensen as the subscriber for Moore's wife's phone number. Kidder Decl. ¶ 44. Following the Court's approval of the supplementation effort, Dkt. 303 at 7-8, however, the notice administrator performed a reverse look-up process.

Shortly after, Club Exploria moved to decertify the class, arguing the notice process was flawed and that Moore had only been able to obtain subscriber information for 23,917 numbers at

that point, leaving information for 42,722 numbers—64% of the class—still unknown. Dkt. 291 at 1-2. In response, Moore justified his notice process by arguing that his only obligation at that stage of litigation was to provide the "best notice … practicable under the circumstances." Dkt. 293 at 5. This Court denied Club Exploria's motion, stating "[t]he identification of additional class members who received the targeted pre-recorded calls … is a matter of obtaining more phone records, not a flaw in the class definition." Dkt. 301 at 1.

The Court did not, however, accept that the supplemental efforts would carry the class through final judgment, and indeed the Court recognized the class list was incomplete. *Id.*; Dkt. 304, Aug. 5, 2024 Joint Status Report ("JSR") at 1-2. Throughout August 2024, there were conflicting representations about how many numbers were identified through carrier subpoenas and which were identified using reverse look-ups. *See* Aug. 5, 2024 JSR at 1-2 (stating Moore had only produced data from the carriers accounting for 49,627 out of 66,639 (74%) class members, and that he was seeking to do a reverse look-up for 17,012 numbers); Dkt. 305, Minute Entry (noting that Moore identified only 60-70% of class member addresses); Dkt. 306, Aug. 14, 2024 JSR at 1-2 (stating notice administrator did reverse look-up for 29,031 class members (43.5%), and suggesting carrier responses existed for remaining 37,651 class members (56.5%)).

Still, Moore claimed the notice administrator would be able to send notice (through email or physical mail) to 98.43% of the class. Aug. 14, 2024 JSR at 2. Moore never provided complete information to Club Exploria, giving it no way to verify the accuracy of this process. *Id.*; *see also* Dkt. 308, Aug. 30, 2024 JSR at 1. Indeed, Club Exploria explained that Moore did not (1) identify the mobile numbers for which he employed the reverse look-up; or (2) specify whether multiple email or mailing addresses were associated with each phone number, and, if there were, how the administrator decided which would be used. Aug. 14, 2024 JSR at 2.

In October 2024, Moore moved for summary judgment on behalf of himself and the class on the Prerecorded Call Claim, making clear that the DNC claim was not addressed in the motion. *See* Dkt. 321, MSJ at 1 n.1. He argued that Woolfson had identified 71,538 calls made to 66,682 unique telephone numbers,[2] *id.* at 3, but he did not submit a class list or provide any further explanation for how he planned to find the identities of class members, as is necessary for entry of final judgment, Dkt. 322 ¶ 60 (relying on the same report from Woolfson); SJ Order at 12 n.4.

On September 26, 2025, the Court granted partial summary judgment on the Prerecorded Call Claim. *See* SJ Order at 14-15. Although the DNC claim remains pending, Moore now moves for the entry of partial final judgment on the Prerecorded Call Claim. Mot. at 1. He argues the Court should award $35,769,000, "impos[ing] the $500 statutory damages amount … for each of the 71,538 violative calls placed to the class." *Id.* at 3. Moore's only support for this class list is the incomplete and unreliable list of phone numbers from Woolfson's analysis and the flawed information that he received during the class notice period. *See id.* at 3 n.3.

## ARGUMENT

### I. A Judgment for Damages Cannot be Entered Without at Least a Claim-In Process.

#### A. Moore has not identified the individuals who are members of the class.

Class members are persons "subscribing to a cellular telephone number that received a prerecorded soundboard call promoting Club Exploria's Summer Bay Resort … where the soundboard operator initiated a transfer of the call to Club Exploria." Class Cert. Order at 19. Put another way, to qualify, a class member must have (1) subscribed to a cellular telephone number that (2) received a violative call where (3) the soundboard operator initiated a transfer.

