**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated, | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-02504 |
| v. | ) | |
| CLUB EXPLORIA, LLC, | ) | Hon. Edmond E. Chang |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF PARTIAL JUDGMENT**

Plaintiff George Moore ("Plaintiff") respectfully submits the following reply to the response in opposition to his Motion for Entry of Partial Judgment filed by Defendant Club Exploria, LLC ("Exploria"):

## I. Introduction

Plaintiff filed this action more than seven years ago. Now that it is time for judgment, Exploria once again seeks to delay by rehashing old arguments this Court has already rejected and asserting positions contrary to binding Seventh Circuit authority. The Court should not allow further delay and should reject the arguments that are essentially a stealth motion to reconsider.

Exploria opposes the entry of partial judgment for three reasons. First, it argues the Court must conduct a claims process before entering judgment to ensure payments only go to members of the class and to further ensure that each class member receiving payment has Article III standing. Yet Seventh Circuit authority squarely provides the time for ensuring that only class members receive payment is during the distribution of damages, *after* the entry of judgment. Exploria is thus putting the cart before the horse. Moreover, this Court has already found the class members have Article III standing and rejected the same argument Exploria rehashes here. Further, it takes a lot

of nerve to argue that since it profited in its illegal telemarketing scheme because some small portion of the telemarketing calls were successful, there is no standing. In any event, there is no basis to reconsider Article III standing.

Second, despite hiring several of the largest law firms in the world, firing those firms when its various scorched earth strategies didn't pay off resulting in what has to be millions of dollars in attorney fees, Exploria argues the class should get even less than a fraction of what it paid its attorneys. Specifically, Exploria suggests *if* any award is made, it should be no more than $4 a call, which equals $286,152 for the class before expenses, notice and administration costs are deducted and assuming nothing for attorney fees.

In making its argument, Exploria asserts aggregating the class members' statutory damages into a $35 million judgment would violate due process. Once again, Seventh Circuit authority provides otherwise. An aggregation of statutory damages does not pose a due process problem where, like here, the per violation statutory damages amount is constitutionally sound. Exploria cannot claim a deprivation of due process simply because it violated the law thousands of times.

Moreover, a $35 million judgment for thousands of violations is unremarkable; nothing about it shocks the conscience nor is it objectively unreasonable, especially for a company like Exploria which is owned by private equity firm Cerberus Capital Management, with over $30 billion in assets.[1] In addition, the fact that Exploria, a real estate centric business, like virtually every real estate business, is not as liquid as other business or carries loans and depreciates the "paper" value of the properties for tax and accounting strategies is not remarkable. In short, even putting aside its $30 billion owner, it has more than sufficient assets to satisfy the judgement here;

---

[1] *See* Cerberus Capital Management Acquires Club Exploria LLC Assets, https://www.exploriaresorts.com/experiences/cerberus-capital-management-acquires-club-exploria-resorts-assets (las visited October 15, 2026)

it just does not want to.

In an attempt to make itself appear more sympathetic, it misrepresents the facts and omits ample evidence it knowingly engaged in illegal conduct for its own profit. [redacted] Apparently it made the decision that potential TCPA lawsuits was worth the illegal, although successful telemarketing calls that resulted in some sales it crows about in its response.

Finally, Exploria argues the Court should decline to enter partial judgment and instead should first resolve Plaintiff's separate do-not-call registry claim before entering any judgment in the case, contending the Plaintiff cannot separately recover statutory damages on each claim. Exploria is once again wrong on the law. The TCPA expressly provides for a separate recovery of statutory damages on each these claims and courts have repeatedly confirmed as much. Exploria presents no reason to delay the entry of partial judgment.

## II. Exploria's Concerns About Class Member Identification Go to The Distribution of Damages; Judgment Must Come First

Exploria's first argument conflates two distinct issues: the amount of damages owed to the certified class and the identification of individual class members entitled to receive distributions

from that judgment. Exploria contends the Court must conduct a claims process before entering judgment because some individuals identified through the Court-approved notice process may not ultimately qualify as class members.[2] But determining which individuals may receive payment is an issue of claims administration, not a prerequisite to entry of judgment. Seventh Circuit precedent expressly permits entry of an aggregate TCPA judgment based on the established violations, with individual entitlement to payment determined afterward. Unable to overcome that authority, Exploria relies on a declaration from Douglas Kidder, an expert it never before disclosed.