[2] The Court declined to consider Club Exploria's *Daubert* motion challenging Woolfson's methodology. *See* SJ Order at 12 n.4. Club Exploria maintains that the methodology was inadequate. And although the Court considered Woolfson's report sufficiently reliable for determining liability on summary judgment, it is not adequate for awarding $35m+ in damages.

Moore has not identified the individuals who meet these requirements. Courts decline to enter judgment for damages to be awarded to class members who are not yet identified. *Krakauer*, 2017 WL 3206324, at *6. That is a basic requirement of due process and Rule 23. *Id.* Rule 23 "contemplates that the court will make the decision about who the class members are" by requiring the Court, in its judgment, to "specify or describe" who the class members are. *Krakauer*, 2017 WL 3206324, at *4. And every class action defendant subject to a damages award has a "basic due process" right to "participate in claims administration and to object and oppose any unfounded or incorrect claim." *Id.* In *Krakauer*, the court declined to "enter an aggregate judgment against Dish in the amount of $61 million" because there were phone numbers that "plaintiffs ha[d] not yet linked to any particular name or address" and "situations where the name and address information [was] either incomplete or inconsistent." *Id.* It explained that "Dish has an interest in not paying damages to persons who are not proper class members, which aligns with the Court's interest in [e]nsuring that only class members receive damages awards." *Id.*

That is the same situation that exists here—without identifying class members, Club Exploria is deprived of this fundamental due process right. There are multiple unresolved questions about Moore's class list, which touch on the central requirement for class membership: whether the phone numbers identified by Moore correspond to the subscribers who actually received violative calls. Without answering this basic question, the Court (and Club Exploria) cannot know who is in the class *and* has standing to be awarded damages.

As explained below, Woolfson's analysis and the information gathered during the class notice period do not resolve the outstanding issues—they even leave more than 1,000 numbers with no (purported) associated subscriber at all. *See* Kidder Decl. at 19. As a result, Club Exploria retained its own expert to determine who the class members are, and in doing so, discovered

enormous gaps in the data that make it impossible to reliably do so. *E.g.*, *id.* ¶ 53 & p. 19.

The question of whether Moore can identify class members entitled *to judgment* has never been decided. At certification, the Court declined to resolve ascertainability, holding that it "can be dealt with at a later date when the extent of [the] problem is better known." Class Cert. Order at 18-19. During the notice proceedings, the question was whether Moore's plan was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see* Dkt. 250. Best notice "practicable under the circumstances" was about reaching people who *might* be class members; it is not a sufficient basis to enter a $500-per-call judgment in their names. As noted, Rule 23(c)(3)(B) requires the Court's judgment to "include and specify or describe" the persons "whom the court finds to be class members." And the fairness and due process guardrails described above are designed to ensure Club Exploria does not pay damages to individuals who are not proper class members. This issue is therefore appropriately raised and resolved now.

But Moore has no proof of which of the 66,682 unique numbers he can connect to a subscriber at the time of the violative calls. Woolfson never connected these phone numbers to subscribers. Woolfson Decl. ¶ 4. Instead, Moore attempted to use the notice process to do this work—but he undertook two flawed methods that mean it is impossible to know whether the subscribers he identified were subscribers *at the time* of the violative calls, as required to support a claim. Kidder Decl. ¶¶ 24-44; *Soppet*, 679 F.3d at 643. Indeed, Club Exploria estimates that information for 70% of Moore's class list is potentially unreliable. Kidder Decl. at 19. And for the remaining 30%, there is likely no way of knowing which of the names and addresses are reliable for which phone numbers. *Id.* ¶¶ 53-54; *see also id*. at 19 (30% is an average percentage based on sub-sample of data).