**a. The Court Should Strike the Kidder Declaration**

Pursuant to the Court's Standing Orders[3] holding motions to strike are strongly disfavored and the better practice is to rase it in the context of the brief, Plaintiff addresses the inadmissibility of Kidder's declaration here rather than in a motion to strike. Plaintiff will file a motion to strike if the Court prefers it.

First, Exploria never disclosed Douglas Kidder as a witness in this case, nor did Exploria ever serve a copy of his expert report. Discovery closed in this case five years ago. Doc. 159. This is now *the <u>third undisclosed expert report</u>* that Exploria has submitted on a brief with no prior notice to Plaintiff whatsoever. See Doc. 348 at 6 (addressing an undisclosed expert report from Ken Sponsler); Doc. 387 (addressing undisclosed expert report of Darlene Geller-Stoff).

---

[2] Exploria also submits documents concerning an unrelated 2020 proceeding involving Mr. Moore and his late wife, apparently in an effort to impugn his credibility. Those documents concern events approximately eighteen months after the telephone calls underlying this litigation and have no bearing on Exploria's liability, the number of unlawful calls, the statutory damages owed, or the propriety of entering judgment. Exploria's decision to inject these deeply personal matters into a dispute over the entry of judgment is particularly troubling. Exploria has chosen to dredge up painful events involving Mr. Moore's late wife during the final months of her life, apparently hoping that collateral allegations concerning an intensely difficult period for his family will somehow prejudice the Court against him. After more than seven years of litigation, Exploria's resort to such tactics speaks volumes about the weakness of its position on the merits.

[3] See https://www.ilnd.uscourts.gov/PrintContent.aspx?cmpid=717 (last visited October 19, 2026)

The Court should exclude this expert report pursuant to Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")

There is no justification for Exploria's five-years late expert report. Moreover, Exploria has already briefed the issue of class member identification extensively throughout the case and had every opportunity submit an expert report to support its arguments at any time in that process. *See* e.g., Doc. 259 (opposition to Motion to Approve Class Notice); Doc. 291 (motion to decertify the class). The Court should accordingly strike the Kidder declaration. *See Behland v. Midwest Generation EME*, 2008 WL 11516689 at *2 (N.D. Ill. Jan. 15, 2008) (excluding expert opinions that were not disclosed pursuant to Rule 26 "or arguments premised upon that information"); *Krakauer v. Dish Network*, 2016 U.S. Dist. LEXIS 160512, at *17 (M.D.N.C. Sep. 19, 2016) (excluding undisclosed expert testimony offered on motion for class certification); *Giesmann v. Am. HomePatient*, 2017 U.S. Dist. LEXIS 96334, * 11 (E.D. Mo. June 22, 2017).

**b. Exploria is Wrong on the Law**

Evidentiary issues aside, Exploria's argument has no basis in law. In *Physicians Healthsource*, *Inc. v. A-S Medication Sols.*, *LLC*, 950 F.3d 959 (7th Cir. 2020) (a TCPA case), the Seventh Circuit squarely rejected the argument Exploria makes here. Remarkably, Exploria makes no mention of the case. In *Physicians*, the district court granted summary judgment in favor of a certified class of persons to whom the defendant had placed unsolicited facsimile transmissions. *Id.* at 963. Over the defendant's objection, the district court entered judgment shortly thereafter, finding no hearing on who was entitled to recover damages was necessary before judgment. *Id.*

On appeal, the defendant argued the district court erred by entering judgment without first

determining who exactly was entitled to recover damages for each of the faxes at issue in the case and the phone numbers alone were not sufficient. *Id.* at 969. The Seventh Circuit squarely rejected the argument:

> "[W]e now explicitly hold that upon a finding a liability, a court may enter judgment as soon as the plaintiffs establish the amount of faxes and the numbers to which those faxes were sent. And, as we explained in *Holtzman I*, a defendant's successful fax log is sufficient on its face to prove these facts.
>
> Here, AMS' fax log was in evidence early on and AMS has never challenged its validity. Indeed, the parties have never disputed how many faxes were sent, or to what numbers. Hence, once the district court held that AMS violated the TCPA when it sent each of those faxes, the plaintiffs had established everything they needed to for the court to enter judgment; there was neither any need for further fact finding, nor any delay in the entry of judgment." *Id.*

The same is true here. Exploria does not dispute how many robocalls were sent or the numbers to which they were sent. Instead, it asserts the Court needs to ensure that individuals who receive a payment are actually class members; i.e., that they were actually subscribers to the phone numbers at issue at the time of the calls.