First, Moore claimed that he relied on the compilation of subscriber information from

phone carriers' lists to identify the names and contact information, but there was conflicting information about the percentage of phone numbers for which the carriers returned information. *Supra* pp. 7. The carriers turned over some information, but at least two carriers did not include the class time frame in responses, and at least six carriers did not provide subscribers' activation or deactivation dates, making it unclear whether the subscriber's information was tied to the relevant call period or the time of the subpoena. Kidder Decl. ¶ 36.

Second, for the remaining numbers, representing a significant portion of the class, Moore attempted a reverse look-up process, entering the phone numbers into a database to identify names, email addresses, or mailing addresses. But the reverse look-up process did not reliably identify the *subscriber at the time of the call*. *Id.* ¶¶ 40-44; *Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at *6 (S.D. Cal. Sept. 23, 2015) ("a reverse lookup … does not provide objective, verifiable criteria for identifying class members," and "[w]hile this system might provide some information as to the current users of the phone numbers, Plaintiff has not explained how it would verify that the current owners of the numbers were the owners over two and a half years ago").

Indeed, the notice administrator performed a reverse look-up for Moore's own number and pulled subscriber data for someone named Donald Jorgensen. Kidder Decl. ¶ 44. This is indicative of the problem that phone numbers regularly change hands—here, it is likely that 45% of the numbers entered in the reverse look-up have been re-assigned since the end of the class period. *Id.* ¶ 22; *id.* ¶ 28 (noting that over 30,000 numbers on Moore's list have been re-assigned). Closer analysis shows that the results of the reverse look-up conflict with the call logs in many instances. *Id.* ¶ 42 ("Of the 19,470 phone numbers with first and last name in both the Yodel call logs and the reverse look-ups, 7,628 (39.2%) names are different."). But as the Seventh Circuit has instructed, and the class definition recognizes, only the subscriber at the time of the call who actually received

the call can claim a TCPA violation. *Soppet*, 679 F.3d at 643.

In sum, Moore has never accurately identified the class members, making entry of judgment at this stage inappropriate and premature prior to a claim-in process.

**B. Moore has not established that each class member has standing.**

In addition to satisfying the statutory elements, "[e]very class member must have Article III standing in order to recover individual damages," and that standing must be maintained "at all stages of litigation." *TransUnion*, 594 U.S. at 417-18, 431. The plaintiff must prove that each class member "suffered a concrete harm" and that this injury is "likely [to] be redressed by judicial relief." *Id.* at 417, 423. In *TransUnion*, the Supreme Court reversed a decision that "approved a class damages award of about $40 million" after a jury verdict, concluding that "6,332 class members ha[d] not demonstrated concrete harm and thus lack[ed] Article III standing to sue." *Id.* Entry of judgment on those claims was wrong as a matter of law. The same is true here.

**1.** Moore cannot establish that each class member suffered concrete injury. Moore has never attempted to establish that class members suffered any sort of traditional, financial injury. FAC ¶ 33 (alleging only that Moore and all class members "were subjected to annoying and harassing calls that constitute a nuisance"). Instead, Moore relies on intangible harm, such as invasion of privacy, wasted time, and interruption, which can amount to concrete injury for purposes of standing. *Gadelhak*, 950 F.3d at 462-63. To establish that each class member suffered an intangible harm, Moore must prove each class member (1) personally received a call and (2) experienced it as "intrusive" and "unwanted." *See id.* Not only does Moore lack evidence of who received the call *and* experienced injury; ***every*** class member affirmatively agreed to be transferred.