Yet in *Physicians*, the Seventh Circuit held that "each class member need not meet that burden until a judgment is finally distributed[.]" *Id.* at 970. In *Physicians*, this was achieved by sending notice of the judgment that asked recipients to update their contact information if necessary and, in doing so, to confirm that they were affiliated with the fax number at the time of they received the fax. *Id.* at 971.

The partial judgment plaintiff requests directs Plaintiff to submit a motion to approve a proposed notice plan within 28 days of the entry of judgment. Motion ex. 1. The Court can and should address the appropriate notice procedures in connection with that motion after judgment.

In support of its argument, Exploria relies primarily on a 2017 decision from the Middle District of North Carolina in *Krakauer v. Dish Network, LLC*, 2017 U.S. Dist. LEXIS 117713

(M.D. N.C. July 27, 2017) in which the court *initially* decided to conduct a claims process before judgment. Putting aside that the decision does not overrule binding precedent in *Physicians*, the *Krakauer* court soon reversed course, finding entry of judgment was appropriate before a complete claims process because Dish had been using the claims process to delay the case:

> "the Court noted some seven months ago, an aggregate judgment is appropriate in this case. The Court held off on that to give Dish an opportunity to address issues it had with the identity of some class members. Since that time, Dish has failed to suggest appropriate and efficient means for resolution of its purported identity issues, instead choosing to halfheartedly participate in meet-and-confer requirements, to bombard the Court with irrelevant and voluminous materials in connection with the plaintiff's motion for judgment; to repeat arguments the Court has rejected many time; to seek a second bite at the apple when it loses on grounds it could have raised the first time the apple was presented; and to continue to offer only cumbersome and inefficient methods of resolving purported challenges to class member identity that go well beyond identity disputes.
>
> The Court concludes that the time has come to enter judgment in favor of the class. Both a jury and this Court have concluded that Dish violated the TCPA thousands of times. The phone numbers are known, the number of calls are known, the jury established the amount of damages due for each violation, and the Court trebled those damages upon a finding of willfulness, as authorized by statute."

*Krakauer v. Dish Network, L.L.C.*, 2018 U.S. Dist. LEXIS 246397, *2-4 (M.D.N.C. Apr. 5, 2018)at *2-4. Remarkably, Exploria fails to mention that its primary authority on this issue essentially reversed itself later in the case, putting aside it conflicts with *Physicians.* It likewise fails to mention that the 4th Circuit affirmed the decision to ultimately enter judgment before the claims process on appeal. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 651-52 (4th Cir. 2019). Moreover, it cites no other case that required a claims process before the entry of judgment.[4] Accordingly, the Court should follow the Seventh Circuit's decision in *Physicians* and proceed

[4] *Lyngaas v. Curaden*, 436 F. Supp. 3d 1019 (E.D. Mich. 2020) entered judgment *before* a claims process. Further, both *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016) and *Larson v. Harman-Mgmt. Corp.*, 2019 LX 78485 (E.D. Cal. Dec. 18, 2019) only discuss claim forms in the context of class action settlements.

directly to the entry of judgment.

Finally, Exploria is taking inconsistent positions that change with its ever-changing litigation strategy. When seeking to delay the case through meritless arbitration arguments, it told this Court it had identified arbitration agreements for the vast majority of class members. Doc. 386 at 8. Yet after losing that issue, it now asserts there is no way of knowing who the class members are. As noted above, its position is irrelevant under *Physicians*, but it contradicts Exploria's prior representations to the Court.

**III. The Court has Already Rejected Exploria's Article III Standing Argument**

Next, Exploria argues a claims process is necessary to ensure that any person receiving payment has Article III standing. In doing so, Exploria asks this Court to reconsider an old argument the Court rejected three years ago.

On September 27, 2023, one month after the Court certified the class and denied Exploria's motion for summary judgment, Exploria filed a motion to "dismiss the claims of class members who Plaintiff cannot demonstrate have Article III standing to assert a claim because they did not suffer a concrete harm." Doc. 240 at 1. In doing so, Exploria argued that the class members must prove that the calls were "unwanted" and had not done so. *Id.*

The Court denied the motion on December 20, 2023, holding an inquiry into whether the calls were "unwanted" would essentially be an adjudication of Exploria's affirmative defense of "consent" on the merits and that the two analyses could not be conflated together as one was a jurisdictional inquiry and the other a merits inquiry. Doc. 277 at 7.

Subsequently, when the Court granted summary judgment for the class, it rejected Exploria's consent defense[5] on the merits, finding Exploria failed to provide any evidence class

[5] Contrary to Exploria's contention, Plaintiff has never conceded that any class member filled out an

members gave prior express consent to received calls pertaining to Exploria. Doc. 376 at 23.