Moore cannot establish that a purported class member actually received any call from Club Exploria. Putting aside that Moore has failed to reliably match the phone numbers with subscribers,

*supra* pp. 8-11, the mere fact of being a subscriber does not establish cognizable injury—only the "actual recipient, intended or not, … suffers the nuisance and invasion of privacy." *Leyse v. Bank of Am., N.A.*, 804 F.3d 316, 326 (3d Cir. 2015). An intended recipient who does not answer the call is "uninjured." *Id.* If "a subscriber's child or spouse" answered the call, as opposed to the subscriber, then it is the call recipient, not the subscriber, who suffered the injury. *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 247 (N.D. Ill. 2014). Moore has not even attempted to prove who received calls. A phone number's subscriber is not necessarily the person who primarily uses the number. Moore's own circumstances illustrate this point. Although Moore was the subscriber, he (belatedly) disclosed in this litigation that his wife was the primary user of the number that received the subject calls. Moore Dep. at 23:14-22. Moore may well have only received these calls for the peculiar reasons described in the Kiser Declaration and attached exhibits. But Moore must prove that each class member/subscriber actually received the call, not just that the class member was the number's subscriber. He has not met that burden.

Moore likewise cannot establish that class members who received a call experienced it as an *unwanted* intrusion. While an "unwanted" call or text message may be sufficiently analogous to the "type of intrusive invasion of privacy" that was actionable at common law to constitute a "concrete injury-in-fact for Article III purposes," *Gadelhak*, 950 F.3d at 462-63 & n.1, where a plaintiff *welcomes* the call and "willfully engage[s] with [the caller's] materials," or where, as here, in numerous cases a recipient actually made a purchase from Club Exploria, there is no injury or standing. *Mills v. Saks.com LLC*, 2025 WL 34828, at *6 (S.D.N.Y. Jan. 6, 2025).

Here, there are multiple indications that ***all*** recipients welcomed the calls. Although this Court found that the consents obtained did not satisfy the TCPA regulatory standard, SJ Order at 20-23, the Court and Moore both acknowledged that many class members signed up to receive

calls through "online opt-in forms," *id.* at 21; Dkt. 186 at 6. Where a class member opts into a solicitation, he lacks injury. *See, e.g.*, *Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1282-86 (N.D. Ga. 2023) (no standing when plaintiff "actually solicited the text messages" at issue); *Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004, at *6 (E.D. Pa. July 17, 2024) (similar); *Campos v. TJX Cos., Inc.*, 2025 WL 360677, at *4-5 (D. Mass. Jan. 31, 2025) (similar). Moreover, to be transferred to Club Exploria—a requirement built into the class definition—a call recipient had to "indicate[] interest" in the Summer Bay property and agree to hear more. *See* Class Cert. Order at 5; Dkt. 342 ¶ 7(b). All class members agreed to hear more. *Id.*; Class Cert. Order at 19. Receiving requested information is not cognizable injury.

At a minimum, the evidence undeniably shows that at least some class members did not suffer any injury. Calls to 78.7% of the class lasted more than three minutes, suggesting that recipients were engaging with Club Exploria in some manner. Kidder Decl. ¶ 49. And almost 20,000 recipients told Club Exploria that they'd like to receive a call back. *Id.* ¶ 47. Further, many class members went on to complete a purchase. The campaign resulted in 1,656 resort stays booked and 211 timeshares purchased. *See* Dkt. 322-66. And over 4,000 of the class member phone numbers engaged with a Club Exploria program at some point. Kidder Decl. ¶ 50. These class members cannot claim cognizable injury from a call that they welcomed. Without proof that a given class member experienced the call negatively, Moore cannot establish that a class member has "been injured in any way, even if defendants technically violated a procedural requirement of the TCPA." *Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017).

**2.** Independent of the failure to establish injury, Moore has likewise failed to establish that a judgment would likely *redress* class members' harms. Initially, the information gathered from the reverse look-up process may now be stale. Moore conducted the reverse look-up in 2024—five

years after the end of the class period—meaning the information that was gained, like an address for a 2024 subscriber, is likely not current (as well as not indicative of the 2018 subscriber). Further, Club Exploria estimates that using "carrier subpoena responses to identify and contact class members will wrongly contact between 31% and 64% of class members." Kidder Decl. ¶ 39. Without any way of identifying who suffered injury, or even their contact information, Moore cannot ensure that any award reaches a proper class member. *TransUnion*, 594 U.S. at 423.