Exploria's latest argument is not a new jurisdictional objection. It is another attempt to relitigate consent, this time under the guise of determining whether individual class members subjectively considered Exploria's prerecorded telemarketing calls intrusive or unwanted. But the Court has already distinguished the constitutional injury caused by receipt of the challenged calls from Exploria's affirmative defense of consent. Doc. 277 at 7. And that defense has since failed on the merits. Doc. 376 at 23. Exploria cannot revive its unsuccessful merits defense simply by recasting it as a prerequisite to entry of judgment. Nor does it identify any intervening authority or changed circumstances warranting reconsideration of the Court's prior ruling.

Exploria now repackages the same argument, contending that each class member must prove that they subjectively experienced the calls as "intrusive" and "unwanted" in order to recover damages. Resp. at 12. Putting aside the Court has already rejected the same argument, it has no basis in law.

**a. The Subjective Experience of Class Members is Irrelevant**

Every United States Court of Appeals, including the Seventh Circuit, have unanimously held the receipt of a phone call alleged to violate the TCPA is a concrete injury-in-fact that satisfies the constitutional requirement of standing under Article III. *See Gadelhak v. AT&T Servs.*, 950 F.3d 458, 461-63 (7th Cir. 2020); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017);

---

online opt in form. To the contrary, Plaintiff has repeatedly pointed out the lack of any admissible evidence showing the completion of such a form by a class member. *See e.g.,* Doc. 321 at 7 ("While Exploria testified it *understood* the phone numbers had been entered in forms at various websites that authorized telephone calls, there is no evidence that any class member actually entered his or her phone number at such a website. Exploria can only speculate, as none of the alleged "opt-in" websites were owned or managed by any of the entities involved in the campaign."); Doc. 201 at 2, n.2 ("The Court should note further Exploria has failed to submit any authenticated or admissible evidence establishing any class member did submit their contact information to one of these websites.")

*Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 93-95 (2nd Cir. 2019); *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023); *Dickson v. Direct Energy, LP*, 69 F.4th 338, 340-41 (6th Cir. 2023); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

It is undisputed that the class members received such calls; indeed the class definition ensures it. See Doc. 376 at 4 ("all persons . . . . subscribing to a telephone number that received a prerecorded soundboard call promoting Club Exploria's Summer Bay Resort[.]"). No further inquiry is necessary to establish Article III standing. As noted above, the fact that Exploria profited off a small minority of the illegal telemarketing calls because, after the robocalls at issue, it convinced some callers to agree to be called back[6] or actually buy a time share does not make its illegal behavior legal.

Exploria's contention that the Court must delve into the class members' subjective experiences of the calls is contrary to law. Indeed, the Seventh Circuit has repeatedly found psychological states are generally insufficient to satisfy Article III standing. *See Patterson v. Howe*, 96 F.4th 992, 1000 (7th Cir. 2024) (citing *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021). So inquiring into them here would serve no purpose.

What's more, the Fourth Circuit squarely rejected the precise argument Exploria makes here in *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019). As that Court held, accepting the defendants' argument would "convert[] a simple remedial scheme into a fact-intensive quarrel over how long a party was on the line or how irritated it felt when the phone rang. Obviously, Congress could have created such a cumbersome scheme if it wanted to. It instead

[6] To be clear, the calls at issue here were made before any conversations with Exploria and thus none of the calls were invited.

opted for a more straightforward and manageable way of protecting personal privacy, and the Constitution in no way bars it from doing so." *Id.* at 654. Thus, assessing the subjective experience of class members is completely unnecessary to resolve Article III standing and there is no reason to require a claim form from class members on this issue especially when the intent here is not to divine standing but to artificially suppress claims by making them more burdensome then required.

**b. Subscribers Have Standing**

Exploria also argues a claim form is necessary because class members (e.g., the subscribers to the phone numbers at issue) do not have Article III standing unless they personally answered the phone calls at issue. Resp. at 13. Once again that assertion is contrary to law.

Courts across the country have repeatedly held the subscriber to a telephone number that received a phone call in violation of the TCPA has Article III standing regardless of whether someone else answers the phone. As the Ninth Circuit held in *Hall v. Smosh Dot Com, Inc.*, "the owner and subscriber of the phone suffers a concrete, de facto injury . . . even if someone else is using the phone at the time the messages are transmitted." 72 F.4th 983, 986 (9th Cir. 2023). The court explained further:

> "Nothing in . . . . the text of the TCPA suggests that the owner of a cell phone must also be the phone's primary or customary user to be injured by unsolicited phone calls or text messages sent to its number in violation of the TCPA. Requiring a heightened level of phone use as a prerequisite for standing is contrary to our prior recognition that '[r]eceiving even one unsolicited, automated text message from [a telemarketer] is the precise harm identified by Congress' and sufficient to state an injury in fact under Article III."