The "very essence of the redressability requirement" is ensuring that judicial relief actually "remed[ies] the injury suffered." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (no redressability for plaintiff environmental group where any damages were statutorily required to go to Treasury). Awarding a massive judgment without first ensuring that it would be paid to proper class members runs afoul of these principles. Moore asks for $35+ million in damages that would not necessarily go to the class members because Moore has not established a reliable list of class members, *supra* pp. 8-11, nor has he reliably established their contact information, Kidder Decl. ¶¶ 32-44. In addition, for the subscriber information he obtained from the phone carriers, a percentage of those individuals are now (like Mrs. Moore) likely to be deceased. *Id.* ¶ 27. And even where the identity of the subscriber may be correct, those individuals may have moved or changed their contact information. *Id.* ¶ 33.

There is no "remediation of … injury" in sending checks to individuals who are not actually class members or failing to send checks to actual class members. *Steel Co.*, 523 U.S. at 107.

### C. This Court should order a claim-in process before entering judgment.

Because of the serious reliability and Article III standing deficiencies, the Court should either decertify the class or, at a minimum, require a claim-in process where class members at least confirm they are the subscribers who received the violative calls and that they experienced the calls negatively, and further reduce to $4 per claim to a number appropriate for the facts and

consistent with other cases, *see infra* pp. 18-19. Class actions are very rarely litigated to a judgment—the "vast majority" end in settlement. *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 701 (6th Cir. 2020) (Moore, J., dissenting). Because of that, there are only a small number of cases grappling with these issues. In those cases, to ensure that payouts are directed only to individuals who actually experienced a TCPA violation, courts require claim-in procedures instead of entering a lump-sum judgment. *See, e.g.*, *Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1022-23 (E.D. Mich. 2020) (describing a "claim form [that] would require claimants to submit sworn affidavits attesting … to the number of unsolicited faxes they received"), *aff'd*, 992 F.3d 412 (6th Cir. 2021). Requiring class members to claim in "addresses th[e] concern" that "those who did not suffer a TCPA violation [will] receive a payout." *Wright v. Nationstar Mort. LLC*, 2016 WL 4505169, at *4 n.7 (N.D. Ill. Aug. 29, 2016). "[A] claim form will serve as a useful check to prevent fraud and to ensure that the … fund is distributed to class members who deserve to recover from it." *Larson v. Harman-Mgmt. Corp.*, 2019 WL 7038399, at *11 (E.D. Cal. Dec. 20, 2019).

A claim-in process also ensures that class counsel is compensated appropriately. A TCPA "action stems from discrete injuries suffered by each recipient of the faxes; it does not create a common fund." *Holtzman*, 728 F.3d at 688. Because there will be no common fund, "if a given [call] recipient cannot be located, or spurns the money, counsel are not entitled to be paid for that [call]." *Holtzman v. Turza*, 828 F.3d 606, 608 (7th Cir. 2016).

Establishing a claim-in process thus ensures that (a) only individuals who are actually class members are compensated, and (b) class counsel only receives payment in accordance with law.

## II. Awarding Each Class Member Statutory Damages Would Lead to an Aggregate Damages Award That Would Be Unconstitutional.

Moore has asked the Court to enter a partial judgment for $35,769,000, "impos[ing] the $500 statutory damages amount (*see* 47 U.S.C. § 227(b)(3)) for each of the 71,538 violative calls

placed to the class." Mot. at 3. Such a judgment would violate the Due Process Clause, which forbids the imposition of disproportionately punitive statutory damages awards.