*Id.* at 990 (quoting *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1222 (9th Cir. 2022))

Similarly, the Fourth Circuit recognized in *Krakauer* that both the subscriber and the person who answers the call would have Article III standing. 925 F.3d 643, 647 (4th Cir. 2019) ("If a wife, as the subscriber, lists a home telephone number on the Do-Not-Call registry, but her husband

happens to be the one who receives the improper calls . . . [b]oth the wife and the husband can suffer the harm that Congress sought to deter.")

Numerous courts have reached the same conclusion. *See Maraan v. DISH Network*, 2014 U.S. Dist. LEXIS 162241, *15 (S.D. Ohio 2014) ("That Dr. Maraan did not answer the calls does not rob him of standing in this Court's view. He subscribed to a cellular telephone service on behalf of himself and other family members, a fairly typical and provider-encouraged scenario, and that status alone permits him to bring suit under the TCPA."); *Garvey v. Gaitan*, 2026 U.S. Dist. LEXIS 53447, at *17 (D. Nev. Mar. 13, 2026) ("Gaitan has not cited any law that the putative class members need to listen to the prerecorded message to be injured under the TCPA. Therefore, they have Article III standing if Gaitan used a prerecorded voice in her ringless voicemail drops when calling their cell phones, and they need not prove any other harm.")

Exploria has cited no case to the contrary.[7] Accordingly, this issue presents no occasion for a claim form either, much less before the entry of judgment.

**IV. The TCPA's Statutory Damages Does not Violate Due Process**

"For monetary damages, the TCPA sets a floor of $500 for each" call. *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 149 (2025) (citing 47 U.S.C. § 227(b)(3). This baseline amount is not discretionary - "the $500 figure is a mandatory fixed sum*." Fillichio v. M.R.S. Assocs.*, 2010 U.S. Dist. LEXIS 112780, at *12 (S.D. Fla. Oct. 19, 2010) (Collecting cases). And while the Court has discretion to <u>treble</u> those damages to $1500

---

[7] Exploria's only citations, *Leyse v. Bank of America*, 804 F.3d 316 (3rd Cir. 2015) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) do not support its argument as each merely hold the person who answers the call would have Article III standing *in addition to the subscriber*. They do not hold that subscribers themselves would lack Article III standing. See *Leyse*, 804 F.3d at 325-27 (holding that even non-subscribers who reside within the household fall within the zone of interests of the act); *Birchmeier*, 302 F.R.D. at 247 ("plaintiffs need not establish that the people who received the calls at the numbers on the list of 930,000 were the actual subscribers; the fact they received calls is enough to permit them to sue.")

per violation for knowing or willful violations, Plaintiff has not sought treble damages here.

Exploria nevertheless insists the Court should reduce the statutory damages award to a mere $4 per violation – *less than one percent* of the statutory damages amount enacted by Congress – contending that "due process" requires the Court to do so. It does not.

The Court's discretion to reduce a statutory damages award on due process grounds is extremely limited. "In *St. Louis, Iron Mountain & Southern Railway Co. v. Williams*, the Supreme Court held a statutory damages award violates due process 'only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" *Top Tobacco, L.P. v. Star Imps. & Wholesalers, Inc.*, 135 F.4th 1344, 1352-53 (11th Cir. 2025) (quoting *Williams*, 251 U.S. 63, 66-67 (1919)).[8]

"There is no requirement that the statutory remedy be proportional to the plaintiff's own injury, however; Congress may choose an amount that reflects the injury to the public as well as to the individual." *Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) (citing *Williams*, 251 U.S. at 66); *see also James Michael Leasing Co., LLC v. PACCAR Inc.*, 2013 U.S. Dist. LEXIS 26070, *3-4 (E.D. 13 Wisc. 2013) ("the constitutionality of statutory penalty is 'not to be tested' by comparing its size to the amount of harm caused by a single violation.") (quoting *Williams*, 251 U.S. at 67).