**A.** The Supreme Court has recognized that excessive statutory damages may violate the Due Process Clause. *See Williams*, 251 U.S. at 66-67. The analysis is similar to determining whether a punitive damages award is excessive. *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1122-23 (9th Cir. 2022). Courts consider: (1) reprehensibility; (2) proportionality to the violation and injury; and (3) the disparity between the award and penalties in other cases. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *see also Philip Morris USA v. Williams*, 549 U.S. 346 (2007). Appellate courts have applied these principles to hold that excessive aggregated statutory damages awards are unconstitutional. *Wakefield*, 51 F.4th at 1122; *see also Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) (acknowledging due process concerns). The "best way" to "ensure that [a civil] penalty" is constitutional is by "start[ing] from the harm" and then "add[ing] an appropriate multiplier." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020).

**B.** Moore's proposed judgment exceeds constitutional limits. Starting with the "most important" factor, Club Exploria's conduct was far from "reprehensibl[e]." *Gore*, 517 U.S. at 575. Club Exploria had a good faith belief that it was TCPA compliant. *See* SJ Order at 20-23. And it is undisputed that Club Exploria required its vendors to comply with all relevant laws and regulations and did not directly initiate *any* of the allegedly violative phone calls. SJ Order at 2. Third-party vendors made those calls after Club Exploria expressly directed them by contract to follow the TCPA in making their calls. *See id.* at 22 n.7. And even if the consents were ineffective because the recipients hadn't expressly consented to receive calls from the third-party vendors on Club Exploria's behalf, *id.*, this is a highly technical (and debatable) violation that does not come close

to "reprehensible" conduct. *Cf. Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809, 812 (5th Cir. 2026) (plaintiff provided prior express consent because he "provided his cell phone number when he entered into the service plan agreement with Sovereign Pest").

Moore's proposed award also fails the second factor: the ratio between the actual damages and punitive elements of the award. Awarding $500 per violation far exceeds what is needed to "complete[ly] compensate" the class members for their "minor" "harm[s] … not [arising] from some physical assault or trauma." *See State Farm*, 538 U.S. at 426; *Gessele v. Jack in the Box Inc.*, 174 F.4th 1108, 1127 (9th Cir. 2026). For example, in *Montera v. Premier Nutrition Corp.*, the court concluded that an $83 million statutory damages award exceeded compensatory goals where actual damages for class members were around $1.4 million. 2025 WL 751542, at *5 (N.D. Cal. Mar. 10, 2025); *see also Gessele*, 174 F.4th at 1127 (invalidating a statutory damages award because "[t]he penalty was nearly 400 times greater than the injury"). Here, there is no way to quantify actual damages because Moore has not alleged or proven a financial injury.

Any actual harm suffered by class members from the "nuisance" of receiving an unsolicited call was minimal or nonexistent—awarding $500 (or more for multiple calls) is not proportional under any rational equation to the supposed harm, if any. *See Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, 2019 WL 10248700, at *2 (N.D. Ill. Dec. 10, 2019) (TCPA settlement gave "real money for a minor nuisance"). Indeed, it is undisputed that many if not all class members had previously agreed online to be contacted, connected with Club Exploria only after expressing interest, and that many actually stayed at Club Exploria properties. *See* Part I.B, *supra*.

On the third factor, courts have found that $500 per violation is not appropriate where, as here, the number of violations at issue is large. For example, in *Golan v. Veritas Entertainment, LLC*, the court awarded $10 per call to "reflect[] the severity of the offense, a six-day telemarketing

campaign which placed 3.2 million telephone calls." 2017 WL 3923162, at *2-4 (E.D. Mo. Sep. 7, 2017); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962-63 (8th Cir. 2019) (affirming while explaining that the defendant "plausibly believed it was not violating the TCPA" as it "had prior consent to call the recipients"). In *Texas v. American Blastfax, Inc.*, the court awarded 7 cents per violation where the defendant violated the TCPA 937,500 times per month for over six months. 164 F. Supp. 2d 892, 900-01 (W.D. Tex. 2001); *see also Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 466 (D. Md. 2012) (reducing TCPA award to "one-tenth of the State's request").