This is because "statutory penalties are designed to vindicate a 'public wrong' rather than to compensate a specific plaintiff for a 'private injury.'" *Id. (quoting Williams*, 251 U.S. at 66). Thus, "due process does not require that a statutory penalty 'be confined or proportioned to . . . loss or damages; for, as it is imposed as a punishment for the violation of a public law, the

[8] Exploria largely ignores *Williams* and argues the court should apply factors in *BMW of North America*, 517 U.S. 559, and *State Farm*, 538 U.S. 408 which concern a jury's award of punitive damages. Yet even Exploria's own authorities hold those cases are inapplicable to statutory damage cases and *Willaims* controls. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1122 (9th Cir. 2022).

legislature may adjust its amount to the public wrong rather than the private injury.'" *Top Tobacco, L.P.*, 135 F.4th at 1352-53 (quoting *Williams*, 251 U.S. at 66); s*ee also Capitol Records Inc, v. Thomas-Rasset*, 692 F.3d 899, 907-08 (8th Cir. 2012) ("It makes no sense to consider the disparity between actual harm and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate.")

Courts have therefore repeatedly held that the TCPA's $500 statutory damages amount does not violate due process as applied to both robocalls and faxes. *See e.g.*, *Wakefield*, 51 F.4th 1109 at 1123 ("the per-violation penalty is constitutional" in a robocall case); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768, 777-78 (N.D. Ill. 2008) ("The $ 500 remedy serves the dual purpose of deterring unwanted solicitation while, at the same time, encouraging plaintiffs to bring suit."); *Phillips Randolph Enters.*, 2007 U.S. Dist. LEXIS 3027, at *6-8 ("The amount chosen is high enough to serve as a disincentive to this practice in the industry as a whole. As a result, the severity of the potential punishment is not out of proportion with the offense or obviously unreasonable[.]"); *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2010 U.S. Dist. LEXIS 8744, at *17-18 (N.D. Ill. Feb. 1, 2010) ("The Court finds that the $ 500 to $ 1,500 per fax violation is not so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable.); *Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 835 (D. Md. 2011) ("the statutory penalties under the TCPA are not obviously unreasonable and are not so severe and oppressive as to violate due process."); *Texas v. Am. Blast Fax, Inc.*, 121 F. Supp. 2d 1085 (W.D. Tex. 2000) ("We find that § 227(b)(3)(B), which provides for a minimum penalty of $ 500 for each violation of the TCPA, does not violate the Due Process clause of the Fifth Amendment.") (quoting *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997)); *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Communs., L.P.*, 329 F. Supp. 2d 789, 810

(M.D. La. 2004) ("the civil damages provisions of the TCPA . . . satisfy due process.")

Courts in this circuit have had no qualms about awarding statutory damages from $500 up to $1,500 per violation even against small companies. *Hinman v. M and M Rental Center Inc*., 596 F. Supp. 2d 1152 (N.D. Ill. 2009) (awarding $500 per facsimile for a total of $3,862,500 based on the total of 7,725 unsolicited advertisements that defendant sent to the class.); *Holtzman v. Turza*, 2011 U.S. Dist. LEXIS 97666 (N.D. Ill. Aug. 29, 2011) (awarding 221 class members $500 in statutory damages for each of the 8,430 times defendant successfully sent a fax to any class member, for a total of total of $4,215,000.); *G.M. Sign, Inc v.Group C Communications*, 2011 U.S. Dist. LEXIS 2929 (N.D. Ill. 2011) (awarding "$500 for each of Group C's 37,932 TCPA violations (i.e., $18,966,000)."); *A Fast Sign Co., Inc. v. Am. Home Servs., Inc.*, 322 Ga. App. 791 (Ga. App. 2013) ($459 million verdict based upon $1,500 for each of the 306,000 faxes sent, remanded to cure procedural deficiencies).[9]

For its part, Exploria cannot cite a single case holding $500 is an unconstitutional penalty for an illegal robocall. The proposition is far-fetched to say the least. Congress enacted the TCPA in 1991 to address serious concerns about telemarketing practices. Even twenty-five years ago, Congress found "the use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques." 105 Stat. 2394, Pub. L. No. 102-243, § 2(1)-(3) (Dec. 20, 1991). "Unrestricted telemarketing,"

[9] Other courts have similarly awarded $500-$1,500 per violation of the TCPA. *See Jerry Cooper, Inc., d/b/a Color One Photolab v. Lifequotes of America, Inc.*, King County Cause No. 04-2- 40304-9 (King County). On March 22, 2007, the King County Superior Court entered a Judgment against Lifequotes for $8,949,000. On November 15, 2007, the Superior Court entered a Supplemental Judgment for $86,252,500, and on February 28, 2008, the court entered a Second Supplemental Judgment for $665,712,500. The Class Representative successfully recovered $44 million. *See also Nicholson v. Hooters of Augusta, Inc.*, 272 F.Supp.2d 1365, 1368 (S.D.Ga. 2003) (jury awarded $3,000 to each of the 1,321 class members for transmitting six unsolicited facsimile advertisements and the Court tripled that amount to $9,000 per class member for a total of $11,889,000).