The due process concerns for this award are especially stark in light of the Article III concerns and the disproportionate impact on the company. *See* Smith Decl. ¶¶ 8-9 & Ex. 1. Moore has not established that each of the 66,682 subscribers actually received the calls at issue—around 1,060 numbers were not paired to a subscriber at all, Kidder Decl. ¶ 17 n.7—let alone that they all suffered injury or will be redressed. Awarding the full $500 statutory amount is a windfall penalty "wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 66-67.

**C.** If the Court intends to enter an award now, Club Exploria proposes no more than $4 per subscriber who demonstrably owned the number at the time the call was received and who first attest that the call was unwanted. The Seventh Circuit has instructed courts "to start from harm." *Dish Network*, 954 F.3d at 980. Here, class members welcomed these calls, engaged with Club Exploria, and some booked stays. Even assuming every class member considered the calls an intrusion (for which there is no evidence and which Club Exploria disputes), these calls were at most a minor nuisance, lasting a few minutes. Kidder Decl. ¶ 48 (median call time was almost 5 minutes). While the actual harm resulting from each call is likely de minimis and unquantifiable, it is surely no more than $4. *See Dish Network*, 954 F.3d at 980 ($4 per violative call).

## III. The Requirements for Partial Final Judgment Under Rule 54(b) Are Not Satisfied.

Rule 54(b) poses a roadblock to entry of any partial judgment, which is "not to be made

routinely or as an accommodation to counsel." *Great Am. Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286 (7th Cir. 1980). Partial final judgment is appropriate only where (1) "the order was truly a final judgment," and (2) the Court makes an express finding that there is no just reason for delay. *Peerless Network, Inc. v. MCI Comms. Servs., Inc.*, 917 F.3d 538, 543 (7th Cir. 2019). If the claims are also "aimed at the same recovery," "partial final judgment [is] improper." *Id.*

Moore concedes that Rule 54(b) governs yet offers *no argument* on it. *See* Mot. at 2-3. This failure to "say *why* there is no just reason to delay a partial judgment" is reason enough to deny the motion. *Chenyan v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2022 WL 22876425, at *1 (N.D. Ill. Mar. 10, 2022). He should not be allowed to address it for the first time in reply. *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019).

In any event, Moore's two claims are based on the same facts and seek the same recovery. Moore brought a claim under the DNC provision, 47 U.S.C. § 227(c), and a claim under the prerecorded telemarketing provisions, *id.* § 227(b)(1)(A)-(B), for the same calls. FAC ¶¶ 26, 53, 65-70. Moore's two claims are also "aimed at the same recovery"—TCPA damages. *Peerless Network*, 917 F.3d at 543. But under Rule 54(b), "claims cannot be separate," as required for partial judgment, "unless separate recovery is possible on each." *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008) (cleaned up). And, as a matter of law, the TCPA does not allow for separate statutory damages awards based on the same call. *See, e.g.*, *Martin v. PPP, Inc.*, 719 F. Supp. 2d 967, 973-74 (N.D. Ill. 2010); *see also Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 631-32 (6th Cir. 2009).

## CONCLUSION

This Court should deny the request for entry of partial judgment. If the Court is inclined to enter partial judgment, Club Exploria respectfully submits there must first be a "claim-in" process to comply with due process, Seventh Circuit precedent, Rule 23, and Article III.

Dated: September 28, 2026

Respectfully submitted,

*/s/ Livia M. Kiser*

Livia M. Kiser
Ill. Bar No. 6275283
**King & Spalding LLP**
110 North Wacker Drive
Suite 3800
Chicago, IL 60606
(312) 995-6333
lkiser@kslaw.com

Michael D. Roth (pro hac vice)
**King & Spalding LLP**
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
(213) 443-4355
mroth@kslaw.com

*Attorneys for Defendant*
*Club Exploria, LLC*