Congress determined, "can be an intrusive invasion of privacy" and "many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." *Mims v. Arrow Fin. Servs.*, 565 US 368, 372 (2012), citing 105 Stat. 2394, Pub. L. No. 102 243, § 2(5)-(6) (Dec. 20, 1991).

The sponsor of the TCPA, Senator Hollings, described robocalls as "the scourge of modern society. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us ..." 137 Cong. Rec. 30,821-30,822 (1991). Given the prevalent use of prerecorded voice systems by telemarketers, Congress generally prohibited the use of prerecorded voices in telephone calls to residential telephone numbers without prior express consent. 47 U.S.C. § 227(b)(1)(B).

The proliferation of robocalls, however, has only gotten worse. So much that the Supreme Court has noted that while "Americans passionately disagree about many things" they "are largely united in their disdain for robocalls" given the "staggering number of complaints about robocalls" received by the federal government each year. *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613, 140 S. Ct. 2335, 2343 (2020). Given the massive scope of this public harm, $500 is neither "severe and oppressive" nor "obviously unreasonable."

**a. The Aggregation of Statutory Damages Does Not Violate Due Process**

Exploria contends that even if $500 is not unconstitutional for a single violation, it becomes unconstitutional when thousands of violations are aggregated together in a class action. Yet once again, Seventh Circuit authority forecloses this argument. In *United States v. Dish Network L.L.C.*, the court upheld an award of $280 million in damages in an action brought by the United States and several States against Dish Network for violations of the Telemarketing Sales Rule, the Telephone Consumer Protection Act, and related state laws. *United States v. Dish*

*Network L.L.C.*, 954 F.3d 970, 973 (7th Cir. 2020). Unlike the $500 statutory damages provision at issue here, the enforcement penalties in those statutes expressly called for the court to exercise discretion in awarding damages, but only up to a maximum of *$10,000* per violation. *Id.* at 979. The Court held even if the maximum penalty were applied to each of the violations at issue in the case, aggregating the damages together would not violate due process:

> "The maximum penalty is $10,000 per violation. Multiply this by the 66 million violations the district judge found and you get $660 billion. That's a huge number, but it is not possible to evaluate it separately from the penalty per violation, which is a normal number for an intentional wrong. Legislatures have 'a wide latitude of discretion' to set civil penalties. *St. Louis, Iron Mountain & Southern Ry. v. Williams*, 251 U.S. 63, 66, 40 S. Ct. 71, 64 L. Ed. 139 (1919). Someone whose maximum penalty reaches the mesosphere only because the number of violations reaches the stratosphere can't complain about the consequences of its own extensive misconduct."

*Id.* at 979-80 (emphasis added).

This holding essentially affirms a prior decision in this district finding the aggregation of statutory damages in a TCPA class action does not violate due process. In *Phillips* the court held:

> "Rice Fields states that $ 500 would be a financially feasible amount if it were imposed, but the potential damages that could result from a class action involving many separate violations would result in crippling numbers. This argument is a nonstarter. Though the amount of damages could become very high if the statute is violated numerous times, as in the context of a class action, the purpose of the statute is to combat transmission of unsolicited fax advertisements. The statute accomplishes that purpose by making the practice prohibitively expensive, which is an acceptable means of accomplishing the statute's goal of deterrence. Contrary to Rice Fields' implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations."

2007 U.S. Dist. LEXIS 3027, at *6-8 (emphasis added)

While Plaintiff acknowledges that other circuits have held that "aggregation can, in extreme circumstances" result in massive awards that would violate due process *(Wakefield*, 51 F.4th 1109 at 1121), that is not the law in this circuit, nor would this case qualify as an extreme circumstance in any case. *See Id.* at 1123 ("We stress that *only very rarely* will an aggregated

statutory damages award meet the exacting Williams standard and exceed constitutional limitations where the per-violation amount does not.") (emphasis added).

The statutory damages in this case total roughly $35 million dollars. While nothing to sneeze at, that figure is a far cry from the amounts that have caused concern about aggregated TCPA damages in other circuits. *Id.* at 1113 (not deciding the question, but remanding to district court to consider the "constitutionality of the nearly <u>one-billion-dollar</u> statutory damages award") (emphasis added); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962 (8th Cir. 2019)("$1.6 billion is a shockingly large amount."); *Texas v. Am. Blast Fax, Inc.*, 164. F.Supp. 2d 892, 900, n.8 (an award of about $ 2.34 billion).

The court in *Perez v. Rash Curtis & Assocs.*, 2020 U.S. Dist. LEXIS 68161, (N.D. Cal. Apr. 17, 2020), denied a request to reduce a $267 million TCPA judgment against a small debt collector, expressly holding that amount satisfied the Willaims test and was "not unconstitutionally excessive." Id. at *22-23. Exploria offers no compelling reason why $35 million would violate the constitution here. It argues that its conduct is not reprehensible enough to justify the award because it thought class members had consented to receive calls, but as this Court has already held there is no evidence that they did.[10]

Moreover, the record is replete with evidence clearly establishing Exploria knew full well that the calls were illegal but it kept them going anyway to make a profit. [redacted]

[10] Once again, there is no authenticated or admissible evidence any class member signed an opt-in.

[redacted] Exploria is far from innocent. To the contrary, there is substantial evidence it knowingly engaged in illegal conduct for its own profit.

**b. Exploria Has The Assets to Satisfy the Judgment.**

Exploria argues further due process will be violated because there will be substantial "financial consequences" for the company if the $35 million judgment is entered, but the due process analysis set forth in *Williams* does not inquire about the affordability of the judgment. Indeed, in Dish Network, the Seventh Circuit confirmed that a defendants' wealth is irrelevant to a due process analysis. *Dish Network,* 954 F.3d at 980 ("Normally the legal system bases civil damages and penalties on harm done, not on the depth of the wrongdoer's pocket.")

Regardless, Exploria is not a mom and pop. It's owned by private equity with billions in assets. Putting aside its private equity owner, it has ownership interest in at least ten resorts with some being very sizable. https://www.exploriaresorts.com/resort-fact-sheets (Last visited 10/16/2026)(Guests of Exploria Express Orlando enjoy all the highlights of a 400-acre lavishly landscaped resort with a 64-acre spring-fed lake …)

Once again, the book value it lists for these properties is misleading because the properties have been depreciated for accounting and tax purpose. Tellingly, it failed to include any loan applications or reports to its private equity owner in its attachments here,[11] where it

[11] Plaintiff requested these loan applications prior to the last mediation as well as any communications with the private equity owner regarding its value, but were rebuffed. To the extent the Court considers Exploria's finances in assessing due process, Plaintiff should be able to conduct discovery on the issue.

would assert what it considers is the value of its holdings in an attempt to pursue its skewed narrative of its worth. It is worth noting that Exploria may claim any loan application is not current, but that would not hold true for its regular reporting to Cerberus Capital Management.

Finally, Exploria has been crying poor throughout this litigation, but somehow managed to keep acquiring new properties over the last seven years and presumably pay millions of dollars in attorney fees. Thus, its one sided presentation of its financial situation should be disregarded or if the Court does consider it, it should be viewed with extreme skepticism. In conclusion, it's wealth does not work in its favor here. There is accordingly no sound basis for reducing damages on due process grounds.

**V. There is No Reason to Delay Partial Judgment**

Finally, Exploria argues the Court should not enter judgment until it resolves Plaintiff's separate claim under the TCPA's do-not-call registry provision. 47 U.S.C. § 227(c)(5). Exploria contends the Court must do so because "the TCPA does not allow for separate statutory damages awards based on the same call." Response at 25. That contention is incorrect.

§§ 227(b)(3) (the robocall provision at issue here) and 227(c)(5) "target different harms" and are "distinct provisions to be treated independently." *Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 448-49 (6th Cir. 2011). For that reason, "a person may recover statutory damages of [$500] for a . . . violation of the automated-call requirements, § 227(b)(3), and [$500] for a . . . violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call." *Id.* at 449 (emphasis added).[12]

Accordingly, the claims are separate and Plaintiff may recover damages under each provision separately, even if the arise from the same call. There is no reason to delay judgment.

[12] Exploria's citations to *Martin* and *GVN Michigan* are inapposite as they address whether a plaintiff can recover multiple awards *under the same subsection*, which is not at issue here.

Respectfully Submitted,

Plaintiff George Moore

By: s/ Timothy J. Sostrin
Keith J. Keogh
Timothy J. Sostrin
KEOGH LAW, LTD.
55 W. Monroe, Ste. 3390
Chicago, IL 60603
312-726-1092
tsostrin@keoghlaw.com

Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff and the class.*